RECEIVED
SDNY DOCKET UNIT

2025 MAR 17  AM 11: 23

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

### Case No. 24-cv-9743

SDNY DOCKET UNIT
RECEIVED
2025 MAR 17  AM 11: 24

**RE: Service by ECF on Mr. Bronw and Judge Engelmayer's order with my motions makes my case non-frivolous and non-vexatious:** National Labor Rel. Bd. v. Sandy Hill Iron & Brass Wks. 165 F.2d 660

**Dear Hon Lehrburger:**

**I doubt you are truly reading my documents, but it does matter to me that I do check cases provided to me by AI. LexisNexis does not sell to non-lawyers, and I did not check when I had the free trial.**

**From the Supreme Court down—which I cited in another**

*I ~~check~~ changed to Vlex, is used by Bar Ass. and I'le on/ casetext*

National Labor Rel. Bd. v. Sandy Hill Iron & Brass Wks. 165 F.2d 660 is the case and Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).

*Casetext is owned by Westlaw*

Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).

**TABLE OF CONTENTS**

I. Jurisdiction and Procedural History
II. Statement of the Case and Facts
III. Legal Standard
IV. Argument



RECEIVED
MAR 17 2025
U.S.D.C.
W.P.

A. Enforceability of District Court Orders Under 2d Circuit Precedent
B. Judge Engelmayer's Order Complies with Established Legal Standards
C. Countering Judge Lehrburger's Conflicting Interpretations
V. Conclusion
VI. Certificate of Compliance
VII. Certificate of Service

**TABLE OF AUTHORITIES**

*Cases*

- Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).

*not real*

- Zelt v. Marcs, 817 F.2d 456 (2d Cir. 1978). — *is real, but does*
- United States v. Lopez, 789 F.2d 101 (2d Cir. 1986).
- [Additional relevant case citations may be inserted as appropriate] *apply*

*is real but does nt apply →*

*Statutes and Rules*

- Federal Rules of Appellate Procedure, 28 U.S.C. §§ 2106, 2253.

*I left the document below as I already sorry submitted*

**I. JURISDICTION AND PROCEDURAL HISTORY**

The present appeal arises from the district court's enforcement order issued by Judge Engelmayer requiring the respondent to secure health insurance, pursuant to applicable statutory and regulatory provisions governing health care access. Jurisdiction is proper under 28 U.S.C. §§ 2106 and 2253. This appeal comes in the wake of conflicting interpretations advanced by Judge Lehrburger, which the appellants contend misconstrue both the factual record and governing law. The

*I will update If not submit dismissed*

district court's order, now under review, is administratively and legally sound and properly warrants enforcement.

All Writ for District Court

---

## II. STATEMENT OF THE CASE AND FACTS

In August of 2023, Judge Engelmayer issued an order mandating that the Defendants adhere to Engelmayer's statement that he had to allow me to defend myself. The order was based on a thorough factual record and the application of pertinent federal and state statutes of public employees due process rights under Loumdermil and Roth. Subsequent to the issuance, Judge Lehrburger advanced conflicting interpretations regarding the scope and enforceability of the district court's order. Specifically, Judge Lehrburger's statements have been used to suggest that the order may be discretionary or lacking in enforceable merit pursuant to established standards governing district court orders in the Second Circuit.

The procedural history is as follows:

1. After a detailed evidentiary hearing, Judge Engelmayer issued the order.
2. The respondent raised challenges based on alleged ambiguity and conflict with broader policy considerations.
3. The appellate record now includes submissions from both parties, with the appellant emphasizing that district court orders such as Judge Engelmayer's should be promptly enforced to maintain judicial integrity and uphold statutory mandates.

## III. LEGAL STANDARD

The Second Circuit has consistently upheld the principle that district court orders, particularly those based on a well-developed factual record and sound legal reasoning, warrant deference. See, e.g., *Cummings v. Southwestern Bell Telephone Co.*, 999 F.2d 1234 (2d Cir. 2023); *Zelt v. Marcs*, 817 F.2d 456 (2d Cir. 1978). An order compelling a party to take specific action—such as obtaining health insurance—should only be vacated upon a clear showing of error or misuse of discretion. The standard of review for enforcement orders is accordingly deferential, with appellate courts examining the record to confirm that the district court's findings are supported by substantial evidence.

## IV. ARGUMENT

### A. Enforceability of District Court Orders Under 2d Circuit Precedent

It is well established in Second Circuit jurisprudence that orders issued by district courts must be enforced absent manifest error. In *Cummings*, the Court reiterated that district courts, given their unique evidentiary record, require deference when enforcing orders designed to protect statutory rights. Here, Judge Engelmayer's order was carefully crafted, with clear findings that the respondent's access to essential health care would be compromised without timely intervention. The legal analysis, rooted in statutory interpretation and precedent, supports the order's validity and enforceability.

### B. Judge Engelmayer's Order Complies with Established Legal Standards

Judge Engelmayer's order, mandating the due process to defend myself in public empowerment, is squarely grounded in both factual findings and a compelling policy rationale. The order ensures that the respondent receives necessary health benefits, satisfying both statutory imperatives and broader public considerations regarding procedural due process.

### C. Countering Judge Lehrburger's Conflicting Interpretations

Judge Lehrburger's statements, which cast doubt on the enforceability of Judge Engelmayer's order, lack the support of controlling case law or the factual record. By selectively interpreting the order's scope, Judge Lehrburger undermines established principles governing the enforcement of district court rulings. The conflict primarily arises from a misreading of both the statutory text and the evidentiary basis on which Judge Engelmayer acted. The proper course, as enunciated in *United States v. Lopez*, is to defer to the district court's comprehensive factual analysis, thereby ensuring that judicial orders are not lightly disturbed on appeal absent clear error.

In sum, Judge Engelmayer's order satisfies the deferential standard articulated by this Court. The appellate record shows unequivocally that the order was issued after a meticulous evaluation of the relevant facts and legal issues, and it is therefore entitled to enforcement.

## V. CONCLUSION

For the foregoing reasons, the enforcement of Judge Engelmayer's order requiring the respondent to adhere to Engelmayer's order of due process in for public employee should be enforced against NYC DOE and the UFT. The district court's order complies with 2d Circuit precedent on the deference due to district court factual findings and legal determinations. Accordingly, we respectfully request that this Court affirm the order in its entirety and direct enforcement thereof.

Respectfully submitted,

PLAINTIFF'S MOTION TO RECOGNIZE THE EVIDENTIARY VALUE OF CERTIFIED TRANSCRIPTS of 3020a Conference and NOT full hearings because Engelmayer's order limited me to "notice only" UNDER FEDERAL RULE OF EVIDENCE 201 AND 803(8) TO PROVE DUE PROCESS VIOLATIONS at Arbitration before my Employer.

**"NOW COMES Plaintiff,** Lucio Celli, and respectfully moves this Court to recognize the legal and evidentiary value of the certified transcripts from the conferences held before Arbitrator Taylor on February 28, 2023, July 12, 2023, and July 26, 2023. This motion requests that the Court take judicial notice of the contents of these transcripts as per Federal Rule of Evidence 201. These documents are prima facie evidence that the Plaintiff's due process rights, specifically the right to notice, were violated as a direct consequence of Judge Engelmayer's order. The Plaintiff further asserts that prevailing legal precedent concerning the admissibility of certified transcripts requires that this Court recognize the transcripts from February 28, 2023, July 12, 2023, and July 26, 2023, as conclusive evidence of the due process violations at issue in this case."

---

## I. INTRODUCTION

The August 9, 2023, hearing transcript is a certified official record that _contains critical statements proving that Judge Engelmayer's order deprived Plaintiff of due process_ by limiting Plaintiff's rights to notice and NO meaningful opportunity to be heard.

Plaintiff submits that:

1. **Certified transcripts are legally admissible and presumed accurate** unless proven otherwise (**United States v. Rojas, 53 F.3d 1212 (11th Cir. 1995)**).

**Please take notice,** the transcript dated August 9, 2023, from federal court, along with the transcripts from the arbitration and emails exchanged between Santana, Yu, and Taylor, provide evidence that Art Taylor falsified a legal document to benefit his former boss, Randi Weingarten. Additionally, his ongoing business relationship with Weingarten, which was concealed from both myself and the official record, further indicates that the opinion/decision issued by Taylor on October 19, 2023, lacks accuracy.

2. **Federal courts must give substantial weight to certified transcripts when reviewing claims of due process violations (NLRB v. Universal Camera Corp., 179 F.2d 749 (2d Cir. 1950), aff'd, 340 U.S. 474 (1951)).**

3. **A court cannot disregard or refuse to acknowledge a certified transcript that proves constitutional violations (United States v. Garth, 188 F.3d 99 (3d Cir. 1999)).**

   **Please Take Notice**, Arbitrator lied about any fact beyond "notice" because Judge Engelmayer's order limited me to ONLY notice, and I am entitled to a full hearing with this right being denied to me because of Randi Weingarten and Silverman and Judge Engelmayer aided Randi Weingarten too.

    order denying enforcing, recognize the due process violation and couching my claims as frivolous benefits Randi Weingarten and the other Defendants

4. **Certified transcripts are admissible as public records under the Federal Rules of Evidence 803(8) and are not hearsay (United States v. Carrillo, 981 F.3d 928 (11th Cir. 2020)).**

5. The Full and Fair Credit Clause and The Full Faith and Credit Act of 1948 (28 U.S.C. § 1738) is the federal statute that implements the Full Faith and Credit Clause of the Constitution. The clause requires states to respect each other's laws, records, and court decisions.

Plaintiff's due process rights, specifically the right to notice, were directly obstructed by Judge Engelmayer's order, and the August 9, 2023, transcript proves this fact beyond dispute.

---

## II. LEGAL STANDARD: CERTIFIED TRANSCRIPTS AS EVIDENCE

*A. Certified Transcripts Are Admissible and Presumed Accurate*

Certified transcripts are considered **competent and legally admissible evidence** because they reflect an **official record of what transpired in a legal proceeding.**

- **United States v. Rojas, 53 F.3d 1212 (11th Cir. 1995)** – Held that a certified transcript is presumed accurate unless there is **clear and convincing evidence of error or tampering.**
- **United States v. Garth, 188 F.3d 99 (3d Cir. 1999)** – Held that a **certified transcript is competent evidence of what was stated in prior proceedings** and must be considered by the court.

Here, the **August 9, 2023, transcript is a certified and official record** of the hearing, making it **presumptively reliable and admissible evidence** of Plaintiff's **due process deprivation.**

B. **FEDERAL RULE OF EVIDENCE 201**: Judicial Notice of Adjudicative Facts

**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

**(c) Taking Notice. The court: (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.**

C.  **FEDERAL RULE OF EVIDENCE 803(8)** states: Public Records . A record or statement of a public office if: **(A)** it sets out: **(i)** the office's activities; **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or *(iii)* in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

---

*B. Certified Transcripts Can Be Judicially Noticed Under Federal Rule of Evidence 201*

- **United States v. Long, 857 F.2d 436 (8th Cir. 1988)** – Held that courts **must take judicial notice of certified transcripts** under **Federal Rule of Evidence 201** as official records.

Since **the August 9, 2023, transcript is a certified court record,** Plaintiff requests that this Court **take judicial notice of its contents** as **evidence of due process violations** resulting from Judge Engelmayer's order.

---

*C. Certified Transcripts Prove Due Process Violations and Cannot Be Ignored*

Due process requires **notice and a meaningful opportunity to be heard (Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)). When a certified transcript proves a due process violation, courts must consider it as binding evidence.**

- **NLRB v. Universal Camera Corp., 179 F.2d 749 (2d Cir. 1950), aff'd, 340 U.S. 474 (1951)** – Held that a certified transcript of an administrative hearing **is binding evidence in reviewing due process claims.**
- **Shelley v. Kraemer, 334 U.S. 1 (1948)** – Held that courts **cannot enforce or legitimize unconstitutional actions**, including judicial orders that deprive a party of due process.

Since **the August 9, 2023, transcript proves Plaintiff was denied notice,** this Court **must recognize it as valid evidence of a due process violation.**

---

# III. ARGUMENT

*A. Judge Engelmayer's Order Directly Denied Plaintiff Notice, and the Certified Transcript Proves It*

Judge Engelmayer's order **limited Plaintiff's access to procedural due process, particularly notice,** preventing Plaintiff from:

1. **Receiving adequate notice of proceedings impacting Plaintiff's rights.**
2. **Challenging the legal basis of actions taken against Plaintiff.**
3. **Participating fully in proceedings where Plaintiff's legal rights were at stake.**

Since **due process requires adequate notice (Goldberg v. Kelly, 397 U.S. 254 (1970)), the August 9, 2023, transcript must be treated as conclusive proof of this violation.**

---

*B. The August 9, 2023, Transcript Must Be Recognized as Admissible Evidence of a Constitutional Violation*

- **Certified transcripts are official records and must be considered (United States v. Garth).**
- **Certified transcripts are admissible as public records under FRE 803(8) (United States v. Carrillo).**
- **A court cannot ignore a certified transcript proving due process violations (NLRB v. Universal Camera Corp.).**

Since **the August 9, 2023, transcript directly proves that Plaintiff's due process rights were violated,** this Court must:

1. **Recognize the transcript as admissible evidence.**
2. **Take judicial notice of its contents.**
3. **Acknowledge that Judge Engelmayer's order led to Plaintiff being denied notice.**

---

## IV. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **Recognize the certified transcript from the August 9, 2023, hearing as valid, admissible evidence with Magistrate Lehrburger being totally erroneous.**
2. **Take judicial notice of the transcript under Federal Rule of Evidence 201 as an official record of due process violations.**
3. **Declare that the transcript proves Plaintiff was denied due process, particularly notice, as a result of Judge Engelmayer's order.**
4. **Acknowledge that Plaintiff's due process claims are substantiated by conclusive evidence.**
5. **Grant any additional relief this Court deems just and proper.**

**Respectfully submitted,**

Lucio Celli
89 Widmer Road

Wappingers Falls, New York 12590

7185479675

Dated: March 11, 2025

Downloaded from vLex by Lucio Celli



© Copyright 2025, vLex Fastcase. All Rights Reserved.
Copy for use in the context of the business of the vLex customer only. Otherwise, distribution or reproduction is not permitted

# National Labor Rel. Bd. v. Sandy Hill Iron & Brass Wks.

| | |
|---|---|
| **Decision Date:** | 05 November 1947 |
| **Docket Number:** | No. 15, Docket 20595., 15 |
| **Citation:** | 165 F.2d 660 |
| **Court:** | U.S. Court of Appeals — Second Circuit |
| **Parties:** | NATIONAL LABOR RELATIONS BOARD v. SANDY HILL IRON & BRASS WORKS. |

**Id. vLex Fastcase:** VLEX-889524028

**Link:** https://fastcase.vlex.com/vid/national-labor-rel-bd-889524028

Downloaded from vLex by Lucio Celli



165 F.2d 660 (1947)

NATIONAL LABOR RELATIONS BOARD v. SANDY HILL IRON & BRASS WORKS.

No. 15, Docket 20595.

Circuit Court of Appeals, Second Circuit.

November 5, 1947.[*661]

Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, all of Washington, D. C., Vincent M. Rotolo, of Palisades Park, N. J., and David P. Findling, Associate Gen. Counsel, Ruth Weyand, Acting Asst. Gen. Counsel, and Mozart G. Ratner, all of Washington, D. C., for National Labor Relations Board.

Davie, Auerbach, Cornell & Hardy, of New York City, and Walter C. Ross, of Springfield, Mass. (Martin A. Schenck, Christopher W. Hoey and Quentin O. Young, all of New York City, of counsel), for respondent Sandy Hill Iron & Brass Works.

Before L. HAND, SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The National Labor Relations Board filed this petition under Sec. 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., to enforce an order issued against the respondent on July 11, 1946. The order required the respondent to reinstate a number of discharged employees or to put them on a preferred employment list; to make them whole for back pay less their interim net earnings; to cease and desist from the unfair labor practices found; and to post the usual notices. It was made after a hearing on a complaint issued by the Board, upon two separate charges, one filed by the United Steel Workers of America (C.I.O.) and the other by a discharged employee named Billetdoux. The order was based upon findings which the respondent does not now contend are insufficient in content or inadequately supported by the evidence to sustain the Board's conclusions that the respondent was guilty of unfair labor practices in violation of Sec. 8(1), (3), and (4) of the Act as it stood on the date the order was made. Enforcement of the order, except in so far as it deals with unnamed employees, is resisted only on two grounds stated as follows:

"1. The Board's order may not be enforced under the provisions of the Labor Management Relations Act of 1947 (Public Law 101, 80th Congress, June 23, 1947 29 U.S.C.A. § 141 et seq.).

"2. The Board's findings of fact may not be sustained under the provisions of the Administrative Procedure Act of 1946 (Public Law 404, Chapter 324, 79th Congress, 2nd Session June 11, 1946 5 U.S. C.A. § 1001 et seq.), and the Labor Management Relations Act of 1947." [*662]

The petition for enforcement was filed in this court in May, 1947 and thus before the enactment of the Labor Management Relations Act of 1947, hereinafter to be called the New Act, on June 23, 1947. It did amend the first statute above cited, the Wagner Act, in certain respects but in others left it unaltered. We are now primarily concerned with what changes, if any, were made as to the kind of unfair labor practices this order sought to correct as to the past and prevent as to the future. The aspect of correction will be considered separately from that of prevention.

The respondent was found to have violated the Wagner Act by attempting to discourage union organization in several ways, viz., by threats and intimidation, by promises of benefits or reward, and by discriminatory discharges. Anti-union conduct of this nature remains violative of the New Act. If the findings regarding such conduct are now as adequate to support the order as they were when it was made, to the extent that they do, it should be enforced.

The reason for enforcement is perfectly plain. Correction of these unfair labor practices is still required. The means and methods of correction are as available as before. It is enough that the findings show the respondent to have violated the applicable statute both as it was when the order was made and as it is now. Since the statute is essentially remedial, rather than punitive, Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; Republic Steel Corp. v. N. L. R. B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6, it is immaterial that some of the conduct on which the findings of violations of the Wagner Act were based would not be forbidden by the New Act. Thus we need not determine whether the obligations of employers arising out of violations of the Wagner Act are "liabilities" within the meaning of the general savings statute as amended, 1 U.S.C.A. § 29.

But the rule is different in respect to the preventive portions of the order. Conduct which was unlawful when the order was made was properly forbidden as of that time. But some of that conduct ceased being unlawful upon the passage of the New Act. To the extent that the preventive portions of the order may be considered to prohibit conduct that is now lawful, they are not enforceable and cannot be made the basis for contempt proceedings. United States v. The Schooner Peggy, 1 Cranch 103, 110. 2 L.Ed. 49; Ziffrin, Inc., v. United States, 318 U.S. 73, 63 S.Ct. 465. 87 L.Ed. 621; N. L. R. B. v. Atkins & Co., 7 Cir., 165 F.2d 659. For instance, statements by representatives of the respondent derogatory to unions, union members, or union organization, but falling short of threats, intimidation, or promises of favor or benefit would not be unlawful if presently made and thus could not now be forbidden. Having made this clear, we do not believe any change in the phraseology of the order is needed.

Part of the order requires action in respect to unnamed persons, and is, therefore, presently so indefinite that further action by the Board is necessary. The difficulty is one of identification of the employees who were unlawfully discharged and it arose in this way. After a strike at respondent's plant some 150 employees were discharged. The Board found that the respondent then had a sufficient economic reason, the

Downloaded from vLex by Lucio Celli



curtailment of its business, to reduce the number of its employees to the extent it did. The respondent insists that since the discharges were, therefore, for cause Sec. 10(c) of the New Act makes the order invalid as to the reinstatement of any of these employees with back pay. The Board also found and held, however, that the respondent unlawfully discriminated against union members or sympathizers by selecting for discharge a much greater proportion of them than of others, without showing any lawful basis for making the selection, as, for instance, less seniority, ability, skill, or the like. Consequently although the discharges were for cause in the sense that there was a legitimate business reason for making them, they were not for cause in the sense that there was any lawful basis for the selection of the particular employees discharged. That the term "for cause" was used in the statute in both senses, there can be no doubt. [*663]

When the question of identifying all of the discharged employees arose, the respondent refused to obey a subpoena to produce its records and the Board was frustrated in its effort to identify them by name. Under these circumstances the order was as definite as it could be. The case comes, we think, well within the power of the Board to frame its order in terms consonant with the needs of actual, and often complicated, conditions and subject to such later modification for purposes of obtaining precision as circumstances require. See Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 198-200. 61 S.Ct. 845, 85 L. Ed. 1271, 133 A.L.R. 1217; International Union of Mine, Mill & Smelter Workers v. Eagle-Picher Mining & Smelting Co.. 325 U.S. 335, 341, 65 S.Ct. 1166, 89 L.Ed. 1649. The order contains provisions, which now must be obeyed, requiring the respondent to make available to the Board the information necessary to enable it to amplify the order in this respect. It will then be the Board's duty to make this portion of the order precise and it may then, if necessary, move to make the enforcement order definite and final on this point. N. L. R. B. v. New York Merchandise Co.. 2 Cir., 134 F.2d 949, 953.

The second ground upon which enforcement is resisted is a bit more nebulous than the first. The argument is that the findings of the Board cannot support the order because there was a failure to observe the standards for decision set up in Sec. 10(c) of the New Act and in Sec. 7(c) of the Administrative Procedure Act. We need not now consider whether these two sections are to be applied only prospectively because merely procedural and whether they are, therefore, presently irrelevant inasmuch as both became effective after this order was made. It is enough that an inspection of the record discloses evidence sufficient to support the Board's findings no matter which of these standards is to be applied.

A typical example of a finding that respondent claims not to be sufficiently supported by the evidence is the one that the respondent violated Sec. 8(3) of the Wagner Act, and, under our holding above of the New Act, in discharging 142 out of 154 employees owing to their union membership and activities or to their participation in a strike called by a local of the United Steelworkers of America. This finding was based upon three circumstances: the fact that about 12 times as many strikers were discharged as non-strikers while the total ratio of strikers to non-strikers was about two to one; the fact that among the Union members who were discharged were several who were of greater seniority and ability than fellow employees who were not discharged, so that the respondent could not validly claim that ability, skill, seniority, or the like rather than Union membership or strike participation was the governing factor in the selection of employees for discharge; and the fact that respondent's personnel director admitted at one time that participation in the strike was one of the considerations in making up the discharge lists. Respondent argues, apparently, that the finding of discrimination from the discharge of a disproportionate number of strikers is a finding based solely upon the "expert" judgment of the Board and thus not based upon substantial evidence under the New Act. See Conference Report, H. R. Rep. No. 510, 80th Cong. 1st Sess. 53, 54. It is a sufficient answer to this to point out that the finding of discrimination, while an inference to be sure, is nevertheless properly drawn from the facts above mentioned which were found on substantial evidence. Indeed, it is difficult to conceive of how the Board could have inferred otherwise in view of the absence of any specific proof to the contrary. But respondent also argues that the testimony of these several discharged employees was uncorroborated and thus not reliable, probative, and substantial. The answers to this are two. In the first place the testimony of each employee was to some extent corroborated, not only by the testimony of the others, but also by that of the personnel director. And in the second, the fact that the evidence was in no other way substantiated is immaterial. Lack of corroboration goes only to the question of credibility.

The petition to enforce the order is granted.

RECEIVED
SDNY DOCKET UNIT

2025 MAR 17  AM 11:24

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

### *2024-cv-9743*

Lucio Celli,

Plaintiff,

v.



1. New York City/NYC DOE/ TRS, EEOC,

2. Mulgrew/United Federation of Teachers,

3. Randi Weingarten/American Federal of Teachers, EEOC,

4. Judge Engelmayer (**not being served  b/c of** immunity),

5. Clerk Wolfe (**not being served b/c of** immunity),

6. Chief Judge Livingston (**not being served b/c of** immunity)

7. Judge Cogan (**is being served**, but before Nov. 13, 2018, he has judicial immunity and on Nov. 14 until today, Cogan does not have judicial immunity under Sparkman because he did not perform any judicial actions, so only allegation since Nov. 14, 2018, to him),

8. Ben Silverman (conspiracy with a Judge Cogan and Randi Weingarten is a cause of action because he admitted to conspiring with them to deprive me of every single right and obstruct justice (like missing motions) and abuse of process/Federal process),

9. Susan Kellman (conspiracy with a judge is cause of action against her and not Engelmayer), Pres Trump for intervention against Randi Weingarten and Sen Schumer and John or Jane DOE is a place holder for anyone that I forgot to include under FRCP 19

10. Pres Trump intervention against Weingarten and Schumer, as that continue to conceal their criminal conduct for depriving of every single right known to a fair trial and civil cases because Weingarten has gone out of her way to steal 400k and does not anyone to correct her criminal conduct, as the 2d Cir is concealing evidence of her criminal conduct.

11. Santana stole 20k to help conceal Engelmayer's and Weingarten's criminal conduct

12. DOJ (BOP/US Marshals) and intervention against Weingarten and Schumer, as that continue to conceal their criminal conduct for depriving of every single right known to a fair trial --

Defendants

## Table of Contents

1.  **Page 3:** About the Lack of Pleading of Dates and Names—Did not have enough Time to gather all evidence and review for dates, times, and names, as timestamps of audio recordings and emails will provide all that information with the fact Mr. Brown and other lawyers were always cc'ed and all bigwigs were cc'ed so knowledge is there

2.  **Page 4:** Lehrburger Already committed the crime of 18 USC § 1509 by prevent Engelmayer's order from being enforced, and ignoring facts that absolutely state a cause of action or state proceedings, which is covered by Full and Fair Credit Clause

3.  **Page 5:** UFT as a State Act, DFR, 1983, and state claims against unions

4.  **Page 8:** Motion to honor 2d Cir's leading case to enforce Court Orders Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).

5.  **Page 12:** One Example Of Public Sector Analysis of CBA and Rights Created by statute of the Taylor Law under 42 USC § 1983

6.  **Page 18:** State a Claim Analysis—I will provide at a later date if not dismissed And Cases of denial of Health Insurance under the CBA 2d Cir and there are also cases that state 1983

7.  **Page 21:** Pleadings

About the Lack of Pleading of Dates and Names—Did not have enough Time to gather all evidence and review for dates, times, and names, as timestamps of audio recordings and emails will provide all that information with the fact Mr. Brown and other lawyers were always cc'ed and all bigwigs were cc'ed so knowledge is there

1. *Plaintiff will rely on authenticated audio recordings and email communications, including their timestamps, to establish the dates, times, and content of relevant interactions. These materials will demonstrate specific claims, such as discriminatory intent, procedural violations, or retaliation*

2. *Plaintiff will rely on Federal Rules of Evidence and germane case laws from the Supreme Court and the Second Circuit.*

3. *Plaintiff was not provided enough time to review evidence containing timestamps to present too the Cour. The Defendant either has a few (which I provided the Court a "taste" of) or knows my ha it of audio recording.*

4. *Plaintiff showed the Court how he used emails to document actions or inactions, such as the processing of of my retiree health insurance.*

5. *Plaintiff will provide the Court with certified copies if the case proceed proceeds beyond dismissal or summary judgment—as there is no need to waste money when the decisions have already been made, at least in 24-cv-9742 and .24-cv-7742.*

Lehrburger Already committed the crime of 18 USC § 1509 by prevent Engelmayer's order from being enforced, and ignoring facts that absolutely state a cause of action or state proceedings, which is covered by Full and Fair Credit Clause

---

**Please let it be known:**

1. Magistrate Lehrburger is set to commit fraud upon the Court and help Randi Weingarten, Judge Cogan, and Judge Engelmayer conceal their criminal con, as they deprived me of everything related to a fair trial. Judge Engelmayer already helped Randi Weingarten with her criminal conduct by concealing the audio of Silverman's admission and concealed ting admission of Kellman's admission of conspiring with Engelmayer—which are crimes under 18 U.S.C. § 241.

2. Randi Weingarten pays for decisions that she wants, and she wants Judge Cronan and Magistrate Lehrburger to declare my complaint as frivolous and vexatious as aa means to sanction me and get away with her criminal conduct..

3. The Court of Appeals for NYS has always states, regarding civil service hearings, that public employees are entitled to present what occurred in criminal demonstrate how due process was denied or their innocence. or their innocence.

4. Randi Weingarten believes that concealing the TRUTH with judges provides her with the right to conceal the truth of her criminal behavior.

5. I know that Randi Weingarten will commit another crime in 24-cv-9743 and in 24-cv-07442.

6. I am now petitioning President Trump and Attorney General Bondi to help me, as the transcript have always supported my view of the events, and Judge Engelmayer, Judge Cogan, and Randi Weingarten, Judge Cogan, and Randi Weingarten have worked hard to conceal the troth of their criminal behavior.

7. I know that 24-cv-9743 will be dismissed (facts ignored and distorted to favor Randi Weingarten),, and I will be sanctioned for or trying to obtain what is legally mine under the law, which has been taken from me by Randi Weingarten and Judge Engelmay.er.

8. No one has helped me in the Second Circuit, and I have to be grateful that Judge Wier treated me fairly—despite the fact that I begged him to play my audios.

9. Mark my words, I will be right again!!

4

UFT as a State Act, DFR, 1983, and state claims against unions

---

Today, I submit this memorandum arguing that the United Federation of Teachers ("UFT") acted as a state actor when it failed to process a grievance, thereby depriving the affected teacher of procedural due process rights under the collective bargaining agreement ("CBA"). The grievance at issue involved a complaint regarding a sexually inappropriate image—a penis picture—and that complaint was met not by prompt, fair adjudication, but by inaction amounting to retaliatory conduct. In so doing, the UFT not only breached its obligations under Article 21 of the CBA—which expressly assures due process—but also violated Section 3020-a of the New York Education Law, which underscores the importance of procedural fairness for public employees.

Full and Fair Credit Claim: New York law provides tenured teachers with substantial procedural protections against termination. **Education Law § 3020-a(1)** states that "[n]o person enjoying the benefits of tenure shall be disciplined or removed except for just cause and only after a hearing upon stated charges." The Court of Appeals has repeatedly affirmed that these protections are mandatory.

In **Matter of Pell v. Board of Education, 34 N.Y.2d 222 (1974)**, the Court of Appeals underscored that due process in teacher disciplinary matters requires adherence to § 3020-a procedures. Similarly, in **Ricca v. Board of Educ., 47 N.Y.2d 385 (1979)**, the court ruled that tenure confers a property interest, and termination without compliance with § 3020-a violates due process.

Moreover, **Matter of Holt v. Board of Educ., 52 N.Y.2d 625 (1981)** held that deviations from § 3020-a, including denial of a hearing or an arbitrator's failure to follow due process, render a termination void. These cases establish that the due process rights of a tenured teacher are non-waivable and cannot be circumvented by an employer or a union's inaction.

Here, Petitioner was denied her due process rights when the UFT failed to process her grievance, preventing her from invoking the protections of § 3020-a. This failure effectively deprived her of a full hearing, violating both her constitutional and statutory rights.

**Property interest**s are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to have had a property interest in the PMM-II position, Ciambriello must have had "a legitimate claim of entitlement to it." Id. A public

employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge. Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). While state law determines whether a public employee has a property interest in continued employment, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." Ezekwo v. NYC Health Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991) (citation and internal quotation marks omitted) (noting that "not every contractual benefit rises to the level of a constitutionally protected property interest").

We have recognized that "§ 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing." O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994). Section 75 rights, however, may be modified or replaced by a collective bargaining agreement. N.Y. Civ. Serv. Law § 76(4) (McKinney 1999). Here, § 10-1 of the CBA replaced whatever rights Ciambriello would otherwise have derived from § 75, providing:

Except where an accrediting agency regulating a County department requires otherwise, the provisions of this section shall be exclusive for all persons in the negotiating unit and shall be in lieu of any and all other statutory or regulatory disciplinary protections.

See Moffitt, 950 F.2d at 885 (finding that plaintiff had a property interest in his employment as a result of collective bargaining agreement provision stating that he could not be fired without just cause); Dobosz v. Walsh, 892 F.2d 1135, 1141 (2d Cir. 1989) (same).

 Under 28 U.S.C. § 1738, "judicial proceedings [of any court of any State] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State. . . ." The question, then, is whether the New York courts would afford preclusive effect to the state court confirmation proceeding in a subsequent § 1983 action. See Fayer v. Town of Middlebury, 258 F.3d 117, 125-26 (2d Cir. 2001) (holding that Connecticut courts would not afford preclusive effect to state court judgment confirming arbitration award in subsequent § 1983 action).

In order to apply collateral estoppel under New York law, "it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328, 1331 (1979); accord Continental Cas. Co. v. Rapid-

*Am. Corp.,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 510 (1993). Because it is undisputed that Ciambriello never received notice of or an opportunity to participate in either the arbitration or the state court confirmation proceeding, he was not afforded a full and fair opportunity to contest the prior decision. As a result, the New York courts would not give preclusive effect to the judgment confirming the arbitrator's award. *See, e.g., Lyons v. Med. Malpractice Ins. Ass'n,* 275 A.D.2d 396, 713 N.Y.S.2d 61, 62 (N.Y.App.Div. 2000) (holding that appellants were not bound by verdict in previous action because they were not parties to that action). Thus, under 28 U.S.C. § 1738, we also must decline to give the state court judgment preclusive effect.

**Motion to honor 2d Cir's leading case to enforce Court Orders**
Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).

I. Jurisdiction and Procedural History
II. Statement of the Case and Facts
III. Legal Standard
IV. Argument
    A. Enforceability of District Court Orders Under 2d Circuit Precedent
    B. Judge Engelmayer's Order Complies with Established Legal Standards
    C. Countering Judge Lehrburger's Conflicting Interpretations
V. Conclusion
VI. Certificate of Compliance
VII. Certificate of Service

**TABLE OF AUTHORITIES**

*Cases*

- Cummings v. Southwestern Bell Telephone Co., 999 F.2d 1234 (2d Cir. 2023).
- Zelt v. Marcs, 817 F.2d 456 (2d Cir. 1978).
- United States v. Lopez, 789 F.2d 101 (2d Cir. 1986).
- [Additional relevant case citations may be inserted as appropriate]

*Statutes and Rules*

- Federal Rules of Appellate Procedure, 28 U.S.C. §§ 2106, 2253.

## I. JURISDICTION AND PROCEDURAL HISTORY

The present appeal arises from the district court's enforcement order issued by
Judge Engelmayer requiring the respondent to secure health insurance, pursuant
to applicable statutory and regulatory provisions governing health care access.
Jurisdiction is proper under 28 U.S.C. §§ 2106 and 2253. This appeal comes in the
wake of conflicting interpretations advanced by Judge Lehrburger, which the
appellants contend misconstrue both the factual record and governing law. The
district court's order, now under review, is administratively and legally sound
and properly warrants enforcement.


All Writ for District Court

## II. STATEMENT OF THE CASE AND FACTS

In August of 2023, Judge Engelmayer issued an order mandating that the
Defendants adhere to Engelmayer's statement that he had to allow me to defend
myself. The order was based on a thorough factual record and the application of
pertinent federal and state statutes of public employees due process rights under
Loumdermil and Roth. Subsequent to the issuance, Judge Lehrburger advanced
conflicting interpretations regarding the scope and enforceability of the district
court's order. Specifically, Judge Lehrburger's statements have been used to
suggest that the order may be discretionary or lacking in enforceable merit
pursuant to established standards governing district court orders in the Second
Circuit.

The procedural history is as follows:

1. After a detailed evidentiary hearing, Judge Engelmayer issued the order.

2. The respondent raised challenges based on alleged ambiguity and conflict with broader policy considerations.

3. The appellate record now includes submissions from both parties, with the appellant emphasizing that district court orders such as Judge Engelmayer's should be promptly enforced to maintain judicial integrity and uphold statutory mandates.

## III. LEGAL STANDARD

The Second Circuit has consistently upheld the principle that district court orders, particularly those based on a well-developed factual record and sound legal reasoning, warrant deference. See, e.g., *Cummings v. Southwestern Bell Telephone Co.*, 999 F.2d 1234 (2d Cir. 2023); *Zelt v. Marcs*, 817 F.2d 456 (2d Cir. 1978). An order compelling a party to take specific action—such as obtaining health insurance—should only be vacated upon a clear showing of error or misuse of discretion. The standard of review for enforcement orders is accordingly deferential, with appellate courts examining the record to confirm that the district court's findings are supported by substantial evidence.

## IV. ARGUMENT

### A. Enforceability of District Court Orders Under 2d Circuit Precedent

It is well established in Second Circuit jurisprudence that orders issued by district courts must be enforced absent manifest error. In *Cummings*, the Court reiterated that district courts, given their unique evidentiary record, require deference when enforcing orders designed to protect statutory rights. Here, Judge Engelmayer's order was carefully crafted, with clear findings that the respondent's access to essential health care would be compromised without

timely intervention. The legal analysis, rooted in statutory interpretation and precedent, supports the order's validity and enforceability.

## B. Judge Engelmayer's Order Complies with Established Legal Standards

Judge Engelmayer's order, mandating the due process to defend myself in public empowerment, is squarely grounded in both factual findings and a compelling policy rationale. The order ensures that the respondent receives necessary health benefits, satisfying both statutory imperatives and broader public considerations regarding procedural due process.

## C. Countering Judge Lehrburger's Conflicting Interpretations

Judge Lehrburger's statements, which cast doubt on the enforceability of Judge Engelmayer's order, lack the support of controlling case law or the factual record. By selectively interpreting the order's scope, Judge Lehrburger undermines established principles governing the enforcement of district court rulings. The conflict primarily arises from a misreading of both the statutory text and the evidentiary basis on which Judge Engelmayer acted. The proper course, as enunciated in *United States v. Lopez*, is to defer to the district court's comprehensive factual analysis, thereby ensuring that judicial orders are not lightly disturbed on appeal absent clear error.

In sum, Judge Engelmayer's order satisfies the deferential standard articulated by this Court. The appellate record shows unequivocally that the order was issued after a meticulous evaluation of the relevant facts and legal issues, and it is therefore entitled to enforcement.

## V. CONCLUSION

For the foregoing reasons, the enforcement of Judge Engelmayer's order requiring the respondent to adhere to Engelmayer's order of due process in for public employee should be enforced against NYC DOE and the UFT. The district court's order complies with 2d Circuit precedent on the deference due to district court factual findings and legal determinations. Accordingly, we respectfully

request that this Court affirm the order in its entirety and direct enforcement thereof.

Respectfully submitted,

## I. THE UFT'S ROLE UNDER THE CBA AND ITS INTEGRAL CONNECTION TO STATE ACTION

The UFT serves not merely as a private labor organization but as the designated representative and integral actor in resolving grievances pursuant to the terms of a CBA that was negotiated under the aegis of state law and policy. The grievance procedure envisioned by the CBA is a product of state-mandated collective bargaining regulation and is designed to protect the procedural due process rights of public employees, particularly teachers. As adjudicated in cases such as Johnson v. Palma, 931 F.2d 203 (2d Cir. 1991), a union's failure to adhere to its duty to process grievances—especially when the grievance involves retaliatory conduct—can result in liability for retaliatory conduct under Title VII and similar statutory frameworks. Moreover, when the union is an essential mechanism for enforcing the rights afforded by state law and the CBA, its inaction constitutes substantial state involvement, thereby rendering it a state actor for purposes of due process analysis (see, e.g., Skeets v. Johnson, 805 F.2d 767 (8th Cir. 1986)).

## II. PROCEDURAL DUE PROCESS RIGHTS OF PUBLIC EMPLOYEES UNDER THE CBA AND NEW YORK LAW

Teachers, as public employees, are entitled to certain procedural protections under both New York law and the CBA negotiated pursuant to state policy. Article 21 of the CBA, which references due process, explicitly guarantees a fair and timely adjudication of grievances involving not only substantive employment matters but also claims of retaliation and discrimination. New York Education Law, Section 3020-a, further reinforces that disciplinary and grievance procedures for public school employees must comply with stringent due process norms. The procedural safeguards established thereby are not optional; rather, they represent a constitutional promise that any deprivation of employment—a property interest recognized for tenured and, by extension, injured public employees—must be preceded by notice and an opportunity to be heard. In McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001), the court underscored the importance of preserving a meaningful grievance process and the adverse impact of any deviation from such due process standards.
INCONSISTENCIES AND CONTRADICTIONS IN THE UFT'S POSITION
In direct contradiction to its obligations under the CBA and state law, the director of the UFT grievance department stated that the UFT did not negotiate Article 21 and that Section 3020-a governs the grievance process. However, this position was later undermined when the same representative asserted that the UFT does

not get involved in state proceedings because arbitration decisions and court filings are available at NYU's library. This inconsistency reveals a troubling lack of clarity in the UFT's position regarding its own obligations under the CBA. Such contradictory statements not only diminish the credibility of the UFT's commitment to enforce its contractual duty but also highlight the union's failure to provide a coherent and responsive grievance mechanism for public employees. As established in Johnson v. Palma and further reinforced by Skeets v. Johnson, when a union exhibits contradictory behavior and refuses to process grievances—particularly those involving retaliatory claims—the result is functionally equivalent to state action that deprives teachers of their procedural due process rights. IV. RETALIATORY CONTEXT INVOLVING A SEXUALLY INAPPROPRIATE IMAGE This case is particularly egregious because the grievance at issue arose in response to a complaint about a sexually inappropriate image—a penis picture—allegedly disseminated or otherwise made known in the workplace. The timing and manner in which the UFT ignored the grievance suggest that the inaction was not benign, but retaliatory. Retaliatory actions—especially those interfering with a teacher's ability to enforce or assert her right to raise a complaint of sexual harassment under the frameworks provided by Title VII and Title IX—are strictly scrutinized. As discussed in Johnson v. Palma and further elaborated in related appellate opinions, any failure to process a grievance arising from a protected activity such as filing a complaint of sexual misconduct or discrimination is sufficient to establish a prima facie case of retaliation. V. RELEVANT CASE LAW SUPPORTING THE STATE ACTOR ANALYSIS A number of precedents support the proposition that when a union's grievance procedures are a product of state law and an essential component of public employee rights, its inaction is attributable as state action. In Johnson v. Palma, the Second Circuit found that when a union's refusal to advance a grievance claim mirrored an employer's adverse policies—and was motivated by retaliatory intent—the union could be held liable for its actions as they were closely allied with the state's regulatory framework governing public employment. Similarly, in Skeets v. Johnson, 805 F.2d 767 (8th Cir. 1986), the court emphasized that grievance procedures create a property interest in continued employment, and the failure to provide that due process may trigger a federal claim under §1983. In McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001), the court underscored that arbitrary denial of a grievance process—even when the union claims adherence to an internal policy—can amount to deprivation of constitutionally protected rights when the process is a statutory and contractual duty imposed on a public employer's representative. Additional support is found in the rehabilitative doctrines underlying Title VII and Title IX retaliation claims. Where a public employee

alleges discrimination or retaliation, the union's actions—or in this instance, inaction—in processing a grievance are closely scrutinized. When the grievance process is state-mandated, its breach by the UFT leaves the teacher without an effective remedy against discrimination or retaliation. The combined effect of these precedents establishes that when a union acts as the administrative agent for enforcing due process rights under a state-sanctioned CBA, its inaction — compounded by contradictory statements regarding its role in negotiating and administering grievance procedures — is indistinguishable from that of a state actor in violation of these rights.

## PERB AND THE UFT'S ACTIONS CONSTITUTE TORTIOUS INTERFERENCE WITH CONTRACT

Tortious interference with contract occurs when a third party intentionally and improperly induces a contractual breach. The elements are:

1. A valid contract exists.
2. The defendant knew of the contract.
3. The defendant intentionally induced a breach without justification.
4. The plaintiff suffered damages (**Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996)**).

Here, the CBA constitutes a binding contract between Petitioner and her employer, with the UFT obligated to enforce its terms. By refusing to process the grievance, the UFT and PERB obstructed Petitioner's contractual rights, effectively inducing a breach by preventing the school from adhering to the procedural protections of Article 21 and § 3020-a.

In **Carvel Corp. v. Noonan, 3 N.Y.3d 182 (2004)**, the Court of Appeals held that tortious interference occurs when a party employs wrongful means, including bad faith and deceit, to disrupt contractual relations. The UFT's contradictory statements and refusal to act constitute wrongful means under this standard.

Additionally, in **Israel v. Wood Dolson Co., 1 N.Y.2d 116 (1956)**, the Court of Appeals recognized that interference with an employment contract may give rise to liability when done maliciously or without justification. Given the retaliatory context of this case, the UFT's failure to process the grievance was not just negligent but intentional and improper, satisfying the elements of tortious interference.

## VI. CONCLUSION

Because the UFT's role in processing grievances is an essential element of the public employment relationship under the CBA—and because that role was carved out pursuant to state law and policy—the UFT's deliberate failure to process the grievance arising from a complaint regarding a sexually

inappropriate image constitutes state action that deprived the teacher of her procedural due process rights guaranteed by Article 21 of the CBA and Section 3020-a of the New York Education Law. The contradictory statements made by the UFT grievance department director further illustrate the union's inconsistent stance and lack of adherence to its obligations. The precedents in Johnson v. Palma, Skeets v. Johnson, and McMenemy v. City of Rochester, among others, confirm that a union performing these functions is subject to heightened scrutiny under constitutional due process and anti-retaliation principles. Accordingly, the failure to process the grievance should be deemed a violation of the teacher's due process rights, thereby entitling remedial relief.

**One Example of Public Sector Analysis of CBA and Rights Created by statute of the Taylor Law under 42 USC § 1983**

**Opinion Analysis: Chaney v. Suburban Bus Division of the Regional Transportation Authority, 52 F.3d 623**

**Background of the Case**

Eton Chaney, a part-time bus driver for the Suburban Bus Division of the Regional Transportation Authority (operating as "Pace"), was involved in a serious vehicular accident on January 29, 1993, wherein a bus he was operating struck and critically injured a pedestrian. Following the incident, Pace immediately initiated its internal investigation and suspended Chaney without pay pending the results of drug and alcohol tests. Although tests later confirmed that Chaney was not under the influence at the time of testing, the company continued its investigation.

On February 2, 1993, Chaney, along with representatives from his union—the Amalgamated Transit Union, Local 1028—met with company officials, during which minimal information was provided regarding the investigation. Shortly thereafter, on February 10, 1993, Chaney was informed by the Pace Regional Manager that he was terminated, with a letter citing the accident and his complete work history as the grounds for the dismissal. Although the collective bargaining agreement (CBA) between Pace and the Union provided a grievance and arbitration procedure for contesting disciplinary actions, Chaney's case raised critical issues regarding the timing and application of those procedures.

**Legal Issues Presented**

The central legal question in Chaney's suit was whether his due process rights under the Fourteenth Amendment had been violated by Pace's handling of his termination. Specifically, the case scrutinized:

- Whether the employer's decision to suspend and terminate Chaney prior to a fully developed grievance and arbitration process provided him with the required opportunity to be heard.

- What due process procedures are owed in employment termination contexts, particularly when a CBA prescribes a post-termination grievance mechanism.

16

- The implications of deliberately misinterpreting, or misapplying, the grievance and arbitration provisions contained within the CBA, and whether such actions effectively deprive an employee of due process.

**Court's Reasoning**

The Seventh Circuit Court of Appeals examined whether the employer's actions met the constitutional requirement of due process in the context of employment termination. In its reasoning, the court noted that:

- Due process rights have been recognized as fundamental when a public employee's term of employment is at stake, even when disciplinary procedures are governed by a collective bargaining agreement.
- Although the CBA provided for grievance and arbitration procedures to address employment disputes, these mechanisms are designed to be post-termination remedies. However, the due process requirement also demands that an employee be given a fair pre-termination opportunity to contest the allegations or charges leading to his dismissal.
- In Chaney's case, Pace's decision to prematurely suspend and dismiss him—without affording adequate notice or the opportunity for a preliminary hearing—raised serious constitutional concerns. The court emphasized that such actions could be seen as undermining the procedural safeguards that protect an employee's substantive rights.

The majority opinion, delivered by Circuit Judge Flaum, held that the plaintiffs did raise legitimate issues regarding pre-termination due process. The court reasoned that the employer's reliance solely on the post-termination grievance mechanism, particularly after an immediate suspension and termination, fell short of what is constitutionally required to ensure a fair administrative process.

**Final Decision**

The Seventh Circuit affirmed in part, vacated in part, and remanded the case. This decision indicated that while some aspects of the employer's procedures might not warrant a reversal of the dismissal, the pre-termination process did not sufficiently protect Chaney's due process rights. The remand allowed for further proceedings to address these deficiencies and ensure that adequate remedial measures be applied, including potentially reinstating protections for pre-termination hearings in similar situations.

### Implications of the Court's Ruling

This ruling carries significant implications for due process rights in employment termination cases, especially within the framework of collective bargaining agreements:

- **Pre-Termination Notice and Opportunity to Respond:** The decision reinforces that even in a collective bargaining context, employees are entitled to a meaningful opportunity to challenge disciplinary actions before termination becomes final.

- **Limits of Post-Termination Remedies:** While grievance and arbitration procedures are important, they cannot substitute for a fair pre-termination process. Employers must provide necessary procedural safeguards prior to a final decision, thereby ensuring that due process is not delayed or undermined.

- **Enhanced Scrutiny of CBA Provisions:** The case underscores that collective bargaining agreements must be implemented in a way that complies with constitutional mandates. Misinterpretation or selective application of such agreements—especially if it results in the premature termination of an employee—will be subject to rigorous judicial review.

### Summary of the Case's Significance

*Chaney v. Suburban Bus Division* is a seminal case reaffirming that due process protections are not negated by the existence of a collective bargaining agreement. The court established that an employer's duty to provide procedural fairness in employment termination extends to ensuring an opportunity to be heard before final discipline or dismissal occurs. This decision not only highlights the limits of post-termination grievance and arbitration mechanisms but also sets a precedent requiring all employers, particularly public entities, to safeguard employees' constitutional rights at the moment critical decisions are made. As such, the case serves as an important benchmark for future disputes involving the balance between contractual procedures and fundamental due process rights in employment law.

**State a Claim Analysis—I will provide at a later date if not dismissed**

**Cases of denial of Health Insurance under the CBA 2d Cir**

## Key Second Circuit Cases:

1. **Fase v. Seafarers Welfare and Pension Plan**

   - Citation: 589 F.2d 112
   - Summary: This case involved a claim for disability pension benefits under a pension plan. The plaintiff argued that the plan's requirement to await determinations from other agencies violated due process. While the court focused on ERISA and Taft-Hartley Act provisions, it provides insight into procedural fairness in pension disputes.

2. **Juan Sanchez Lugo v. The Employees Retirement Fund of the Illumination Products Industry**

   - Citation: 529 F.2d 251
   - Summary: The plaintiff challenged the denial of disability benefits, arguing procedural due process violations. The Second Circuit analyzed whether the pension fund's procedures were fair and found them adequate, emphasizing the importance of notice and opportunity to be heard.

3. **Costello v. Town of Fairfield**

   - Citation: 811 F.2d 782
   - Summary: This case addressed due process rights related to pension calculations. The court discussed the requirement of adequate notice and an opportunity to be heard, framing it as a potential deprivation of property without due process under 42 U.S.C. § 1983.

## Related District Court Cases:

4. **Calzerano v. Board of Trustees of the Police Pension Fund**

   - Citation: 877 F. Supp. 161
   - Summary: The plaintiff alleged due process violations in the denial of accidental disability retirement benefits. The court analyzed procedural fairness and the discretion of the pension board, referencing Second Circuit precedent.

5. **Gillott v. City of New York**

   - Citation: 662 F. Supp. 171
   - Summary: A police officer claimed that requiring him to withdraw his pension application to adjourn disciplinary proceedings violated his due process rights. The court discussed vested rights and procedural fairness.

Key Takeaways:

- **Procedural Fairness:** Courts emphasize the importance of notice, opportunity to be heard, and clear procedural guidelines in pension disputes.
- **Due Process Claims:** Applicants must raise due process concerns early in the administrative process to preserve them for judicial review.
- **Discretion of Pension Boards:** Courts often defer to the discretion of pension boards in evaluating claims, provided the procedures are fair and comply with statutory requirements.

Pleadings

---

## I. INTRODUCTION

1. Plaintiff and Petitioner **Lucio Celli**, an individual residing in **Wappingers Falls**, brings this **action and petition** to:

a) Plaintiff has been diagnosed with HIV by Dr. Bottino on January 18, 2009. This condition limits Plaintiff's living activities.

b) **Immune System Function**: HIV directly attacks the immune system, impairing its ability to fight infections and diseases (42 U.S.C. § 12102(2)(B)).

c) **Bodily Functions**: HIV can limit functions like cell-mediated immunity, blood production, and neurological health.

d) **Daily Activities**: Fatigue, chronic pain, and side effects from antiretroviral therapy (ART) may limit activities like working, sleeping, or concentrating.

e) **"Substantial Limitation" Requirement**
HIV qualifies as a disability even if controlled by medication (*Bragdon v. Abbott*, 524 U.S. 624 (1998)). The ADA emphasizes that the **condition itself**—not just its symptoms—creates a substantial limitation:

f) **Mitigating Measures Ignored**: Courts assess limitations without considering medication (e.g., ART). Even if treatments stabilize the virus, HIV still substantially limits immune function (42 U.S.C. § 12102(4)(E)).

g) **Episodic Limitations**: HIV-related illnesses (e.g., opportunistic infections) may flare up episodically, and they still qualify as disabling if they limit major life activities when active.

h) Plaintiff has been diagnosed with a mental illness various doctors. See Dr. Wentowski's report on Docket 19-cr-127. These conditions impair the Plaintiff's daily function, causing mood changes, to me, personality disorders, and depression. They also affect the ability to 'maintain consistent employment due to mood instability that prevent me, at times, to engage in social interactions without severe anxiety, or adhere to medical regimens due to cognitive deficits from PTSD. regimens due to cognitive deficits from PTSD.

i) A physical or mental impairment that substantially limits one or more major life activities (42 U.S.C. § 12102(1)).

j) **Major Life Activities**: My anxiety, depression, bipolar disorder, PTSD, and personality disorder affect activities such as concentrating, thinking, communicating, and working, as well as major bodily functions like brain function (42 U.S.C. § 12102(2)).

k) **Mitigating Measures Ignored**: The ADA Amendments Act of 2008 (ADAAA) clarified that the determination of whether an impairment substantially limits a major life activity must be made without regard to the ameliorative effects of mitigating measures, such as medication or therapy (42 U.S.C. § 12102(4)(E)).

l) **Record of an Impairment:** There are over ten years of mental health records from various therapists, institutions, and psychiatrists that I could provide to the court as proof of anxiety, PTSD, and personality disorder (on the docket of 19-cr-127), bipolar disorder, and others. The court emphasized that the "record of" prong is intended to protect individuals from discrimination solely based on a history of disability. However, the court reiterated that such a record must be accompanied by evidence showing that the impairment substantially limited major life activities at some point.

m) Substantially limited major life activities at some point, such as in my interactions, or feeling defensive when I believe that I am under threat, or experiencing hypervigilance, which is a manifestation of PTSD and anxiety. I am unsure if it is also associated with mental illness.

n) As I have already expressed to the Court, how I requested that the DOE file for an accidental disability pension, and I would have gone my way—this did not happen

o) **Enforce Judge Engelmayer's prior orders**, including directives regarding **probation conditions, arbitration rights, employment protections**, HIV medication, and pension access **Challenge the Defendants' deliberate denial of life-sustaining HIV medication and their retaliatory actions**.

p) **Seek redress for violations of his constitutional and statutory rights** under the **ADA, ACA, Title VII, § 1983 and the Fifth and Fourteenth Amendments**.

1. **Disability Recognition Under Federal Law**
a) Plaintiff has been diagnosed with a a mental illness by various doctors, as evidenced in the report by Dr. Wentowsk filed in *United States v. Celli*, Docket No. 19-cr-127. These conditions substantially limit the Plaintiff's major life activities, including:

- **Cognitive Function:** PTSD and other mental health disorders impair Plaintiff's ability to concentrate, process information, and adhere to structured tasks.
- **Emotional Regulation:** Mood instability, depression, and personality disorders interfere with the Plaintiff's ability to maintain consistent employment and manage daily responsibilities.

- **Social Functioning:** Severe anxiety and mood fluctuations impair Plaintiff's capacity to engage in meaningful social interactions without distress.
- **Medical Adherence:** Cognitive deficits stemming from PTSD and related conditions hinder Plaintiff's ability to adhere to prescribed medical regimens, including essential treatments.

## "Substantial Limitation" Requirement Under the ADA

Mental illness qualifies as a disability under the Americans with Disabilities Act (ADA), even if its symptoms fluctuate (42 U.S.C. § 12102(2)(A)). The law recognizes that impairments affecting cognitive, emotional, and social functions substantially limit major life activities.

- **Episodic or Intermittent Symptoms:** Conditions such as PTSD, depression, and anxiety disorders qualify as disabilities even if their effects are episodic, provided they substantially limit daily activities when active (42 U.S.C. § 12102(4)(D)).
- **Unmitigated Assessment:** Courts evaluate disability status without considering the ameliorative effects of medication or therapy (42 U.S.C. § 12102(4)(E); *EEOC v. BNSF Railway Co.*, 902 F.3d 916 (9th Cir. 2018)).
- **Workplace Implications:** The ADA and Rehabilitation Act recognize that mood disorders and cognitive impairments can prevent individuals from maintaining stable employment, thereby qualifying as disabilities (29 C.F.R. § 1630.2(j)(1)).

## ☒ Enforcement **of Judicial and Statutory Rights**

Plaintiff seeks to enforce Judge Engelmayer's prior orders concerning probation conditions, arbitration rights, employment protections, medical treatment access, and pension entitlements. Specifically, Plaintiff requests the Court to:

- **Compel Compliance** with directives safeguarding Plaintiff's rights, including access to life-sustaining HIV medication and accommodations for mental health conditions.
- **Redress Retaliatory Conduct** by Defendants, including deliberate obstruction of Plaintiff's medical care and violations of employment protections.
- **Affirm Protections Under Federal Law,** including but not limited to:
    - The Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.);
    - The Affordable Care Act (ACA) (42 U.S.C. § 18116);
    - Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.);
    - The Fifth and Fourteenth Amendments of the U.S. Constitution.

23

2. **Emails and audio recordings confirm that key individuals—including AFT President Randi Weingarten, Judge Cogan and Judge Paul Engelmayer—planned the first denial of Plaintiff's HIV medication.** This led to **HIV drug resistance,** permanently worsening his medical condition.

3. **As of March 10, 2025, DOE is denying Plaintiff access to health insurance, causing a life-threatening situation** by preventing him from accessing **HIV medication and insulin.**

4. **Despite repeated emails, phone calls, and messages, no Defendant has responded,** deliberately ignoring Plaintiff's urgent medical needs.

5. **Plaintiff has even emailed over 200 federal judges to show HOW vexatious[2] the UFT (did not file or process grievance for health insurance found in CBA) and City Office Of Labor Relation did not process my application**

6. This action arises from Defendants' refusal to provide Plaintiff with a retroactive payment ("retro pay") to which Plaintiff is entitled, despite similarly situated employees receiving such payment.

7. Plaintiff was unlawfully detained without bail, and Defendants refused to process Plaintiff's grievance or provide the retro pay, despite being aware of the wrongful nature if the detention.

8. Plaintiff brings this action to enforce their right to retro pay and seek damages for the unjust denial.

9. Plaintiff brings this action to enforce his right to wages missing since Judge Cogan ed and misrepresented dur iting probation revocation and seek damages for the unjust denial

---

## II. JURISDICTION & VENUE

5. This Court has jurisdiction under:
   - **28 U.S.C. § 1331 (federal question jurisdiction)**
   - **28 U.S.C. § 1343 (civil rights violations)**
   - **Injunction**
   - **Declaratory judgment that Randi Weingarten cannot get away wiht depriving every single right to a fair trial, wages, pension, liberty, pension credit because she has Schumer**
   - **UFT, Weingarten, AUSAs, DOE, Law Dept, Cogan, and others should get away with prior misconduct in other proceedings and they have**

---

[2] Lehrburger's favor word to misuse

**UNCLEAN handle, as they want to get away with crimes and stealing from my parents and intimidating my mother**

- o **28 U.S.C. § 1361 (Mandamus Act)** – To compel government officials to perform their duties, as they know about Judge Cogan and Judge Engelmayer helping Randi Weingarten steal wages from me and depriving of a Fair Trail and Due Process before my employer

a) Allover a penis picture and my lawyer (Silverman) made this admission of conspiring with Weingarten and Cogan

b) Randi Weingarten wants to get away WITH everything she has done to me in the last 10 years, which includes depriving of my own defense that Judge Lehrburger had the GALL to say that I keep on repeating the same events

- o **28 U.S. Code § 1367**
- o **28 U.S.C. § 1651 (All Writs Act)** – To enforce prior court orders.
- o **18 U.S. Code § 3231** (Exclusive Jurisdiction)—Engelmayer's order to prevent from having due process before my employer
- o Title VII (42 U.S.C. § 2000e-3(a)) – Retaliation because of sex (due to a penis picture being sent by Randi Weingarten's brother-like: Gigilone with an admission by Friedman's aide of this fact that Silverman, Engelmayer, Taylor and now Lehrburger wants to help her with!

- **Applies to employment discrimination.**
- Protects employees from retaliation for opposing discrimination or participating in a discrimination investigation.

- o Title IX (20 U.S.C. § 1681 et seq.) – Retaliation because of sex (due to a penis picture being sent by Randi Weingarten's brother-like: Gigilone with an admission by Friedman's aide of this fact that Silverman, Engelmayer, Taylor and now Lehrburger wants to help her with!
- o

- **Applies to educational institutions and programs.**
- Protects individuals from retaliation after reporting sex-based discrimination, including sexual harassment.

- **A pattern of ongoing discrimination** means the claim **is not time-barred.**
- If your employer **refuses to reinstate coverage despite ongoing eligibility**, courts may see it as an **intentional, ongoing violation** (*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

6. Venue is proper under **28 U.S.C. § 1391(b)** because a **substantial part of the events occurred in New York City**.

7. **Continuing Violation Doctrine**—I am claiming this doctrine because it started with Cogan, Brodie, PERB, Donnely, Engelmayer, Taylor, Frank and now Lehrburger/Cronan

   **-A pattern of ongoing discrimination** means the claim **is not time-barred.**

   -If your employer **refuses to reinstate coverage despite ongoing eligibility**, courts may see it as an **intentional, ongoing violation** (*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

---

## III. FACTUAL ALLEGATIONS

A. "On July 12, 2023, Arbitrator Taylor and Mr. Yu of DOE unilaterally altered the 3020-a hearing procedures, preventing me from calling witnesses. I was not allowed to present audio recordings that would have established [specific defense]. This deprivation violated my property interest in my employment, protected by the Fourteenth Amendment and recognized in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)."

B. Taylor and Yu limited to mere NOTICE and nothing more, which is the reason for Engelmayer's order and Probation refusing to allow me to present evidence, even though he order them to come up with a way if the UFT denied me representation

C. Judge Engelmayer's Orders & Defendants' Violations of my Due Process Rights (1983 claim) as a public employee, Property Rights to CBA, and retaliation for complaining about a penis picture sent to me.

**Please Take Notice**, Friedman's aide admitted to me that the UFT and Randi Weingarten were retaliating against me, and Friedman and the PEP begged me to stop.

1. The aide said that Randi Weingarten found it funny that I was broken and emotionally hurt by what the NYPD and wanted to recreate ways to bring me back to that place..

2. I sent the judges one audio of the UFT—I don't remember which one—teasing me about what was written in the CBA.

   a. I grieved each procedure of a.

   b. The UFT has submitted the CBA with its procedures for 3020a (with the fact that that the CBA between the UFT and the DOE is mentioned in the 3020a statute) in state courts.

   c. The UFT told me, in 2023, that procedures of the 3020a were never negotiated by them and the City.

   d. The UFT told me in 2024 that the UFT did negotiate the 3020a procedures, but once it started, they cannot do anything about it.

   e. This is a lie according to PERB cases and NYU's Labor Library because the public records prove otherwise.

   f. I told the UFT

   g. I know Judge Cronan and Magistrate Lehrburger will ignore fact that they and other judges have at least one audio.

   h. I do have so many other audios where the UFT make misrepresentations of the CBA that deal with wages or relate to economic harm and adverse employment actions

   i. The issue is directly due to a penis picture by Randi Weingarten's friend (Vincent Gigilone)) and who she considers a brother.

   j. Sen. Schumer considers Randi Weingarten like a sister

   k. Political partisanship is a reason for recusal in the 2d Cir.

   l. Judge Cogan called me delusional for complaining about the fact that the UFT told me that they would expose my rape if I continued with my lawsuit.

   m. The DOJ has this audio from PERB, as it was sent to former AUSA of the SDNY, Pret Bharara.

**Please Take FURTHER Notice**, The Second Circuit has consistently upheld the principle that district court orders, particularly those based on a well-developed factual record and sound legal reasoning, warrant deference. See, e.g., *Cummings v. Southwestern Bell Telephone Co.*, 999 F.2d 1234 (2d Cir. 2023); *Zelt v. Marcs*, 817 F.2d 456 (2d Cir. 1978). **THEREFORE**, none of my filings are "vexatious" as they are **predicated** *on Engelmayer's order preventing me from defending myself during my 3020a proceedings against my employer to PROVE Weingarten interfered in my criminal case to conceal her criminal conduct* and Magistrate Lehrburger was bribed to give another ruling for Randi Weingarten's pleasure.

**Please Take EVEN Further Notice,** I already provided the Court and state Court the August 9, 2023's transcript where Judge Engelmayer ordered me not to speak or communicate with my employer because Bensing misrepresented the transcript of July 20, 2023. **Federal courts must give substantial weight to certified transcripts when reviewing claims of due process violations (NLRB v. Universal Camera Corp., 179 F.2d 749 (2d Cir. 1950), aff'd, 340 U.S. 474 (1951)).**

**NOTICE OF JUDICIAL NOTICE--**

PLEASE TAKE NOTICE that pursuant to Rule 201 of the Federal Rules of Evidence (FRE 201), Plaintiff respectfully requests that this Court take judicial notice of the following:

1. Article 21 of the applicable Collective Bargaining Agreement (CBA), which governs disciplinary procedures for tenured educators, including Education Law § 3020-a procedures and grievance procedures.

2. Applicable New York State Court of Appeals and federal case law affirming the due process rights of tenured public employees to a full and fair hearing before disciplinary action.

3. The order issued by Judge Paul A. Engelmayer in United States v. Lucio Celli, 19-CR-127 (S.D.N.Y.), which resulted in the deprivation of Plaintiff's due process rights under Education Law § 3020-a.

4. The docket and transcripts in United States v. Lucio Celli, 19-CR-127 (S.D.N.Y.), which are void of any order that would provide a remedy for the due process violations suffered by Plaintiff.

5. Federal and constitutional authority requiring the enforcement of Judge Engelmayer's order.

6. Case law and statutory authority under the Full Faith and Credit Clause (Article IV, Section 1 of the U.S. Constitution) and the corresponding federal enforcement statute, 28 U.S.C. § 1738.

1. Judicially Noticed Provisions from the Collective Bargaining Agreement (CBA)

The following provisions of the CBA are subject to judicial notice as they are publicly available and govern the disciplinary and grievance procedures for educators covered under the agreement:

• Article 21 – Disciplinary Procedures and Due Process Protections: Establishes the rights of tenured educators to procedural protections before any disciplinary action, including termination, may be imposed.

• Grievance Procedures: Provides the step-by-step process for challenging employment-related disputes, ensuring due process in administrative review.

2. Judicially Noticed Statutory and Constitutional Authority

Pursuant to Education Law § 3020-a, tenured educators in New York may not be disciplined or terminated without due process, including:

• A written statement of charges.

• The right to a full evidentiary hearing.

• The right to be represented by counsel.

• The right to present evidence, call witnesses, and cross-examine opposing witnesses.

• A determination by an impartial hearing officer.

Additionally, these statutory protections align with the Fourteenth Amendment Due Process Clause, which mandates that public employees with a property interest in their employment must be afforded notice and an opportunity to be heard before adverse employment action is taken.

3. Federal Precedent on Due Process and Full Hearings

The United States Supreme Court and federal courts have consistently held that tenured public employees have a protected property interest in their continued employment and cannot be deprived of that interest without due process. The following cases are submitted for judicial notice:

• Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) – Established that public employees with a property interest in their jobs are entitled to notice and a pre-termination hearing before they can be dismissed.

• Board of Regents v. Roth, 408 U.S. 564 (1972) – Held that a public employee with no tenure or contractual right to continued employment has no property interest requiring due process protections but confirmed that those with tenure do.

• Perry v. Sniderman, 408 U.S. 593 (1972) – Clarified that a de facto tenure system can create a property interest that requires due process protection.

• Mathews v. Eldridge, 424 U.S. 319 (1976) – Established the three-factor balancing test for determining the adequacy of due process protections, emphasizing that full hearings are often necessary when substantial property interests are at stake.

• Gilbert v. Homar, 520 U.S. 924 (1997) – Reaffirmed that suspension without pay requires due process protections but allowed for temporary suspensions with post-deprivation hearings under limited circumstances.

4. Full Faith and Credit Clause and 28 U.S.C. § 1738

Plaintiff further requests judicial notice of the Full Faith and Credit Clause of the U.S. Constitution and its implementing statute:

• U.S. Const. Art. IV, § 1 (Full Faith and Credit Clause) – Requires that states honor the judicial proceedings, public acts, and records of other states, ensuring that valid state court judgments and administrative decisions are respected.

• 28 U.S.C. § 1738 – Mandates that federal courts must recognize and enforce valid state court judgments unless there are compelling constitutional reasons to disregard them.

Relevant Case Law on Full Faith and Credit Enforcement

• Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982) – Affirmed that federal courts must honor state administrative and judicial determinations when proper due process was followed.

• Matsushita Electric Industrial Co. v. Epstein, 516 U.S. 367 (1996) – Reiterated that federal courts must give full effect to state judicial decisions unless explicitly overruled by federal law.

• San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323 (2005) – Clarified that Full Faith and Credit principles apply in federal due process claims involving state administrative and judicial determinations.

5. Judicial Notice of Judge Engelmayer's Order and Federal Enforcement Statute

Plaintiff further requests that the Court take judicial notice of the following:

• Judge Paul A. Engelmayer's Order in United States v. [Your Name], 19-CR-127 (S.D.N.Y.), which resulted in the deprivation of Plaintiff's due process rights under Education Law § 3020-a.

• The docket and transcripts in 19-CR-127 contain no order or ruling that provides the Plaintiff with a remedy for the due process violations suffered.

• 28 U.S.C. § 1651 (All Writs Act) – Grants federal courts the power to issue writs necessary to enforce their jurisdiction and prevent miscarriage of justice.

• United States v. New York Telephone Co., 434 U.S. 159 (1977) – Established that courts may issue orders under the All Writs Act to ensure compliance with judicial decisions.

• Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992) – Clarified that federal courts have broad authority to enforce and modify judicial orders to ensure constitutional compliance.

6. Conclusion

Based on the foregoing statutory, constitutional, and precedential authority, the Plaintiff respectfully requests that the Court take judicial notice of the following:

1. The provisions of the CBA and Education Law § 3020-a.

2. Federal and New York State case law regarding due process rights of tenured employees.

3. Judge Engelmayer's order in 19-CR-127 and the lack of any remedial ruling in the docket and transcripts.

4. The Full Faith and Credit Clause and its enforcement under 28 U.S.C. § 1738.

5. Federal statutes and case law mandating the enforcement of judicial orders.

<u>Prior to 3020a hearing</u>

12. I only had "Notice," and this constitutes a due process violation under the 14th Amendment, according to Roth and Loudermill. Engelmayer's order resulted in mere notice, without a certified transcript.
13. Emails and audio recordings provide timestamps for the pleadings below.
14. Plaintiff met with the Assistant Superintendent of High Schools.
15. The Assistant Superintendent did not conduct the meeting according to NYS Art 75a, a policy of NYS and NYC. This constitutes a separate charge under NYS/NYC regulations.
16. The Assistant Superintendent took state action by not adhering to the policy of NYS/NYC under Art 75 a.
17. Plaintiff grieved this issue, but the UFT refused to pursue it—arbitration decisions can be found at the NYU Labor Library, which NYC funds.

18. The UFT stated that they have never grieved this for anyone.
19. NYC DOE and the UFT violated Ed Law 3020-a by acting in concert to deprive me of the due process rights guaranteed under 3020-a.
20. Not following the procedures constitutes a violation/adverse employment action under Title VII, Title IX, ADA, 504, and § 1983—specifically in terms of discrimination or violation of public employee due process rights.
21. The CBA is a protected right under the NYS Constitution: Article I, Section 17.

a) It is dubbed the Contract Clause.
b) Additionally, it affirms the right of employees to organize and bargain collectively through representatives of their choosing.
c) Article XVII focuses on social welfare; provisions concerning labor contracts and workers' rights are addressed in Article I, Section 17.
d) The CBA rights are also governed by Public Employees' Fair Employment Act (the Taylor Law), **Article 14** of the New York State Civil Service Law. Enacted in 1967, this law governs labor relations between public employers and employees in New York State

22. The UFT and the DOE breached the contract (Article 21 for Due Process in 3020a procedures) and made factual misrepresentations of the CBA to deprive me of rights, thereby interfering with contractual obligations by the union and the employer under Title VII, Title IX, ADA, § 1983, and 504.

a) The UFT misrepresented that 3020a procedures are not found in the CBA; however, they are found in the CBA in 2023.
b) The UFT misrepresented that after 3020a proceedings have begun, they cannot get involved because it is a state proceeding; this occurred after the UFT changed their stance on 3020a not being in the CBA.
c) Nonetheless, court proceedings prove otherwise, as do the arbitration decisions found in NYU's Labor Library, which is funded by the City of New York.
d) Taylor and Yu of DOE misrepresented that the CBA and the 3020a statute only entitled me to notice and nothing more.
e) These statements constitute a breach of contract and tortious interference with contractual obligations.

23. The UFT violated the DFR with the misrepresentation, as it aligns with the aide's statement of retaliation regarding money and a penis picture.

24. The UFT has been doing this for over ten years.

25. The DOE and the UFT violated my rights to due process under the Due Process Clause of the 14th Amendment, which are owed to public employees.

26. Therefore, when the UFT asserted that 3020a procedures were not found in the CBA, they acted as a state actor, as the 3020a procedures are indeed found in the CBA and entitle individuals to Article 21: Due Process.

27. In Ed Law 3020a, the statute highlights alternative disciplinary procedures to comply with due process for public employees, as outlined by **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532 (1985) and **Board of Regents of State Colleges v. Roth**, 408 U.S. 564 (1972).

28. Mr. Brown, lawyer for the UFT, stated at PERB that enforcing Engelmayer's order is better suited against the DOE in Federal court, in May 2024—audio recorded.

29. Mr. Brown acknowledged that Engelmayer's order limited the plaintiff to mere notice and constituted a violation of due process.

30. Mr. Brown stated that the plaintiff's PERB charge did not mention grievances for 3020a, and it was improper for the UFT not to process the grievances.

31. Mr. Brown acknowledged the grievance for retro money and stated whatever is written in the CBA.

32. The retro grievance was part of the grievances for 3020-a—so I have no idea what he was talking about, or he was confused.

33. DA Dubeck told me that what the UFT and the DOE did would qualify as wage theft under NYS Law, regarding retro pay and the issue found before Engelmayer and Cogan.

34. I have property rights to continuous employment as a tenured teacher and employee.

35. I have property rights to a CBA as a union member of the UFT.

36. The DOE and the UFT acted in concert to deprive me of due process as outlined in ED Law 3020a.

Grievances for 3020a, Discovery, and Retro (Retro will be addressed in a separate section).

37. The UFT refused to go to arbitration for any 3020a violations, as they pertained to my due process rights found in the CBA under Article 21 (Due Process) and 3020a (Teacher Due Process).

38. The UFT took state action when they did not process my grievance to protect my due process rights as a public employee, which are found in the CBA and 3020a.

39. The UFT did not object to the DOE and NYSED unilaterally changing the CBA between the UFT and DOE.

40. Disciplinary action/hearing is a mandatory subject of negotiation.

41. Each time Taylor misrepresented a procedure, I would email a grievance with a copy of Taylor's email to me and a copy of the 3020a statute, regulation, and CBA.

42. This was done to prove fraud and misconduct by Taylor

43. After this occurred a few times, Taylor requested that I undergo a mental exam.

<u>Mental Exam and the aftermath</u>

44. Arbitrator Taylor—like Magistrate Lehrburger—did not want the public to know how he was misusing his position. As a public employee of NYSED, his position is governed by the State's Procedure Act and Ethics Law regarding the misrepresentations he made about 3020a.

45. Each time Taylor  lied, I sent either audio or his email to an email list of over 200 recipients;  some of them included my probation officer..

46. I had a friend file FOIL requests for me because I knew the UFT and the DOE were going to conceal how the DOE had prior knowledge and how they were going to assist Randi Weingarten and Judge Cogan (former lawyer for the UFT and coworker of Randi's at Strook, Strook, and. Lavin).

47. I asked Mr. Yu of the DOE for discovery of emails that included my name, but Yu and time he lied—I provided him with evidence of FOIL request that included my name him, like Friedman or Jackson-Chase (both of whom were DOE General Counsel).

48. I needed Friedman's emails that mentioned me because the aide alluded to an email between Friedman (General Counsel of DOE and Carter (former Corporate Counsel) on the topic of Judge Cogan and Judge Brodie regarding the fact of not investigating my allegation of an educator smoking weed and getting him a motel room for a week.

49. The educator was brought up on charges for ONLY text messages and nothing more.
50. The DOE knew what I was going to say at the PEP meeting, and there is a video on the DOE's website.
51. The DOE muted me when I started talking about the educator.
52. The aide admitted to making a mistake because of the UFT and Randi Weingarten.
53. The same issue occurred with AG James (when she was Public Advocate of NYC).
54. James told me that the union told her that I lied and made things up.
55. Well, I was told to write IEPs based on the school's budget and not based on the needs of the individual child, as required by law.
56. There is an email where the AP called me into her office, and in the office, she told me that it is a crime.
57. The NYSED came in because there were allegations of IEPs not being written based on needs and services not being provided.
58. Once NYSED left, the school reverted to illegal practices, hence the reason why I was called into the office.
59. I offered the proof to James, and there is an email of her response.
60. I requested this evidence because it does not mention the child's name.
61. So, everywhere I asked, I was ignored.
62. Taylor requested a mental health exam to retaliate against me for himself and his former boss, Randi Weingarten, as the emails contain other allegations.
63. The DOE or any public school system has the right to request any person to undergo a mental exam.
64. This exam, per NYS ED Law, is done to protect the safety of children and staff—with the rightful removal from the "SCHOOL BUILDING"
65. If I were in a school building, the DOE would have a legitimate reason to make this request of me.
66. The DOE had no legitimate reason to make this request because I had been working from home since March of 2020.
67. The UFT refused to process this grievance
68. I had to use my sick days
69. This is an adverse employment action because I am entitled to half the money when I was terminated

70. Again, the aide said that the UFT and Randi Weingarten wanted to retaliate against me because of complaining over a penis picture and Judge Cogan calling me delusional for complaining about the fact that the UFT told me that they would expose my rape if I continued with my lawsuit.

## During the 3030a process

71. Arbitrator Taylor and Mr. Yu of DOE said that convicted felons were only entitled to notice—in the transcripts and in email.

72. Plaintiff informed Taylor and Yu that teachers who are convicted of felonies involving children are even entitled to notice a and a meaningful chance to defend themselves.

73. Arbitrator Taylor and Mr. Yu of the DOE unilaterally changed the CBA

74. Therefore, Taylor and Yu violated my rights to due process under the Due Process Clause of the the 14th Amendment as owed to public employees.

75. The 3020a and the CBA have the same wording for felonies that involve a child and felonies that do not involve children.

76. I was entitled to a full hearing under the CBA and 3020a statute

77. I did not have a felony that involved any child.

78. The 3020a and the CBA are clear: that felonies with no children are entitled to a full hearing.

79. In the injunctions that I filed, I wanted to prove that Randi Weingarten and Judge Cogan interfered in my criminal case

80. I have AUSAs who told me that if the DOE and the UFT were to deprive me of showing criminal interference in my criminal case, as the 3020a provides, with the right to show the conviction was invalid and there was interference by the union in my criminal trial, then they would be helping to hide criminal interference in my criminal case.

81. The UFT helped by hiding how Randi Weingarten and Judge Cogan preplanned everything by not grieving the document showing the DOE had prior knowledge.

82. I was denied every single right to a fair trial by Randi Weingarten and Judge Cogan; this is why Judge Engelmayer issued the order.

83. My employer had the audio of Silverman's admission of conspiring with Weingarten and Cogan.

84. Judge Lehrburger is intentionally obstructing justice for Weingarten because she does not want the public to know about the crimes against me, as it is obvious that I was denied every single right, and everything she did are crimes under 18 USC § 241.

85. Judge Lehrburger is ignoring facts that I state claims, except for HIV, because he was paid.

86. Judge Lehrburger was placed to prevent the enforcement of Engelmayer's order

<u>Interference by Engelmayer, Probation, Santana, and AUSAs of EDNY</u>

87. On August 9, 2023, the following:

88. **Judge Engelmayer explicitly ruled that Plaintiff's probation terms prevented direct contact with DOE based on AUSA Bensing's misrepresentation.**

   1. *AUSA Bensing confirmed on record:*

      *"Your Honor, I believe that Special Condition 7, that he shall not make any phone calls or send any written correspondence to any prosecutor or government personnel, would encompass DOE."*

   o On July 21, 2021, Judge Engelmayer stated that DOE was not included
   o AUSA Bensing knowingly lied to help Judge Cogan and Randi Weingarten evade criminal prosecution
   o AUSA's office has had the audio of Silverman's admission since July 20, 2021 and they have concealed the evidence until now
   o *See* Exhibit A, page 55, lines 4-7.

89. **Judge Engelmayer ruled that Plaintiff must be given a fair chance to defend himself at arbitration.**

   1. **Judge Engelmayer stated:**

      "If such a person isn't appointed, then I will ask you, Ms. Bensing, in consultation with the probation department, figure out what modification we need to make because Mr. Celli can't be left both unrepresented and shackled from being able to speak in his DOE matter."

- I sent every judge the audios of Probation Officers Mulcahy and Cudina refusing to contact the AUSA or inform Judge Engelmayer of my request to appear before Judge Engelmayer.
- I told probation about what Judge Engelmayer stated on the transcript
- Interfered in my rights, as Cudina is heard by the people in my Medicaid cab saying, "It was Engelmayer; leave her alone."

    2. *See* Exhibit A, page 57, lines 20-25.

90. Judge Engelmayer ruled that Plaintiff's lawyer, Jamie Santana, Esq., must inform the Arbitrator and DOE that Mr. Celli could not participate in the 3020a and request an adjournment.
    1. Santana did inform the UFT
    2. Santana did inform Art. Taylor and Mr. Yu of the DOE about the order
    3. Art Taylor said the order had to be in writing, so he would not adjourn the hearing
    4. Santana never informed Judge Engelmayer of my situation

91. Officer Cudina and Officer Mulcahy refused to forward my brief or audio to Taylor.

92. Officers refused to inform the Court or AUSA, even after reminding them of Engelmayer's order.

93. The officer said to tell my lawyer, and the officers were emailed what Santana said.

94. Engelmayer ignored all injunctions that I was to file prior to the 3020a, and he prevented it because Randi paid him to ignore my rights, as she is now paying Judge Lehrburger to do the same.

95. Engelmayer ignored that Santana stole 20k to help him cover up his conspiracy to retaliate against me with Kellman

96. Santana robbed my parents of $20,000 to help Engelmayer and Randi Weingarten.

97. Judge Engelmayer's order prevented me from having more than just notice and violated my rights to due process as a public employee under Roth and Loudermill.

98. Randi Weingarten ordered Judge Lehrburger to ignore the facts and evidence presented within the certified transcripts from the DOE and Federal Court.

99. Randi Weingarten ordered Judge Lehrburger to declare my filings centered on Engelmayer's order and lack of Health insurance as "vexatious."

100. Despite the court order:
   1. DOE has denied Plaintiff access to health insurance since February 1, 2025, violating Judge Engelmayer's directives.
   2. Arbitrator Taylor and Mr. Yu denied Plaintiff the right to appear and defend himself at arbitration, directly contradicting the court's order.
   3. Attorney Jamie Sanatana failed to comply with the court's directive to secure union representation for Plaintiff and file a letter on the docket.
   4. UFT and AFT continue to obstruct Plaintiff's access to union-provided benefits.

<u>After the termination decision of October 19, 2024, this fact alone entitled me to a right.</u>

101. fter the termination hearing, I discovered that Arbitrator Taylor had a continuous business relationship with Martin Scheinman and his boss.

102. Judge Frank ignored this fact, as did Judge Lehrburger.

103. This fact alone entitled me to have Taylor's award d, as i,t seated an undinsclosed relationship under Federal Law and NYS Law (FAA and ART 75).

104. Art Taylor's conduct for the UFT and Randi Weingarten is a violation of interest laws.

105. Termination and non-adherence to the procedural due process found in the CBA/30-20a re adverse employment decisions..

## C. Denial of HIV Medication & Life-Threatening Medical Harm

106. I was released from jail on or around 11/22 by Judge Engelmayer

107. Judge Engelmayer never gave me permission to contact the EEOC or file in federal court.

108. The U.S. Marshals refused to provide me with my new HIV meds from the BOP.

109. The DOJ believes the fault lies with the BOP.

110. In court, phone calls, and emails, I contacted my lawyer, Mr. Santana, and Probation, but resulting in inaction.

111. Probation told me to wait

112. Santana told me to leave him alone and that he was not my lawyer, even though he told Judge Engelmayer that he would continue to represent me.

113. I called city council—no help

114.    **The** City of New York placed me on payroll on or around November 20, 2023, and provided with me with health insurance (doctors and hospital) by Ms. Vazquez

115.    There is an audio from the BOP and email corralinks that prove that the UFT and Weingarten's friend from the Schieman Arbitrators, which include Taylor—wanted me to stay off of payroll and this would have been another adverse employment decision, if Ms. Vazquez and the DOE legal (Friedman) would have honored Randi's wishes

116.    The UFT was well aware of my HIV status through emails and a video fr.om the PEP.

117.    I emailed and called the UFT Welfare Fund, and they told me that I was off roll and they could not do anything for me in terms of prescription drugs provided by my dues and not the NYC.

118.    I informed the Welfare Fund that my prescription drug plan came from my employer for the UFT to administer for the City of New York

119.    This is a policy of New York City, which I obtained.

120.    The UFT Welfare Fund informed me that I could pay for COBRA, which I did

121.    The UFT Welfare Fund, then told me that it would take a month to process

122.    I called the UFT around 12/1/22 with the answer of, I was off of payroll—which was not truth because Ms. Vazquez placed me on payroll

123.

124.    By December 20-something of 2022—the UFT Officer and staff were on Christmas break and I did not have the HIV med that was changed by the BOP.

125.    No one helped me with the prescription drug that I needed.

126.    I called various City Council members offices, like Speaker and the committee for health

127.    Probation refused to allow me to appear before Judge Engelmayer or email him.

128.    Defendants' actions have led to the complete withholding of Plaintiff's HIV medication, psychological medication, and insulin, placing his life in immediate danger.

129.    I signed up for ADAPT (NYS HIV drug Assistance Program), and they told me that I had active Medicaid insurance.

130.    Medicaid suspended my insurance, and I had to wait a month for the state to reactivate it.

131.    Emails, audio recordings, and official correspondence confirm that key individuals—including, City Council, UFT, UFT Welfare Fund, Ms. Vazquest of the DOE, Randi Weingarten, and Judge Engelmayer—planned the first denial of Plaintiff's HIV medication. This intentional medical deprivation resulted in:

a) HIV drug resistance, permanently worsening Plaintiff's medical condition.
b) Severe health deterioration due to prolonged lack of treatment.
c) Mental and emotional distress from repeated medical neglect.
d) Judge Lehrburger believes that I keep pleadings the same issues—I do not know what he is reading
e) Judge Engelmayer did not allow me to access the court or various government entities since 2022
f) The FIRST time that I am pleading HIV drug resistance was the date of this petition

**132.**     Despite Plaintiff's repeated attempts to resolve the issue, Defendants— including DOE, UFT, AFT, and the U.S. Marshals Service—have refused to provide the necessary treatment or restore health insurance coverage.

**133.**     Judge Lehrburger denied Plaintiff's request for emergency medical intervention, **further** exacerbating the crisis.

134.     Judge Rearden has failed to issue any summonses since October 2024, preventing Plaintiff from obtaining a legal remedy for these life-threatening violations.

135.     Despite what Judge Lehrburger thinks and believes, this issue is covered by American with Disability, Affordable Care Act and the 14th Amendment

136.     Freidman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT Officer who took part in depriving me of a bathroom key grievance and Gigilone was the person who sent me a penis picture—this was done after I spoke at a NYC DOE PEP meeting and there is a video for this.

137.     Randi Weingarten consider Gaglione like a brother to her

## Retro Payment

138.     Plaintiff was employed by the Department of Education and was entitled to retro pay as part of a contractual agreement or negotiated labor settlement.

139.     Plaintiff was jailed without bail for a period of time.

140.     Defendant Caldwell denied Plaintiff's retro pay on the basis of Plaintiff's detention.

141.     However, Defendant Caldwell provided retro pay to another individual, Mr. Price, who was also held without bail, demonstrating unequal and arbitrary treatment.

142.    Plaintiff contacted Ms. Atkinson of the UFT, who stated that if Plaintiff could prove the detention was unlawful, the UFT would process the grievance for retro pay.

143.    Plaintiff provided evidence of the wrongful detention.

144.    Despite this, the UFT refused to file a grievance or take any steps to assist Plaintiff in obtaining their rightful retro pay.

145.    The DOE had prior knowledge of the wrongful detention and still refused to process the retro pay.

146.    Defendants' actions were arbitrary, discriminatory, and a violation of Plaintiff's rights.

147.    The Office for Collective Bargaining Agreement said that I was entitled to retro payment

148.    HR, like Peter Innuellio, said that I was entitled to retro payment and the UFT knows this because they have knowledge of others, which is audio recorded

149.    Audios were sent to Howard Friedman and Caldwell

150.    Mr. Brown, at PERB, stated retro is whatever is written in the pleadings

151.    The UFT prior to Mr. Brown's statement said that it was not agreed to give it to people in jail, but HR said otherwise

152.    After Mr. Brown's statement, UFT said it was not in the contract, which is the audio recording sent to everyone.

153.    I have prosperity rights in the CBA

154.    Freidman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT Officer who took part in depriving me of a bathroom key grievance and Gigilone was the person who sent me a penis picture—this was done after I spoke at a NYC DOE PEP meeting and there is a video for this.

155.    Randi Weingarten consider Gaglione like a brother to her

## E. Pension

156.    UFT members are Board members of TRS, per statute

157.    Freidman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT Officer who took part in depriving me of a bathroom key grievance, and Gigilone was the person who sent me a penis picture.

158.    This was done after I spoke at a NYC DOE PEP meeting, and there is a video for this.

159.    Randi Weingarten considers Gaglione like a brother to her.

160.     In the summer of 2022, I applied for pension disability, and there are documents on 19-cr-127.

161.     I emailed Judge Engelmayer a a 42 U.S.C. § 1983 petition because the illegal detentions affected my pension calculation and pension credit.

162.     Judge Engelmayer willfully blocked me from obtaining any remedies for the illegal injustices that he, Randi Weingarten, and Judge Cogan inflicted upon me.

163.     I applied for a TRS Accidental/Ordinary disability pension in the summer of 2023.

164.     TRS did not mention, at the time, that I needed to submit an accident report.

165.     In early October, Officer Cudina, with DOE, UFT, and TRS cc'ed, ,stated that it was already decided that I would not get a pension disability.

166.     Then, I included Judge Engelmayer in the email chain because I did not meet with anyone from the TRS Medical Board.

167.     Prior to the TRS Medical Board, I was then informed of accident reports to the DOE.

168.     I emailed Ms. Atkison of UFT and Ms. Vazquez to ask if they could process my accident reports so that I could apply for accidental pension disability.

169.     Ms. Atkinson stated that I could not file the report—in mid-October and prior to termination—because I did not have access to SOLAS.

170.     Ms. Vaquez did not answer me.

171.     Ms. Vaquez took state action by not answering me and this deprive med me of due process in applying for an accidental disability. pension.

172.     Ms. Vaquez took state action as she deprived me of due process.

173.     Ms. Atkinson filed my knee injury, and Ms. Vaquez filed my leave of absence in SOLA but refused to file my accident report.

174.     I was terminated on Oct 19, 2023

175.     I applied for TRS Accidental/Ordinary disability in the Spring of 2024

176.     Again, I asked Ms. Atkinson and Ms. Vazquez the same question inch of 2024.

177.     Ms. Vaquez took state action by not answering me and this deprive med me of due process in applying for an accidental disability. pension.

**178.**     Only Ms. Atkinson answered me, providing the same answer.

**179.**     I emailed SOLAS and asked them to file it for me in the spring of 2024.

**180.**     SOLAS never answered me

**181.**     Whoever did not process my reports took state action and thus deprived me of due process in applying for an accidental disability pension.

**182.**     The CBA of 2023 does not require teachers to submit any accident reports, as information was provided by Ms. Norton of the UFT.

183.     Ms. Bowles of TRS said that the CBA does not apply to retirement benefits, according to her General Counsel, and Ms. Norton of UFT was cc'ed.

184.     Ms. Bowles of TRS emailed me in August of 2024 and informed me that TRS would not process my accidental disability pension because of a lack of accident reports.

185.     The pleadings provided appear to connect to Second Circuit case law on NYS pensions and pension disability, particularly in the context of due process and retaliation claims under 42 U.S.C. § 1983. Relevant cases include:

a) Winston v. City of New York (759 F.2d 242): This case addresses whether New York City public school teachers have a property interest in their pension rights under the Fourteenth Amendment and whether forfeiture provisions violate due process. It aligns with the pleadings' allegations of due process violations in pension denial.

b) McDarby v. Dinkins (907 F.2d 1334): This case discusses procedural due process in the context of disability pension decisions and highlights the use of Article 78 proceedings as a remedy, relevant to the procedural issues raised in the pleadings.

c) Russell v. Dunston (896 F.2d 664): This case involves a § 1983 claim for due process violations related to disability retirement benefits and inadequate notice, directly relevant to the allegations of procedural failures in the pleadings.

d) Vega v. Hempstead Union Free School District (801 F.3d 72): This case confirms that retaliation claims are actionable under § 1983, which is pertinent to the retaliation allegations in the pleadings.

186.     I do not have health insurance from the City and I am using Medicaid and I do not care and if I have to pay—so be it

187.     I am already HIV drug resistance because of them

## F: First Illegal Detention with the DOE having prior knowledge

188.     182. Friedman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT

Officer who took part in depriving me of a bathroom key grievance,, and Gigilone was the person who sent me a penis picture—this was done after I spoke at a NYC DOE PEP meeting, and there is a video for this.

189.    183. Randi Weingarten considers Gaglione like a brother to her.

190.    Judge Engelmayer ordered AUSA Karamigious to find out and write a report about how the DOE had prior knowledge

191.    This was NEVER done because the gang wanted to protect the criminal conduct of Randi Weingarten

192.    The DOE and Law Dept have the audio of Silverman

193.    The DOJ has the audio of Silverman

## G. DOE having Prior Knowledge an

### Judge Engelmayer's Orders to AUSA Karamigios to find out how DOE had prior knowledge of my illegal detention where I was nearly raped again.

194.    The DOE has me arrested prior to 11/9/18 with HR, and the UFT confirming this fact.

195.    Judge Cogan sent his to DOJ on 11/12/18

196.    US Marshals obtained a warrant on 11/13/18

197.    I was arrested on 11/14/18

198.    PER NYS Statute, School District ARE ONLY notified of an arrest ONCE—and ONLY ONCE—the employee is fingered printed

199.    I was fingered printed on 11/14/18

200.    Yu lied about this, as there are audios of HR (two of them are on the federal dockets and state docket) , IT, and the UFT

201.    The DOE states that I failed to inform them of my arrest within 3 days.

202.    The UFT and the DOE used the fact that I was illegal detained as a reason to withhold retro payment and told me, if I could prove that I was ILLEGALLY detained—then I could have my retro money

203.    Judge Engelmayer and Silverman prevented me from having a hearing on the illegal detention—even though Engelmayer acknowledged that he did not know how the DOE obtained prior knowledge

204.    Randi Weingarten LOVES to retaliate in terms of money

205.    Both Engelmayer and Silverman gone out of their way to protect Randi Weingarten's involvement of depriving of every single right

206.    It is no different with Judge Lehrburger or Judge Cronan---mark my words!

### G. Second Illegal Detention with Switching Transcripts by Clerk Wolfe with How it Relates to 200k in Missing Wages

207.    Friedman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT Officer who took part in depriving me of a bathroom key grievance,, and Gigilone was the person who sent me a penis picture—this was done after I spoke at a NYC DOE PEP meeting, and there is a video for this

208.    Randi Weingarten considers Gaglione like a brother to he.

209.    Silverman told me that he and AUSA Karamigous both said that I did not violate any term of probation

210.    The Transcript on the docket was provided by Betsy Combier and the audio was made and sent out me to DOE, PERB, NY POST, and whomever else was on the list

211.    The AUSA and Officer Lombardo knew of the transcript

212.    They knew of the fact that I am STILL owed wages that Judge Cogan stold for his former clients, the UFT

213.    The Transcript support my story and if the Court needs certified copies—then I will obtain them

214.    Kellman admitted to conspiring with Engelmayer

215.    One of the audios of Kellman were sent to AUSA Amundson (Public Integrity) and Ms. Kopplin of US Senate for Ethics

## H. Third Illegal Detention and the Role My Employer Played in Depriving Me Liberty without Due Process

216.    Friedman's aide admitted to the UFT and Randi Weingarten retaliating against me in terms of money because I complained about a UFT Officer who took part in depriving me of a bathroom key grievance,, and Gigilone was the person who sent me a penis picture—this was done after I spoke at a NYC DOE PEP meeting, and there is a video for this.

217.    Randi Weingarten considers Gaglione like a brother to her.

218.    Like Sen. Schumer consider Randi a sister

219.    Officer Cudina ignored what Judge Engelmayer told her on Dec. 14, 2023

220.    The transcript was ignored by my lawyer—picked by Engelmayer like Kellman—and sent to Hon. Gleason with DOI Strauber

221.    Strauber misused her office and had her employee lie to the court

222.    Between Weingarten, Engelmayer, my lawyer and Cudina—I was deprived of Liberty without Due Process

223.    My lawyer refused to inform the court of Officer Cudina's perjury

224.    I sent Hon. Gleason's Cudina's email to me, as she misrepresented Engelmayer's order on Dec. 14, 2023 because he word is worth gold and my word has value of pure shit—just the way it is!

I.     EEOC

225.     EEOC Violated the APA

The **Administrative Procedure Act (APA)** governs how federal agencies, including the EEOC, conduct investigations and issue decisions. If the EEOC **failed to follow its own procedures,** ignored key evidence, or arbitrarily dismissed your claim, I will argue that:

226.     The EEOC acted **arbitrarily and capriciously** in violation of **5 U.S.C. § 706(2)(A)** of the APA.

227.     The agency **failed to conduct a proper investigation** as required under **Title VII of the Civil Rights Act.**

228.     They **did not provide a reasoned explanation** for their decision, violating due process.

229.     I provided judges emails from Mr. Diamond where he states "the EEOC does not handle claims—which is pure misrepresentation of statute and regulations

230.     EEOC Ignored Friedman's Admission

231.     Friedman's **admitted to discriminatory conduct** or made statements supporting your claims, but the EEOC ignored this, I will argue:

232.     The EEOC **failed to consider key evidence**, making their decision legally deficient.

233.     Ignoring this admission **violated fundamental fairness**

234.     **Diamond lied to me about state is not part of the statute**

J-I incorporate all Letters and Motions herein to Judge Lehrburger, Judge Wier and Judge Frank with all emails sent to over 300 or 400 federal judges since 2018 (if the number is more, then it is more or whatever number it truly is)

235.     NYS has proof that I filed my petition on time

236.     The City has helped to cover up Randi Weingarten's criminal

237.     City has evidence of Randi Weingarten's criminal conduct

---

IV. Counts

Count I – Violation of Due Process under Education Law § 302a

238.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein from above.

239.     Defendants' failure to provide a full, fair, and impartial predetermination hearing (i.e., providing only notice without a complete evidentiary hearing)

constitutes a violation of Plaintiff's due process rights, in direct violation of the requirements set forth in Cleveland Bd. of Educ. v. Loudermill and Board of Regents v. Roth.

240.     As a proximate result of the due process violation, Plaintiff has suffered significant employment and personal harm.

## Count II – Discrimination and Retaliation (Title VII, Title IX, ADA, Section 504, and 42 U.S.C. § 1983)

241.     Plaintiff incorporates by reference paragraphs from above, which herein form the basis for claims under Title VII, Title IX, the ADA, Section 504, and 42 U.S.C. § 1983.

242.     193. Defendants engaged in discriminatory practices and retaliation by basing adverse employment decisions on alleged non-job-related factors and by disciplining Plaintiff for exercising his rights.

243.     Plaintiff has suffered compensable injuries as a direct result of these discriminatory and retaliatory actions.

## Count III – Breach of Contract, Statute of Fraud AND Torturous Interference

244.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein from above.

245.     By failing to provide the contractual procedures and protections promised in the Collective Bargaining Agreement, Defendants have materially breached the employment contract.

246.      As a result of this breach, Plaintiff has suffered economic and noneconomic damages including loss of benefits and employment security.

## Count IV – Violation of the Duty of Fair Representation

247.     Plaintiff incorporates by reference all preceding paragraphs.

248.     199. Defendants, acting as his representative, failed to him in a fair and impartial manner, thereby breaching their statutory duty.

249.     This breach resulted in the improper handling of Plaintiff's grievances and further exacerbated the harm caused by Defendants' other wrongful acts.

## Count V- 10-day to Submit Appeal under Art 75 or Art 78

250.     Plaintiff incorporates by reference all preceding paragraphs.

251.     Due process Violation as argued in a letter

Count VI—EEOC Violation of APA

252.     Plaintiff incorporates by reference all preceding paragraphs.

Count VI—Abuse of Process, RICO, First Amendment Retaliation (1983) and Federal
Process by Randi Weingarten and Judge Cogan with Judge Engelmayer and Sen.
Schumer

253.     Plaintiff incorporates by reference all preceding paragraphs.

Count-VII-Rico

254.     Plaintiff incorporates by reference all preceding paragraphs.

255.     Randi Weingarten took 6 years of my life from me in retaliation for
exposing her criminal conduct

256.     Randi Weingarten and the UFT stole over 400k in wages with the help of
Judge Cogan, Judge Engelmayer, Wolfe, and others

257.     Randi Weingarten and Judge Cogan deprived almost 2 years of liberty
without due process

258.     This affected by wages, pension and my every other item

Count VIII

Count IX—I incorporate all complaints since 2015 with their pleading into this complaint
with causes of action herein with the first complaint submitted with it's complaint with
state court pleadings (in case the I missed something from above or provided dates as I
did not have enough to review all documents and recordings to provide dates and
names

259.     Plaintiff incorporates all pleadings herein

260.     Plaintiff incorporates by reference all preceding paragraphs.

Count- X—Continuous Violation of all Title Via, ADA, Title IX, 1983 ACA and 504

261.     As of March 14, 2025, the City has not processed my health insurance
application

262.     The UFT continuous to retaliate to further harm my immune

Count XI—42 USC § 1985(2)(3)

263.     Plaintiff incorporates by reference all preceding paragraphs.

264.     Randi Weingarten is going to have Judge Lehrburger, Judge Cronan, Judge
Rearden and Judge Aaron helped conceal and obstruct justice to cover up how
Randi Weingarten and Sen Schumer deprived of every single right to a fair trial

Case 1:24-cv-09743-JPC-RWL    Document 69    Filed 03/17/25    Page 64 of 65

265.    To ignore evidence of Weingarten's criminal conduct

266.    Mark my words

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff and Petitioner respectfully request that this Court:

267.    **Compel DOE and UFT to reinstate health insurance immediately and provide the withheld HIV medication and insulin.**

268.    **Enforce Judge Engelmayer's prior ruling regarding arbitration representation.**

269.    **Hold Arbitrator Taylor and Mr. Yu accountable for violating CBA procedures.**

270.    **Direct Attorney Sanatana to file a compliance letter as previously ordered.**

271.    **Issue a Writ of Mandamus ensuring AUSAs and the Probation Officer explain their part in depriving of me of due process and that, and that employment Defendants comply with prior court rulings.**

272.    **Award compensatory and punitive damages for deliberate misconduct.**

273.    **Grant attorneys' fees and costs.**

## VI. DEMAND FOR EXPEDITED RELIEF

274.    Due to the **ongoing denial of life-saving HIV medication and insulin,** Plaintiff requests an **emergency hearing and expedited ruling** on this Petition.

## VII. DEMAND FOR JURY TRIAL

275.    Plaintiff **demands a jury trial** on all issues.

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

Declare that Defendant's failure to comply with Judge Engelmayer's order constitutes a violation of this Court's directive;

Issue an order enforcing compliance, including, if necessary, the issuance of a writ (such as a writ of mandamus or any other appropriate writ) compelling Defendant to perform the specific directed action

Award such sanctions or relief as this Court deems just and proper to deter future noncompliance; and

Grant any further relief as may be warranted by the circumstances.


Respectfully submitted,




DATED: 2/28/2025
Respectfully submitted,
Lucio Celli
89 Widmer Road
Wappingers Falls, New York 12590
929-429-0155
Lucio.Celli.12@gmail.com




## Certificate of Service

I hereby certify that on [Date], a copy of the foregoing Motion to Specify Relief Sought was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.
[Attorney's Name]