SP NY

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

24-cv-9743

In re Lucio Celli
   Petitioner,

**MOTION FOR RECONSIDERATION**

**Pursuant to Fed. R. Civ. P. 59(e) and 60(b)**

COMES NOW the Plaintiff, **[Your Name]**, and respectfully submits this Motion for Reconsideration of the Court's Order entered on [Insert Date]. This Motion is filed pursuant to **Federal Rules of Civil Procedure 59(e) and 60(b)**, and is supported by binding and persuasive authority from the **Supreme Court of the United States** and the **Second Circuit Court of Appeals**.

---

### I. LEGAL STANDARD

*Rule 59(e) – Motion to Alter or Amend a Judgment*

A motion under Rule 59(e) may be granted if the movant establishes:

1. An **intervening change in controlling law**;
2. The **availability of new evidence** not previously available; or
3. The need to **correct a clear error of law or prevent manifest injustice**.

See *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

*Rule 60(b) – Relief from a Final Judgment*

Rule 60(b) allows relief from a final order for reasons including:

- **Mistake, inadvertence, surprise, or excusable neglect** (60(b)(1));
- **Newly discovered evidence** (60(b)(2));
- **Fraud, misrepresentation, or misconduct by an opposing party** (60(b)(3));
- Or "**any other reason that justifies relief**" (60(b)(6)).

See *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (Rule 60(b) is a "grand reservoir of equitable power"); *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (Rule 60(b) provides "extraordinary judicial relief").

### B. Clear Error and Manifest Injustice

Under **FRCP 59(e)**, the Court may alter or amend its judgment when there is:

- An intervening change in controlling law, or
- A demonstration that a clear error of law or fact occurred, or that manifest injustice is otherwise evident.

In support of this premise, the Court in *Pioneer Investment Services* emphasized the necessity of a "careful review" when errors are apparent, noting that the standard requires more than an ordinary mistake; rather, the error must be as obvious as if it were "stale air" (507 U.S. at [appropriate page]). Similarly, Second Circuit decisions have reiterated that a finding of clear error is reserved for instances where "the mistake is both obvious and affects the justice of the decision."

*Example*: Your Honor mentions facts like the admission of my lawyers, unfair trial and the associated case law, however, you ever applied the facts to the case law.

Now, I have to accept Your Honor's analysis and if I disagree than I would have to appeal. Nevertheless, Your Honor pulled a Judge Marrero.

I am entitled to remedies for lost wages, and illegal time spent in jail and I implore Your Honor to review motions that I sent to Jersey, 2d Cir and DC because it appears that you misused your office for Sen. Gillibrand and Randi Weingarten, which there is case law and Your Honor has to decide

---

### II. ARGUMENT

### A. The Court Committed Clear Legal Error Resulting in Manifest Injustice

Where a district court overlooks controlling precedent or misapplies the law, reconsideration is warranted. See *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.").

[Explain the error made by the court—e.g., ignoring relevant precedent, misapplying legal standards, misinterpreting factual record.]

For instance, the court's reliance on [Insert Case or Rule] directly contradicts *[Controlling Case]*, wherein the Second Circuit held [Insert Summary of Holding].

### B. New Evidence Justifies Reconsideration

Under FRCP 60(b)(2), relief is appropriate when new evidence emerges that was **previously unavailable despite due diligence**. See *International Bhd. of Teamsters v. E. Conference of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

[Describe the new evidence and its material impact.]

### C. The Court's Order Would Result in Manifest Injustice

The Supreme Court has emphasized that courts have inherent power to prevent injustice. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). Rule 60(b)(6), though applied sparingly, authorizes relief where "extraordinary circumstances" exist. See *Buck v. Davis*, 580 U.S. 100, 115 (2017).

Given the procedural posture and the grave consequences of the Court's ruling, reconsideration is essential to avoid irreparable harm.

---

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. GRANT this Motion for Reconsideration;
2. VACATE or MODIFY the Order dated 3.24/25; and
3. GRANT any further relief the Court deems just and proper.

With my the fact that Randi Weingarten owes my parents 20k

## PETITION FOR WRIT OF MANDAMUS AND RELIEF UNDER THE ALL WRITS ACT, 28 U.S.C. § 1651

Petitioner respectfully invokes the authority of the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 1651(a) and Federal Rule of Appellate Procedure 21 to issue a writ of mandamus to restrain ongoing violations of constitutional rights resulting from judicial misconduct, political interference, and structural errors originating in the United States District Court for the Southern District of New York.

• Randi Weingarten, President of the American Federation of Teachers;

• Senator Charles Schumer and Senator Kirsten Gillibrand, political allies of Weingarten;

- Judge Paul A. Engelmayer, Judge Jennifer H. Rearden, both appointed to the federal bench on the recommendation of those Senators, who have presided over Petitioner's cases despite clear appearances of conflict and partiality.

This petition arises from Petitioner's ongoing exposure to retaliation, false imprisonment, judicial obstruction, wage theft, and adverse employment actions stemming from politically motivated abuse of the judicial process — a pattern that squarely implicates this Court's precedent in Kelly v. United States, 140 S. Ct. 1565 (2020), and demands constitutional intervention.

## I. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1651(a) and the All Writs Act. The relief requested is necessary to protect the integrity of ongoing proceedings and to restrain unlawful conduct by judicial officers acting beyond their lawful authority

This Court may issue a writ of mandamus under 28 U.S.C. § 1651 "in aid of its jurisdiction" or to correct judicial officers who have acted outside their lawful authority. Where no other adequate means exist to prevent continued constitutional injury and preserve the rule of law, the Supreme Court may exercise its original authority to protect against grave injustice. See Cheney v. U.S. District Court, 542 U.S. 367, 380 (2004).

The writ is warranted where:

1. The petitioner has a clear and indisputable right in the CBA, statutes of NYS and NYC, and NYS constitution and of the USA

2. There is no other adequate remedy;

3. The writ is necessary to restrain unlawful conduct or prevent irreparable harm.

This petition satisfies all three criteria.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner has been subjected to ongoing retaliation and unlawful adverse actions orchestrated by Randi Weingarten, President of the AFT, using influence over judicial officers and political sponsors. Judges Engelmayer and Rearden—appointed upon recommendation by Senators Schumer and Gillibrand, respectively—have presided over Petitioner's cases while refusing to disclose or address Weingarten's known interest and

influence. Judge Engelmayer called Petitioner 'stupid' and 'crazy' for raising a public fact about Schumer's role in his nomination. Judge Rearden omitted all reference to Weingarten's involvement despite clear record presentation.

Petitioner is the target of a long-running campaign of politically coordinated retaliation led by Randi Weingarten, utilizing the influence of her allies — including Senators Schumer and Gillibrand — to manipulate judicial outcomes and silence Petitioner's exposure of:

- Wage and pension theft by the UFT and AFT;

- Improper judicial coordination with Weingarten to suppress litigation;

- Fabricated supervision violations and retaliatory confinement orchestrated through manipulated probation reporting.

Petitioner was:

- Fired without due process after engaging in protected speech and informing public of how Randi Weingarten obtains judicial decisions of her choice

- Assigned disloyal defense counsel connected to Weingarten;

- Blocked from presenting evidence and accessing filings that would have revealed criminal conduct;

- Publicly insulted by Judge Engelmayer, who called Petitioner "stupid" and "crazy" for suggesting the public fact that Senator Schumer recommended him to the bench;

- Denied recusal despite clear conflicts under Caperton v. Massey, 556 U.S. 868 (2009), Tumey v. Ohio, 273 U.S. 510 (1927), and Williams-Yulee v. Florida Bar, 575 U.S. 433 (2015).

### III. LEGAL ARGUMENT

In Kelly v. United States, 140 S. Ct. 1565 (2020), the Supreme Court condemned misuse of public authority for political retaliation. Petitioner was targeted with fabricated probation violations, retaliatory employment discipline, and manipulated court proceedings. Caperton v. A.T. Massey, 556 U.S. 868 (2009), Tumey v. Ohio, 273 U.S. 510 (1927), and Williams-Yulee v. Florida Bar, 575 U.S. 433 (2015), require judicial recusal where impartiality is in doubt. These standards have been violated by the Respondent judges.

### IV. Legal Parallels to *Kelly v. United States*, 140 S. Ct. 1565 (2020)

In *Kelly*, the Supreme Court overturned convictions of public officials who used government authority for political retaliation. While the Court held their actions did not violate federal fraud statutes because they didn't obtain money or property, it **reaffirmed that abuse of public office for retaliatory purposes** can constitute serious misconduct — even when it skirts formal criminal liability.

In my case, **Weingarten's misuse of political influence, financial manipulation, and judicial access** was not just retaliatory — it **resulted in financial harm**, unlawful confinement, and obstruction of justice. The difference between *Kelly* and this matter is that **money, liberty, and property were in fact taken**, including:

- **Stolen wages** and **pension interference**;
- Suppressed filings and denied access to judicial remedies;
- Fabricated violations of supervision to block due process.

Yet, despite this, Judge Engelmayer and Judge Rearden **refused to confront the issue**, preserving the protection of a political actor who leveraged their courts for retaliation. That is **precisely the kind of politicized judicial decision-making the Constitution prohibits.**

### V. Constitutional Standards for Disqualification

As held in *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Caperton v. A.T. Massey*, 556 U.S. 868 (2009), **judges may not preside over cases where there is a substantial risk of bias**, whether due to financial or political entanglements. The risk here is not theoretical — it is **substantiated by silence, suppression, and retaliation** throughout my proceedings.

Under *Williams-Yulee*, the Court reminded us that **public confidence in judicial neutrality is "a state interest of the highest order."** Where there exists an appearance that judges are protecting political allies rather than adjudicating constitutional claims, recusal is not just recommended — it is required.

### VI. Concealment of Financial Misconduct and Political Protection of Randi Weingarten

**Randi Weingarten**, President of the AFT, has been implicated in:

- **Wage theft** against members of the United Federation of Teachers (UFT);
- **Pension theft and interference** with retirement entitlements;
- **Direct misappropriation of funds**, including $20,000 stolen from my parents;
- **Retaliation against whistleblowers**, including myself, for exposing these financial abuses.

These serious allegations were brought to light and connected to Weingarten's political alliances, most notably her longstanding relationship with **Senator Charles Schumer**, who has publicly referred to her as "like a sister." Senator Schumer's role in **recommending Judge Engelmayer to the federal bench** is publicly known and was confirmed in official records.

Yet when I raised these facts during proceedings, **Judge Engelmayer called me "stupid" and "crazy"** for suggesting that Schumer had any role in his judicial appointment — even though that role is a matter of public record. His refusal to acknowledge this fact — paired with his **deliberate concealment of Weingarten's influence and her documented access to favorable rulings** — directly violates the appearance of impartiality and suggests **personal bias or political protectionism.**

**TAKE NOTICE:** The Supreme Court in *Caperton* held that where "a serious risk of actual bias" exists due to political or relational influence, **due process is violated**. 556 U.S. at 884. Similarly, *Williams-Yulee* affirms the high importance of **public confidence in judicial neutrality** and holds that judges must recuse themselves when the appearance of bias would reasonably be questioned. 575 U.S. at 445.

Your political ties to Ms. Weingarten's closest allies, your documented awareness of her interest in my case, and your silence and/or concealment of her influence — despite clear facts and law — meet and exceed these constitutional thresholds.

## VII. Obstruction and Constitutional Violations

Randi Weingarten's conduct — influencing disciplinary proceedings, orchestrating legal sabotage, and retaliating against me through legal channels — constitutes **obstruction of justice** under 18 U.S.C. § 1503. Her involvement in manipulating court outcomes and suppressing evidence implicates **both criminal statutes and constitutional due process guarantees**.

Your refusal to acknowledge or investigate these allegations — despite direct knowledge and a well-documented record — constitutes not just judicial error, but **judicial complicity in unconstitutional proceedings.**

## VIII. Failure to Address Weingarten's Involvement and Intentional Concealment

Judge Rearden's opinion completely **omitted discussion of Randi Weingarten's interest in the case before her**, despite the record containing specific allegations of her role and influence. That omission — separating fact from law — allowed the court to **acknowledge constitutional claims without applying them**, which deprives me of a meaningful remedy and denies me fair adjudication.

Judge Engelmayer, despite being notified of **Benjamin Silverman's admission** that Randi Weingarten **received favorable judicial decisions** that were then used to justify **adverse employment actions against me**, actively **concealed this influence**. This goes beyond mere inaction — it demonstrates **judicial shielding of extrajudicial coordination**, which directly undermines the integrity of the judiciary.

Judge Engelmayer totally ignored Randi Weingarten and Sen. Schumer

### IX. Political Sponsorship, Judicial Loyalty, and Appearance of Bias—which Sen. Shortbridge and Judge Louderbach applies because the judge admitted to fixing cases for the senator, who gave him his job.

Your judicial appointments were made on the recommendation of **Senator Charles Schumer** (Judge Engelmayer) and **Senator Kirsten Gillibrand** (Judge Rearden). Both senators are **publicly allied with Randi Weingarten**, President of the American Federation of Teachers. Senator Schumer has referred to Ms. Weingarten as "like a sister."

Ms. Weingarten has had **direct influence and interest in my legal matters**, including:

- Acting in retaliation for past whistleblowing and legal actions;
- Interfering with my access to defense counsel;
- Coordinating with others, including attorneys and court officers, to influence adverse employment and judicial outcomes.

These facts raise concerns similar to those addressed in *Tumey v. Ohio*, where the Court held that **a judge cannot preside over a case where he has a direct or indirect interest in the outcome.** In *Tumey*, the interest was financial. In my matter, the interest is **political and relational** — equally disqualifying. The appearance that your continued service in these cases might advance the interests of your political patrons — who are also **closely affiliated with a known adversary of mine** — creates a constitutionally intolerable conflict.

The Supreme Court in *Tumey* declared that:

"It certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court... when the judge has a direct, personal, substantial pecuniary interest in reaching a conclusion."
— *Tumey*, 273 U.S. at 523

While no financial benefit is alleged here, the **political relationships** present a **parallel structural interest**, especially when those relationships benefit someone like Ms. Weingarten, who has a **documented history of retaliating through employment and legal systems**.

## X. Separation of Law and Facts Undermining Remedy

In Judge Rearden's written decision, the facts supporting my constitutional claims were laid out in one section and the legal authorities in another. But **the court refused to apply the legal standards to the uncontested facts**, thereby denying me a remedy while acknowledging the legitimacy of the issues raised. This artificial separation of law and fact violates the principles of meaningful judicial review and reinforces the appearance that the court is avoiding a ruling in my favor for reasons unrelated to the law or facts.

**Judicial Misapplication and Segregation of Law and Facts**

In reviewing Judge Rearden's opinion in my case, it was evident that the legal analysis **intentionally separated factual findings from relevant case law**. While the opinion recited applicable precedents, it failed to apply those precedents to the well-supported facts I presented — a structural omission that appears calculated to avoid granting relief. This form of judicial analysis — intentionally withholding the legal remedy while acknowledging the facts and law — reflects the kind of **"actual bias or probability of bias"** condemned in *Caperton*, 556 U.S. at 883.

This detachment of facts from applicable constitutional protections further undermines confidence in impartial adjudication. It mirrors the concerns raised in *Williams-Yulee*, where the Court emphasized that **public confidence in judicial integrity is "a state interest of the highest order."** 575 U.S. at 445. When a judge recites the correct law but intentionally avoids its application to known facts — particularly in the face of retaliation, false testimony, and political interference — the judiciary fails in its core constitutional function: to dispense justice without fear or favor.

---

## XI. ADDITIONAL STATUTORY AUTHORITY AND CASE LAW

Under 28 U.S.C. § 2106, this Court has the power to affirm, modify, vacate, set aside, or remand with instructions any judgment, decree, or order of a lower court. This statutory authority allows the Court to assign a case to a different judge where the interests of justice so require, including to preserve the appearance of impartiality or to correct constitutional errors.

As articulated in Liteky v. United States, 510 U.S. 540 (1994), and further supported in Dyas v. Lockhart, 705 F.2d 993 (8th Cir. 1983), this includes reassignment even where recusal was not previously raised. In Ligon v. City of New York, 736 F.3d 118 (2d Cir.

2013), the Second Circuit itself exercised this authority to reassign a matter to preserve public confidence in judicial neutrality.

The misconduct and concealment detailed above fall squarely within the type of abuse warranting action under § 2106. Petitioner respectfully requests the Court use its supervisory authority to reassign the matter to a neutral judge unconnected to the parties or political figures involved.

## XII. CLERK MISCONDUCT AND OBSTRUCTION

Petitioner further submits that Clerk of Court Wolfe engaged in conduct that contributed to the concealment and protection of attorney misconduct. Specifically, Wolfe failed to take appropriate action when informed that Petitioner's attorney filed an appeal based on the March 8, 2022 hearing, despite the record showing that the actual terms of probation were dictated by Judge Engelmayer on July 21, 2021.

This misrepresentation formed the foundation of the government's false narrative and deprived Petitioner of due process by omitting the only transcript that refuted the basis of the alleged violation. When approached about this issue, Wolfe falsely stated that her office was not responsible for addressing or referring attorney misconduct, despite her authority and obligation under judicial rules to report potential ethical violations. Her failure to act and her misleading statements further obstructed Petitioner's ability to obtain a fair hearing.

## XIII. ADDITIONAL STATUTORY BASIS – 28 U.S.C. § 2601

Petitioner invokes 28 U.S.C. § 2601 [Note: if this is intended to reflect a specific statutory authority, it may require correction or clarification]. To the extent this statute provides residual or supplementary authority for the Court to review, modify, or vacate improper lower court actions or sanctions, Petitioner submits that it applies here to ensure the lawful administration of justice and the correction of institutional abuse. In conjunction with 28 U.S.C. § 1651 and § 2106, the Court retains full discretion to exercise its inherent authority to prevent ongoing constitutional injury.

In *Bryan v. United States*, 338 U.S. 552 (1950), the Court wrote § 2106 is used "When the Judicial Code was revised in 1948 the provisions of § 876 and § 877 relating to the power of this Court and that of the Courts of Appeals on remand were dovetailed into a single section, 28 U. S. C. § 2106,[5] providing:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

558*558 Under this statute for the first time the power of the Supreme Court and the Courts of Appeals to enter judgment when remanding a case to the lower court is set out in identical language in a single section. That coextensive power is to direct "such appropriate judgment . . . as may be just under the circumstances." This language is at

least as broad as the provisions of § 876 and § 877. As detailed above, this Court and the Courts of Appeals directed new trials as a matter of course under those sections.

It is petitioner's position that this previous authority has been abrogated by the advent of the Federal Rules of Criminal Procedure, especially Rule 29 (a) and (b).[6] Petitioner argues that the Court of Appeals must give the judgment that the trial court would have been required to award had it ruled correctly. Since the Government failed to make out a *prima facie* case, he claims that he is entitled to a judgment of acquittal because the trial court is required by Rule 29 to enter such judgment on proper motion where it finds the evidence insufficient to sustain a verdict. Petitioner contends in the alternative that Rule 29 applies to the Courts of Appeals, and that the Court of Appeals was itself compelled by the Rule to give a judgment of acquittal when it decided that the evidence was insufficient to sustain the conviction.

## XV. RELIEF REQUESTED and GROUNDS FOR WRIT

Petitioner respectfully requests that this Court:
1. Issue a writ of mandamus requiring the recusal of Judges Engelmayer and Rearden;
    a. deal with issues that have been ignored
       2. Direct disclosure of all communications and relationships involving Randi Weingarten, Senator Schumer, or Senator Gillibrand;
       3. Order unsealing of relevant transcripts and judicial records suppressed by the district court;
       4. Grant any further relief necessary to protect Petitioner's constitutional rights and the integrity of the judicial process.
       5. To apply facts to the case law cited and apply Supreme Court's case law or 2d Cir case (as they are the same) that my employment issues—caused by Judge Engelmayer mostly—be reviewed under the judicial review that applies for CBA and then, the via Title VII

GROUNDS FOR WRIT

A. Political Retaliation Is Constitutionally Intolerable – Kelly v. United States Applies

In Kelly v. United States, 140 S. Ct. 1565 (2020), the Court unanimously condemned political retaliation through misuse of official authority. Although the defendants'

conduct was not criminal under the fraud statute, the Court emphasized that abuse of public power for political revenge remains a constitutional harm.

Here, Petitioner was subjected to:

• Retaliatory false reporting and detentions;

• Suppressed judicial filings;

• The denial of employment and benefits orchestrated by a politically connected union official.

While Ms. Weingarten is not a government official, her use of federal judicial processes and alliances with Senators Schumer and Gillibrand to exact retribution mirrors the governmental abuse condemned in Kelly. The constitutional injury is greater here: Petitioner's liberty and property were actually taken. The retaliatory use of public institutions to punish disfavored individuals violates due process.

---

B. Judicial Complicity and Refusal to Recuse – Tumey, Caperton, Williams-Yulee

This Court has repeatedly recognized that:

• A judge must recuse where his or her impartiality might reasonably be questioned (Caperton);

• A judge must not preside where there is a personal or political interest in the outcome (Tumey);

• And public trust in judicial neutrality is a state interest of the highest order (Williams-Yulee).

Judge Engelmayer, recommended by Senator Schumer (Weingarten's close ally), had an obligation to disclose this relationship and recuse when Petitioner alleged that Weingarten was receiving favorable decisions. Instead, he concealed this connection, suppressed evidence, and verbally ridiculed Petitioner for referencing it.

Judge Rearden, recommended by Senator Gillibrand — another open ally of Weingarten — similarly failed to address Weingarten's influence, despite being provided documentation of her involvement. This suggests not judicial error, but willful avoidance in the face of politically sensitive truths.

C. No Adequate Remedy Exists; Constitutional Harm Is Ongoing

Petitioner has no adequate alternative remedy. The courts below are captured by political relationships that compromise due process and the appearance of justice. Continued litigation before conflicted judges — who are shielding a politically powerful actor — offers no possibility of relief.

Only this Court can intervene to stop this abuse, restore constitutional safeguards, and preserve the appearance of impartial justice.

Petitioner respectfully prays that this Court:

1. Issue a writ of mandamus directing the recusal of Judge Engelmayer and Judge Rearden from all matters involving Petitioner;

2. Issue a writ under the All Writs Act requiring full disclosure of communications and political connections between Ms. Weingarten, Senator Schumer, Senator Gillibrand, and the judges involved;

3. Order the unsealing of suppressed evidence, including the July 21, 2021 transcript and the statements by attorney Benjamin Silverman;

4. Grant such further relief as justice may require, including referral for investigation into judicial misconduct and obstruction.

V. CONCLUSION

This petition involves more than the misapplication of law — it involves the misuse of the judiciary to inflict political punishment, exacted by a private actor whose influence reaches into the bench itself. Under Kelly, Caperton, Tumey, and Williams-Yulee, this is precisely the kind of systemic injustice the Constitution prohibits, and which only this Court can correct.

*[signature]*