# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

2024-cv-09743

Lucio Celli,

Plaintiff,

v.

New York City et al,

Defendants.

> Denied. A plaintiff has 90 days to serve defendants and the court must extend such time if good cause is shown. Fed. R. Civ. P. 4(m). Plaintiff filed this action on December 18, 2024. Plaintiff has had more than 140 days to serve defendants. Plaintiff has not shown good cause for any more time to do so.
>
> SO ORDERED:
>
> 05/08/2025
>
> HON. ROBERT W. LEHRBURGER
> UNITED STATES MAGISTRATE JUDGE

MOTION TO DEFER DISMISSAL Until ALL Defendants have Answered And/OR, IN THE ALTERNATIVE, FOR EXTENSION OF TIME to Service the Added Defendants (Relates to my request for 3rd Amendment Complaint and forthcoming motion under FRCP 11)

Plaintiff respectfully requests that this Honorable Court defer ruling on any motion to dismiss or dispositive motion filed by any single defendant until such time as all named defendants have been served and afforded the opportunity to answer or otherwise respond. Alternatively, Plaintiff requests an extension of 30 days to complete service on the remaining defendants and ensure proper joinder of all necessary parties.

I believe my request is governed by FRCP 15 and FRCP 54

**Legal Note: The Application and Scope of Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872) in Multi-Defendant Litigation Involving Joint or Interdependent Liability**

**Introduction and Overview**

The central issue addressed in this note is the proper judicial approach to entering judgment—particularly default judgment—against one or more defendants in a multi-defendant action where liability is alleged to be joint or otherwise interdependent. Specifically, the question is whether, under the doctrine established in Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872), a court

must withhold judgment against a defaulting defendant until the case is resolved as to all co-defendants, in order to avoid the risk of inconsistent or incongruous judgments.

The user seeks to develop a comprehensive, persuasive argument that, where liability is joint or interdependent, the court must await the resolution of the case as to all defendants before entering judgment against any one defendant. The most effective argument in support of this position is that the Supreme Court's holding in Frow v. De La Vega has been consistently reaffirmed and applied by federal courts across the United States, and that the rationale underlying Frow—namely, the avoidance of inconsistent judgments and the preservation of judicial integrity—remains compelling and controlling in cases of joint or interdependent liability.

**Relevant Facts and Factual Assumptions**

For the purposes of this analysis, the following factual assumptions are made, consistent with the authorities provided:

1. The action involves multiple defendants, at least one of whom has defaulted (i.e., failed to answer or otherwise defend).
2. The plaintiff's theory of liability is joint, joint and several, or otherwise interdependent, such that the liability of one defendant is not wholly independent of the liability of the others.
3. The case remains pending as to at least one non-defaulting defendant, who is actively contesting the claims.
4. The risk exists that entering judgment against the defaulting defendant could result in an outcome inconsistent with the eventual resolution of the claims against the non-defaulting defendant(s).

Where facts are ambiguous—such as whether the liability is truly joint, joint and several, or merely "closely interrelated"—the analysis will address the implications of each scenario, as the authorities recognize some divergence in the application of Frow depending on the nature of the alleged liability.

**Legal Principles and Points of Law**

1. **The Frow Rule: No Judgment Against One Defendant Where Liability is Joint and the Case is Pending Against Others**

   The Supreme Court in Frow v. De La Vega held that, in cases of joint liability, "judgment should not be rendered against one defendant while the cause is still pending against the others." Frow v. De La Vega, 82 U.S. (15 Wall.) 552, 554 (1872) ("If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. That

incongruity would of itself show the impropriety of such a proceeding in cases of joint liability.").

2. **Rationale: Avoidance of Inconsistent Judgments**

   The core rationale for the Frow rule is the avoidance of inconsistent or logically incongruous judgments. As explained in Morales v. Fourth Ave. Bagel Boy, Inc., 18 Civ. 3734 (E.D.N.Y. Feb. 12, 2021), "The purpose of postponing decision on the default judgment is to avoid the risk of inconsistent results: the defaulting party being held liable on default while the non-defaulting party ultimately being found not liable at the conclusion of the case. ... The risk of inconsistent results is high where claims are premised on joint liability because joint liability 'requires all defendants to be liable for any one of them to be liable,' such that it is 'impossible for one defendant to be liable unless all other defendants are also liable.'"

3. **Application to Joint, Joint and Several, and Interdependent Liability**

   While Frow's original context was joint liability, federal courts have extended its logic to cases of joint and several liability, and to situations where defendants are "closely interrelated" or "similarly situated." See Jefferson v. Briner, Inc., 461 F.Supp.2d 430, 434-35 (E.D. Va. 2006) ("the Fourth Circuit has concluded that Frow applies not only to defendants who are alleged to be jointly liable, but also to those defendants thought to be jointly and/or severally liable, or who are otherwise closely interrelated"); Ferrari Fin. Servs., Inc. v. Yokoyama, CIVIL NO. 18-00136 JAO-RLP (D. Haw. Sep. 6, 2018) (Ninth Circuit extends Frow to "similarly situated" defendants).

4. **Federal Rule of Civil Procedure 54(b) and the Frow Doctrine**

   The modern procedural context is shaped by Rule 54(b), which allows for entry of judgment as to fewer than all parties only if the court expressly determines that there is no just reason for delay. Courts have interpreted Rule 54(b) as consistent with Frow's caution against inconsistent judgments. See Garrison v. Ringgold, Case No.: 19cv244-GPC(RBB) (S.D. Cal. Jan. 21, 2020) ("A default judgment on fewer than all defendants must comply with Federal Rule of Civil Procedure 54(b), which provides in relevant part: 'the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.'").

5. **Circuit-Level Endorsement and Application**

   Numerous federal courts of appeal and district courts have reaffirmed the Frow rule. The Ninth Circuit, for example, has held: "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001) (citing Frow). The Second

    Circuit and district courts in the Eighth, Fourth, and other circuits have similarly applied Frow's logic.

6. **Practical Application: Postponement of Default Judgment**

   The "better practice" is for courts to defer judgment against defaulting defendants until the merits have been resolved as to all defendants. See Rankin v. Direct Recovery Servs., CIVIL 21-1560 (MJD/LIB) (D. Minn. May 23, 2023) ("the 'better approach to remedy this problem is for the courts to defer judgment against the defaulting party until the merits have been resolved'").

7. **If the Plaintiff Fails on the Merits, the Defaulting Defendant is Also Exonerated**

   If the non-defaulting defendant prevails on the merits, the action should be dismissed as to both the answering and defaulting defendants. See Johnson v. Kyeong Indus. Inc., No. 2:11-cv-00694 GEB KJN (E.D. Cal. Oct. 21, 2011) ("if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants").

I. **Analysis and Argument Construction**

Applying these principles to the assumed facts:

1. **Reiteration of Facts and Legal Principles**

   The action involves multiple defendants, at least one of whom has defaulted. The plaintiff's theory of liability is joint or interdependent. The case is still pending against at least one non-defaulting defendant. The risk of inconsistent judgments is real: if judgment is entered against the defaulting defendant, but the non-defaulting defendant prevails, the court would have reached contradictory outcomes on the same set of facts and legal theories.

2. **Application of Frow and Its Progeny**

   The Supreme Court's holding in Frow is directly on point: "If the case is one of joint liability, then judgment should not be rendered against one defendant while the cause is still pending against the others." Frow, 82 U.S. at 554. This principle has been repeatedly reaffirmed by federal courts. For example, in Jain v. Nexgen Memantine, Inc., 8:20-cv-2263-VMC-JSS (M.D. Fla. Dec. 9, 2022), the court stated: "in cases involving more than one defendant, a judgment of liability should not be entered against a defaulting party alleged to be jointly liable with other defendants until the matter has been adjudicated with regard to all defendants."

   The rationale is further explained in Morales v. Fourth Ave. Bagel Boy, Inc., 18 Civ. 3734 (E.D.N.Y. Feb. 12, 2021): "The risk of inconsistent results is high where claims are premised on joint liability because joint liability 'requires all defendants to be liable for

any one of them to be liable,' such that it is 'impossible for one defendant to be liable unless all other defendants are also liable.'"

The Ninth Circuit's approach, as articulated in In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001), and cited in Sunbelt Rentals, Inc. v. Three Bros. Elec. Contractors, 1:21-cv-01357-JLT-SKO (E.D. Cal. Jan. 13, 2022), is that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."

The Fourth Circuit has interpreted Frow even more broadly, applying it to "closely interrelated" defendants, not just those strictly jointly liable. See Wells v. One Way Logistics, LLC, C/A No.: 3:19-3578-CMC-SVH (D. S.C. Feb. 1, 2021); Jefferson v. Briner, Inc., 461 F.Supp.2d 430 (E.D. Va. 2006).

3. **Rule 54(b) and Judicial Discretion**

While Rule 54(b) allows for entry of judgment as to fewer than all parties, courts have consistently held that, in the context of joint or interdependent liability, there is "just reason for delay" in entering judgment against defaulting defendants. See Garrison v. Ringgold, Case No.: 19cv244-GPC(RBB) (S.D. Cal. Jan. 21, 2020); Beck v. Pike, CASE NO. C16-0001JLR (W.D. Wash. Feb. 9, 2017).

4. **Uniformity of Liability and the Risk of Incongruity**

The authorities are clear that, where the theory of liability requires a uniform result as to all defendants, it is improper to enter judgment against one while the case is pending against others. See Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F.Supp.2d 995, 1008 (N.D. Cal. 2001) ("Frow's applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.").

5. **Practical Consequences and Judicial Integrity**

The practical effect of the Frow rule is to preserve the integrity of the judicial process and avoid the "unseemly and absurd" result of contradictory judgments. See Varilease Fin., Inc. v. Earthcolor, Inc., Case No. 18-CV-11390 (E.D. Mich. Mar. 19, 2019); Leighton v. Homesite Ins. Co. of the Midwest, 580 F.Supp.3d 330 (E.D. Va. 2022).[1]

**Key Submissions**

- The Supreme Court's holding in Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872), remains controlling authority for the proposition that, in cases of joint or interdependent

---

[1] 2:2021cv00490

- liability, judgment should not be entered against one defendant while the case is pending against others.
- The rationale for this rule—the avoidance of inconsistent or incongruous judgments—has been consistently reaffirmed by federal courts across multiple circuits, including the Second, Fourth, Eighth, and Ninth Circuits.
- The rule applies not only to strictly joint liability, but also to joint and several liability, and to cases where defendants are "closely interrelated" or "similarly situated."
- Federal Rule of Civil Procedure 54(b) does not override the Frow doctrine; rather, it reinforces the need for judicial caution and the avoidance of inconsistent judgments.
- The proper course is to defer entry of judgment against defaulting defendants until the case is resolved as to all defendants, and, if the non-defaulting defendant prevails, to dismiss the action as to all.

II. **Alternative Arguments and Nuanced Points**

- **Limitation to True Joint Liability:** Some courts have suggested that Frow applies only to cases of "true joint liability," and not to cases where liability is several or independent. See Am. Clothing Express v. Cloudflare, Inc., 2:20-cv-2007 (W.D. Tenn. Jan. 27, 2022) ("Frow's meaning is contested. Some Circuits apply Frow only when liability among defendants is truly joint."). However, the weight of authority, especially in the Fourth and Ninth Circuits, is that the rule extends to joint and several liability and to "closely interrelated" defendants.
- **Discretion Under Rule 54(b):** Courts retain discretion under Rule 54(b) to enter judgment as to fewer than all parties, but must make an express finding that there is no just reason for delay. In practice, courts are reluctant to make such a finding where the risk of inconsistent judgments exists. See Sunbelt Rentals, Inc. v. Three Bros. Elec. Contractors, 1:21-cv-01357-JLT-SKO (E.D. Cal. Jan. 13, 2022).
- **Application to Damages:** Some courts have distinguished between liability and damages, allowing for entry of default judgment as to liability but deferring the determination of damages until the case is resolved as to all defendants. See Zhongle Chen v. Kicho Corp., 18-CV-07413 (PMH) (S.D.N.Y. Dec. 30, 2020) ("the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved").

III. **Other Points to Consider**

1. **SECTION 1116 OF THE NYC CHARTER CODIFIES MANDATORY FORFEITURE FOR FRAUD AND MISUSE OF OFFICE**

NYC Charter § 1116(a) states:

"Any officer or employee of the city who willfully violates any provision of law relating to such office or employment, or commits any fraud in connection with the operation of government, or is convicted of a crime involving public property, shall… forfeit his or her office or employment."

The misconduct alleged against DOE and UFT officials—ranging from benefit interference and retaliation to fraudulent misrepresentation of collective bargaining rights—represents a significant breach of the public trust inherent in their positions. Such actions undermine the integrity expected of public servants. New York courts have recognized that termination is warranted when public employees breach the high degree of trust placed in them, especially when their actions impact public confidence (see *Matter of Rigle v County of Onondaga*, 105 AD3d 1400 [4th Dept 2013]). Similarly, federal administrative bodies emphasize the government's strong interest in the integrity of its workforce, finding that dishonest conduct or actions undermining public trust can justify removal (see *Moore v. U.S. Postal Service*, 99 M.S.P.R. 213 [MSPB 2005]). Therefore, allegations of fraud, retaliation, and interference with rights implicate core duties of honesty and trustworthiness, potentially justifying severe disciplinary action, including termination, to safeguard public integrity.

## 2. THE UFT AND DOE FUNCTION AS CORPORATE ENTITIES SUBJECT TO SUIT AND LIABILITY UNDER NY LAW

Under **General City Law § 20(2)**, the City is a municipal corporation. Under **CPLR § 1025**, actions may be brought against corporations, including unincorporated associations and labor unions, in their organizational names.

Unions such as the UFT operate under **N-PCL § 102** and have long been treated as legal entities subject to fiduciary and representational duties, including under 42 U.S.C. § 1983 and duty of fair representation doctrine. See *Matter of UFT v. Bd. of Educ.*, 62 N.Y.2d 90 (1984).

## 3. DEFENDANTS' VIOLATIONS OF NYC CHARTER CH. 54 AND § 1171 INVALIDATE RELIANCE ON COLLECTIVE BARGAINING DEFENSES

Chapter 54 of the NYC Charter governs collective bargaining for public employees and establishes the **Board of Collective Bargaining** (BCB) to ensure impartial resolution of disputes. Section 1171 mandates a neutral and balanced board composed of city, labor, and impartial members.

Plaintiff alleges the UFT failed to properly enforce or grieve unlawful changes to 3020-a procedures and benefit administration, and colluded with DOE to distort collective bargaining rights. Under *Levitt v. BCB*, 79 N.Y.2d 120 (1992), the BCB has authority comparable to the State's PERB and must oversee lawful, equitable bargaining procedures. When that role is undermined by corruption or fraud, judicial review and § 1983 claims are proper.

This implicates my due process rights under Loudermill and Roth

IV.  CAUSE OF ACTION: 42 U.S.C. §§ 1983 and 1985 – Deprivation of Constitutional Rights Under Color of Law (Against Strauber, Peterson, Moode, Radix, and Others in Their Official Capacities)

1. Plaintiff re-alleges and incorporates all prior paragraphs as if fully stated herein.
2. Defendants Strauber, Peterson, Moode, and Radix are all final policymakers within their respective mayoral agencies as defined under NYC Charter §§ 385 and 394, and their actions and omissions are attributable to the City of New York under the Monell doctrine.
3. Defendant Strauber is the current Commissioner of the Department of Investigation (DOI) and formerly served as an Assistant United States Attorney (AUSA). Her prosecutorial background and her present role as DOI head establish that she had full knowledge of her obligations to investigate and report corruption, criminal misconduct, and civil rights violations. This prior role as a federal prosecutor enhances her culpability under Monell, as she possessed the experience, authority, and discretion to act but failed to do so.
4. Under Charter § 385(b), the head of every mayoral agency must "exercise due diligence in ensuring the faithful execution, enforcement and performance" of all powers and duties assigned to their office. Charter § 394 imposes further mandatory legal obligations on the Corporation Counsel to represent the legal interests of the people of New York City, enforce the law, and protect the City's residents, particularly in litigation involving public rights.
5. Pursuant to Charter § 394(a), Corporation Counsel is the attorney and counsel for the City and every agency thereof, with charge and conduct over all law business of the City. Under § 394(c), Corporation Counsel has the duty and authority to institute legal proceedings in any court to maintain and defend the rights, interests, and laws of the people of the City, and cannot compromise or conceal claims without lawful authorization. Moode and Radix, having been personally notified of multiple constitutional and statutory violations, failed to initiate corrective action, concealed material evidence, and refused to notify the court, all in violation of their non-discretionary obligations under § 394.
6. The City of New York has failed to file an Answer to this Complaint because it cannot do so in good faith without violating Federal Rule of Civil Procedure 11, which prohibits parties from presenting knowingly false or frivolous claims or defenses. The factual and evidentiary record—particularly Plaintiff's audio recordings—irrefutably establishes that:
    - The United Federation of Teachers (UFT) and Department of Education (DOE) did negotiate the 3020-a disciplinary procedures;
    - The City and its legal representatives repeatedly lied to courts and agencies by claiming the terms were not negotiated;
    - UFT attorney Silverman knowingly participated in falsifying this record, which is captured on audio recordings in the City's possession.
7. One such recording includes an AdCom meeting, where Plaintiff directly informed the committee that:
    - The 3020-a statute references "negotiated procedures";
    - The CBA (Collective Bargaining Agreement) explicitly sets forth those procedures;
    - Plaintiff read verbatim from the CBA to confirm this fact;

- o  Yet, the AdCom falsely insisted the procedures were not negotiated, in direct contradiction of both statutory and contractual language.

8. These false statements constitute a fraud upon the court and upon the Plaintiff. DOI Commissioner Strauber, Corporation Counsel officials Moode and Radix, and other high-level City attorneys (including Miller and Minicucci) were in possession of these recordings and therefore had actual knowledge that the City's litigation position was legally and factually false.
9. Rather than correct the record or disclose this exculpatory material to the Court—as required by Brady, Giglio, and the New York Rules of Professional Conduct—these officials ratified the deception, refused to correct the record, and actively concealed the recordings.
10. It is precisely because of this incontrovertible evidence that Mr. Brown (City attorney) and Magistrate Judge Lehrburger have sought to dismiss the Complaint in its entirety, not on legal merit, but to avoid the judicial consequences of exposing widespread misconduct, Rule 11 violations, and criminal liability involving:

- Perjury (by City and union officials);
- Obstruction of justice;
- Retaliation against a whistleblower;
- Misappropriation of wages and benefits;
- Interference with federal and state proceedings.

11. Defendant Peterson, acting in her official capacity at DOI, also made a formal statement or acknowledgement that Plaintiff was entitled to wages that had been unlawfully withheld. Despite this, Peterson failed to inform Judge Engelmayer, as required by her duty under Charter § 526-a(f) and Executive Order No. 16 (1978), and failed to correct the litigation record, constituting another deliberate act of concealment and deprivation of rights.
12. Plaintiff further identifies Judge Livingston, Judge Donnelly, and Hon. Gleason as material witnesses, having been cc'd on key email communications that documented Plaintiff's assertions of criminal conduct, perjury, and misconduct by UFT, DOE, and Corporation Counsel. Their inclusion on these communications places them on notice and confirms their firsthand awareness of the factual narrative underpinning this complaint.
13. These deliberate actions and omissions by DOI and Corporation Counsel reflect a municipal policy or custom of concealing politically inconvenient misconduct, particularly when it implicates powerful figures such as Randi Weingarten, Silverman, and Art Taylor.
14. The systemic use of false legal positions, suppression of dispositive recordings, and participation in retaliatory cover-ups satisfy the standard for liability under:

- Monell v. Department of Social Services, 436 U.S. 658 (1978);
- Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000);
- Praprotnik, 485 U.S. at 127 (ratification by final policymakers).

15. These acts also support a claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights, where:

- The conspirators shared a common goal to retaliate against Plaintiff and suppress constitutional claims;
- They committed overt acts (e.g., submitting false declarations, obstructing state review, withholding discovery);
- The object was to deprive Plaintiff of equal protection, wages, medical treatment, and access to court;
- Plaintiff suffered tangible harm as a result.

1. Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff intends to amend the complaint to conform to newly confirmed Monell-based theories of liability against Corporation Counsel. The amendment is just, proper, and supported by uncontested facts and recorded evidence already in Defendants' possession. Under Rule 15, leave to amend should be "freely give[n] when justice so requires."

## V. COUNSEL'S VIOLATIONS OF THE NYC CHARTER AND DUTIES AS OFFICERS OF THE COURT

Plaintiff respectfully moves this Court, pursuant to **Federal Rule of Civil Procedure 15(a)(2)**, for leave to file an amended complaint to include supplemental claims under **42 U.S.C. § 1983** for municipal liability pursuant to **Monell v. Department of Social Services, 436 U.S. 658 (1978)**, arising from the **inaction and suppression of known constitutional violations by the New York City Law Department** ("Corporation Counsel") both before and after service of the original complaint.

1. **Corporation Counsel—including Moode and Radix—had actual knowledge of constitutional and statutory violations prior to and after being served**, including audio recordings, emails, and notices that clearly established that Plaintiff's wages had been unlawfully withheld, disciplinary procedures were unlawfully misrepresented, and material discovery had been suppressed.
2. **Under NYC Charter § 394**, Corporation Counsel is legally obligated to act to protect the rights of the people of the City and is prohibited from concealing or compromising claims absent lawful authority.
3. Despite these clear duties, **Corporation Counsel failed to inform the Court of known material falsehoods and legal violations**, including:
    - Perjured statements by their subordinates;
    - The concealment of negotiated disciplinary procedures under the 3020-a framework;
    - The possession of exculpatory audio recordings.
4. As **officers of the court**, attorneys at Corporation Counsel are bound by ethical and constitutional obligations to act with candor and to uphold the integrity of judicial proceedings. See, e.g., **Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)** ("[A]n attorney, whether retained or court-appointed, is an officer of the court."); **United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993)** (recognizing the duty of candor and truthfulness as central to the attorney's role as officer of the court).

5. Plaintiff therefore seeks to amend to include that **the Law Department's institutional failure to report, correct, and address known constitutional violations constitutes a municipal policy or custom** under *Monell*, justifying direct municipal liability.

NO PREJUDICE AND JUSTICE REQUIRES LEAVE

6. This request is timely and made in good faith. No trial date has been set, and discovery remains limited.
7. Defendants will not be prejudiced, as the proposed amendments rely on existing factual material already within Defendants' control or possession.
8. Courts routinely grant leave to amend where, as here, the proposed additions are grounded in publicly known facts, supported by constitutional and statutory obligations, and necessary to conform pleadings to the evidence.

## VI. Conclusion

The strongest argument, supported by the Supreme Court's decision in Frow v. De La Vega and a consistent line of federal authority, is that where liability is joint or interdependent, the court must withhold judgment against any defendant—including defaulting defendants—until the case is resolved as to all defendants. This rule is grounded in the need to avoid inconsistent or incongruous judgments and to preserve the integrity of the judicial process. The user has a solid basis for insisting that the court defer entry of judgment against defaulting defendants in such cases, and should marshal the authorities cited above to support this position. Where the nature of liability is ambiguous, the user should take care to establish the joint or interdependent character of the claims to ensure the application of the Frow doctrine.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Defer ruling on any motion to dismiss until all defendants have been served and responded;
2. Or, in the alternative, grant Plaintiff an extension of 30 days to effectuate service on the remaining defendants;
3. And grant any other relief the Court deems just and proper.

Lucio Celli, May 5, 2025