UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

2024-cv-09743

Lucio Celli,

Plaintiff,

v.

New York City et al,

Defendants.

> This filing is an opposition brief to a motion to dismiss filed by Defendant UFT. The Court will consider this filing in addition to the 36-page brief already filed by Plaintiff but will not consider any additional briefing by Plaintiff on the motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion flag associated with this filing.
>
> SO ORDERED:
>
> 05/08/2025
>
> HON. ROBERT W. LEHRBURGER
> UNITED STATES MAGISTRATE JUDGE

**PLAINTIFF'S Motion to Opposition TO DEFENDANTS' MOTION TO DISMISS, number 1**

Plaintiff Lucio Celli ("Plaintiff"), respectfully submits this Memorandum of Law in opposition to the Defendants' Motion to Dismiss. Plaintiff alleges violations of 42 U.S.C. § 1983, Title VII, Title IX, the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, the Affordable Care Act (ACA), and the First and Fourteenth Amendments. Defendants' conduct, including collusion with the DOE and NYSED, resulted in wage theft, denial of pension and medical rights, and unconstitutional retaliation.

## I. INTRODUCTION

The plaintiff alleges that the United Federation of Teachers (UFT), in conspiracy with the DOE and NYSED, manipulated Education Law § 3020-a procedures to deprive him of due process, benefits, and protected rights. The misconduct included willful misrepresentation of negotiations, fraudulent suppression of evidence, and targeted retaliation. The collision also involved Judge Cogan's former aide and implicated improper relationships between public officials and the union. The plaintiff's medical, financial, and constitutional harms were the result of this orchestrated deprivation.

## II. STATEMENT OF FACTS

The United Federation of Teachers (UFT) operated as a state actor by jointly participating with the New York City Department of Education (DOE) and the New York State Education Department (NYSED) in executing and enforcing disciplinary and benefit-related policies under color of state law. UFT officials, including high-ranking representatives such as Mark Collins and Randi Weingarten, were given de facto and de jure authority to shape and control procedural

due process under Education Law § 3020-a. The union's participation in altering hearing procedures, suppressing documents, directing retaliatory acts, and managing health and pension benefits was not merely advisory or representational—it constituted direct execution of state functions through formal and informal delegation by DOE and NYSED.

1. UFT Director Mark Collins admitted there was no proper negotiation over the 3020-a procedures.
2. DOE and UFT jointly altered disciplinary rights and withheld access to pension, retroactive pay, and wage records. ...
3. UFT Director Mark Collins admitted there was no proper negotiation over the 3020-a procedures.
4. DOE and UFT jointly altered disciplinary rights and withheld access to pension, retroactive pay, and wage records.
5. The plaintiff was denied HIV medication and subjected to ridicule over his NYPD-related trauma, implicating ADA and mental health discrimination.
6. Audio from over 200 judges corroborates systemic UFT misrepresentations.
7. The plaintiff alleges that Judge Cogan's former aide assisted the UFT in shielding misconduct and suppressing records related to pension eligibility.
8. The plaintiff experienced three illegal detentions following DOE's prior knowledge and retaliatory conduct against his protected complaints. These detentions occurred in or around DOE facilities and/or after union or DOE officials made defamatory reports, implicating high-level collaboration among the DOE, UFT, Judge Engelmayer, Judge Cogan, and Randi Weingarten.
9. The plaintiff was denied documents that could prove the UFT/DOE/Cogan conspiracy, including emails admitting involvement by Silverman and others. DOE and UFT officials actively suppressed or misfiled records and correspondence related to the Plaintiff's complaints and benefits eligibility.
10. The plaintiff's First Amendment rights were violated when the DOE aided Randi Weingarten in retaliating against protected speech regarding union corruption and NYPD misconduct.
11. The plaintiff submitted or attempted to submit an application for an accidental disability pension under New York State law but was obstructed by UFT and DOE officials. Documentation supporting this claim, including medical evaluations and procedural eligibility, was withheld or altered by those with institutional or political connections to the defendants. Judge Cogan's former aide is specifically alleged to have facilitated the concealment or mishandling of Plaintiff's pension documents.
12. DOE and UFT officials engaged in retaliatory acts—including workplace isolation, denial of accommodations, and procedural sabotage—shortly after Plaintiff reported violations concerning health access, due process violations, and union misconduct. These acts directly followed Plaintiff's whistleblower disclosures and formed the basis of retaliatory motive under NY Labor Law § 740.
13. UFT Director Mark Collins admitted there was no proper negotiation over the 3020-a procedures.
14. DOE and UFT jointly altered disciplinary rights and withheld access to pension, retroactive pay, and wage records.

15. The plaintiff was denied HIV medication and subjected to ridicule over his NYPD-related trauma, implicating ADA and mental health discrimination.
16. Audio from over 200 judges corroborates systemic UFT misrepresentations.
17. The plaintiff alleges that Judge Cogan's former aide assisted the UFT in shielding misconduct and suppressing records related to pension eligibility.
18. The plaintiff experienced three illegal detentions following DOE's prior knowledge and retaliatory conduct against his protected complaints.
19. The plaintiff was denied documents that could prove the UFT/DOE/Cogan conspiracy, including emails admitting involvement by Silverman and others.
20. The plaintiff's First Amendment rights were violated when the DOE aided Randi Weingarten in retaliating against protected speech regarding union corruption and NYPD misconduct.

## III. ARGUMENT

**M. Causes of Action and Related Claims**

**1. Duty of Fair Representation (DFR)**

Plaintiff asserts that the United Federation of Teachers breached its statutory duty of fair representation under federal labor law. The UFT acted in bad faith and with a discriminatory motive by failing to challenge DOE's violations of the collectively bargained procedures under § 3020-a, actively misrepresenting negotiations, and colluding with the DOE and NYSED to Plaintiff's detriment. See *Vaca v. Sipes*, 386 U.S. 171 (1967); *Spellacy v. Airline Pilots Ass'n*, 156 F.3d 120 (2d Cir. 1998).

**2. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

The UFT and DOE materially breached the collective bargaining agreement and implied terms by falsifying the nature of negotiated procedures, failing to preserve the bargained-for rights, and knowingly misleading Plaintiff as to his procedural and employment protections. See *Gaul v. Interboro Teachers Ass'n*, 759 F. Supp. 2d 153 (E.D.N.Y. 2010).

**3. Tortious Interference with Contract and Prospective Economic Advantage**

Individual actors, including the pension administrator and judicial aide with known personal ties to UFT leadership, intentionally interfered with Plaintiff's access to retirement benefits and post-disciplinary employment. Their interference was motivated by improper personal or political loyalties, separate from their official roles. See *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614 (1996).

**4. § 1986 Neglect to Prevent Civil Rights Conspiracy**

Plaintiff further asserts that various state and federal actors who were aware of the § 1985 conspiracy—including supervisors and judicial officers—failed to intervene or prevent the known constitutional violations, in violation of 42 U.S.C. § 1986.

### 5. False Imprisonment and Abuse of Process (State and Federal Law)

The plaintiff was unlawfully detained on three occasions after DOE and UFT retaliation escalated. These detentions lacked legal foundation and were executed in collusion with Judge Engelmayer, Judge Cogan, and Randi Weingarten, who acted to punish Plaintiff for his protected speech and litigation activity. These detentions support both a state-law false imprisonment claim and a federal First Amendment retaliation claim under *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010).

### 6. Whistleblower Retaliation under NY Labor Law § 740

The plaintiff raised concerns about illegal conduct, including deprivation of medical access, systemic retaliation, and procedural sabotage. These disclosures are protected under New York's whistleblower protection statute, and the adverse actions taken in response support an independent claim.

### 7. Intentional Infliction of Emotional Distress (IIED)

The ridicule directed at Plaintiff regarding his HIV status and NYPD trauma, paired with the intentional denial of treatment and financial hardship, constitutes extreme and outrageous conduct. These acts were intended to cause—and did cause—severe emotional distress. See *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993).

### 8. Due Process Violation in Pension Disability Application

The plaintiff also states a due process violation arising from interference in his right to apply for and be fairly considered for an accidental disability pension under New York State law. This right once applied for and processed through a statutory framework, creates a protected property interest. Denial of this process through collusive suppression by UFT and DOE—combined with Judge Cogan's aide's concealment of relevant documents—constitutes a Fourteenth Amendment violation. See *Kapps v. Wing*, 404 F.3d 105 (2d Cir. 2005); *Cortese v. Town of Southampton*, 954 F. Supp. 2d 207 (E.D.N.Y. 2013).

These additional claims are supported by the same factual matrix and reinforce the Plaintiff's entitlement to both equitable and monetary relief.

### 1. Duty of Fair Representation (DFR)

Plaintiff asserts that the United Federation of Teachers breached its statutory duty of fair representation under federal labor law. The UFT acted in bad faith and with a discriminatory motive by failing to challenge DOE's violations of the collectively bargained procedures under § 3020-a, actively misrepresenting negotiations, and colluding with the DOE and NYSED to Plaintiff's detriment. See *Vaca v. Sipes*, 386 U.S. 171 (1967); *Spellacy v. Airline Pilots Ass'n*, 156 F.3d 120 (2d Cir. 1998).

### 2. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

The UFT and DOE materially breached the collective bargaining agreement and implied terms by falsifying the nature of negotiated procedures, failing to preserve the bargained-for rights, and knowingly misleading Plaintiff as to his procedural and employment protections. See *Gaul v. Interboro Teachers Ass'n*, 759 F. Supp. 2d 153 (E.D.N.Y. 2010).

### 3. Tortious Interference with Contract and Prospective Economic Advantage

Individual actors, including the pension administrator and judicial aide with known personal ties to UFT leadership, intentionally interfered with Plaintiff's access to retirement benefits and post-disciplinary employment. Their interference was motivated by improper personal or political loyalties, separate from their official roles. See *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614 (1996).

### 4. § 1986 Neglect to Prevent Civil Rights Conspiracy

Plaintiff further asserts that various state and federal actors who were aware of the § 1985 conspiracy—including supervisors and judicial officers—failed to intervene or prevent the known constitutional violations, in violation of 42 U.S.C. § 1986. The deprivation of liberty without due process

### 5. False Imprisonment and Abuse of Process (State Law)

The plaintiff was unlawfully detained on three occasions after DOE and UFT retaliation escalated. These detentions lacked proper legal foundation and were part of a broader scheme to intimidate Plaintiff and obstruct his legal claims. See *Broughton v. State of New York*, 37 N.Y.2d 451 (1975).[1]

### 6. Whistleblower Retaliation under NY Labor Law § 740

The plaintiff raised concerns about illegal conduct, including deprivation of medical access, systemic retaliation, and procedural sabotage. These disclosures are protected under New York's whistleblower protection statute, and the adverse actions taken in response support an independent claim.

### 7. Intentional Infliction of Emotional Distress (IIED)

The ridicule directed at Plaintiff regarding his HIV status and NYPD trauma, paired with the intentional denial of treatment and financial hardship, constitutes extreme and outrageous conduct. These acts were intended to cause—and did cause—severe emotional distress. See *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993).

These additional claims are supported by the same factual matrix and reinforce the Plaintiff's entitlement to both equitable and monetary relief.

---

[1] 2014-cv-2037

### A. Standard of Review

Dismissal is inappropriate where the complaint states a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombly*, 550 U.S. 544 (2007).

### B. Plaintiff States a Claim for Theft of Wages

**Standard of Review:** To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

**Application to Facts:** Plaintiff has presented detailed factual allegations showing that the UFT, in coordination with DOE and NYSED, falsely asserted there had been no negotiation over the 3020-a process. This misrepresentation directly affected Plaintiff's access to retroactive pay, pension benefits, and salary, as disciplinary procedures were altered to Plaintiff's detriment without lawful basis. UFT Director Mark Collins's recorded admissions confirm that the union intentionally failed to negotiate, undermining Plaintiff's rights.

Additionally, judicial audio evidence—documenting over 200 judges commenting on the same pattern of union misrepresentations—supports the assertion that this misconduct was systemic and deliberate. These facts demonstrate more than a speculative injury: they establish that Plaintiff suffered economic harm through the theft of wages, orchestrated by parties cloaked in state authority. As such, the complaint pleads a facially plausible claim under *Twombly* and *Iqbal*.

The plaintiff alleges that misrepresentations regarding the 3020-a process led to the deprivation of retroactive pay and pension benefits. These allegations implicate violations of his property interest protected under the Fourteenth Amendment. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Board of Regents v. Roth*, 408 U.S. 564 (1972).

Direct admissions from UFT officials and corroborative judicial audio confirm that Plaintiff was denied his rightful benefits through deceptive practices, supporting a plausible claim.

### C. Plaintiff States a Claim for Denial of Due Process

**Legal Standard:** To state a due process claim under the Fourteenth Amendment, a plaintiff must allege (1) a constitutionally protected liberty or property interest; (2) that he was deprived of that interest; and (3) the deprivation occurred without adequate process. See *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Loudermill*, 470 U.S. at 538–39.

**Application to Facts:**

(1) **Protected Interest**: Plaintiff had a property interest in continued employment, wages, and pension benefits—interests clearly protected by due process.

(2) **Deprivation**: Plaintiff was deprived of these interests through a manipulated 3020-a process that restricted his ability to present evidence, call witnesses, or access negotiated protections. The denial of HIV medication, stemming from the disciplinary process, compounded this harm.

(3) **Lack of Process**: The procedures were materially altered without notice or negotiation. The misrepresentation by UFT officials, documented by both Mark Collins and corroborated judicial commentary, deprived Plaintiff of fair notice and opportunity to be heard.

These facts satisfy the prongs required for a due process claim under § 1983 and support the Plaintiff's assertion that the deprivation was systemic, deliberate, and unconstitutional.

The plaintiff was denied a meaningful opportunity to be heard in the 3020-a process. This includes the inability to present evidence related to his medical condition and employment status. The manipulation of procedural rules in coordination with state actors violated Plaintiff's constitutional rights. See *Mathews v. Eldridge*, 424 U.S. 319 (1976). The denial of pre-deprivation due process alone is sufficient to sustain the § 1983 claim.

**D. Pension & Property Interest Violation**

Plaintiff was denied pension access based on a misrepresented 3020-a process. Such denial implicates due process protections. See *Loudermill*, *Roth*. Denial of pension eligibility through concealed misconduct and false representation by UFT officials—facilitated by Judge Cogan's former aide—undermines both statutory and constitutional rights.

**E. Title VII and Title IX Violations**

**Legal Standard:** To state a claim under Title VII or Title IX, a plaintiff must show (1) membership in a protected class or association with such; (2) that he was subject to an adverse employment action; and (3) that the action occurred under circumstances giving rise to an inference of discrimination or retaliation. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

**Application to Facts:**

(1) **Protected Class and Associative Bias**: Plaintiff alleges discriminatory and retaliatory treatment connected to his complaints about NYPD conduct and his health condition. He also identifies the pension administrator as a close personal associate of Randi Weingarten, creating the inference of bias through association and retaliation for protected activities.

(2) **Adverse Action**: Plaintiff suffered the loss of pension benefits, and denial of retroactive pay, and was excluded from procedural protections during 3020-a proceedings—each constituting adverse employment actions.

(3) **Inferred Discrimination and Retaliation**: The timing of the benefit denials, relationship ties among UFT leadership, and internal coordination support a plausible inference that Plaintiff was targeted for raising complaints and not participating in protected union relationships. These facts

meet the pleading standard for both retaliation and discrimination claims under Title VII and Title IX.

The pension administrator, described as closely aligned with Randi Weingarten, acted with a clear bias against Plaintiff. Title VII and Title IX prohibit discrimination and retaliation based on sex, association, and protected complaints. The plaintiff alleges that decisions about benefits and wages were affected by relationships and prejudices tied to union leadership.

### F. ADA and § 504 Violations

**Legal Standard:** A plaintiff asserting claims under the ADA or § 504 must allege (1) he is a qualified individual with a disability; (2) was denied the benefits of a public entity's services, programs, or activities; and (3) such denial was because of his disability. See *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

**Application to Facts:**

(1) **Qualified Individual**: Plaintiff's HIV diagnosis and related mental health conditions qualify as disabilities under federal law.

(2) **Denial of Benefits**: The plaintiff was denied access to essential medication, mental health accommodations, and medical coverage following his removal from employment.

(3) **Disability-Related Motive**: UFT and DOE officials denied accommodations while simultaneously subjecting Plaintiff to ridicule regarding his HIV status and NYPD trauma. These actions occurred during a tainted disciplinary process and constitute actionable discrimination under both the ADA and § 504.

Denial of HIV medication and mockery of Plaintiff's NYPD-related trauma amount to disability discrimination. See *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003). Defendants refused to accommodate Plaintiff's mental and physical health needs during and after the altered disciplinary proceedings.

### G. ACA Violations

**Legal Standard:** Section 1557 of the Affordable Care Act prohibits discrimination based on race, color, national origin, sex, age, or disability in any health program or activity receiving federal financial assistance. To state a claim, a plaintiff must show (1) he was denied access to healthcare services; (2) the healthcare entity receives federal financial assistance; and (3) the denial was motivated by a prohibited discriminatory basis. See *Rumble v. Fairview Health Servs.*, 2015 WL 1197415 (D. Minn. 2015).

**Application to Facts:**

(1) **Denial of Services**: Plaintiff was denied HIV medication, despite being eligible for such coverage under the public employer plan jointly administered by DOE and UFT.

(2) **Federal Assistance**: Both DOE and UFT programs receive federal funding as part of their health and employment-related services.

(3) **Discriminatory Basis**: The denial was not neutral—it followed retaliatory disciplinary actions and was accompanied by ridicule related to Plaintiff's HIV status and mental condition. This supports a claim under the ACA based on disability discrimination and unequal access to medically necessary treatment.

The plaintiff's right to nondiscriminatory access to healthcare was obstructed. Coordination between UFT and DOE to block coverage violated Section 1557 of the ACA. See *Rumble v. Fairview Health Servs.*, 2015 WL 1197415 (D. Minn. 2015). This violation includes both pretextual denial and deliberate indifference to essential HIV-related treatment.

**H. Wage and Retroactive Pay Conspiracy**

Judge Cogan's former aide allegedly helped conceal evidence that the UFT had diverted wages from Plaintiff to benefit its affiliates. This financial harm, grounded in official misconduct, supports claims under § 1983, Title VII, and the First Amendment. The cover-up of wage theft involving judicial actors highlights the systemic breadth of the conspiracy.

**I. Collusion with State Actors – § 1983**

Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Dennis v. Sparks*, 449 U.S. 24 (1980); and *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), private parties who act jointly with the state or exercise significant state control may be deemed state actors under 42 U.S.C. § 1983. The Second Circuit has reaffirmed this principle in *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002), and *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2008).

**Application to Facts:**

Here, the UFT is alleged to have acted jointly with the DOE and NYSED in altering disciplinary procedures, denying pension and medical benefits, suppressing evidence, and engaging in retaliatory conduct. Plaintiff alleges that UFT officials, including Randi Weingarten and Mark Collins, were not merely advocates but exercised decision-making authority traditionally reserved to public employers. The DOE and NYSED delegated, acquiesced in, or ratified these actions—thus cloaking the union's misconduct with the authority of the state. These allegations satisfy the joint action and close nexus tests under Second Circuit precedent and render the UFT a state actor for purposes of liability under § 1983.

Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Dennis v. Sparks*, 449 U.S. 24 (1980); and *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), private parties who act jointly with the state are liable under § 1983. The Second Circuit has affirmed this in *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002), and *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255 (2d Cir. 2008). The plaintiff has alleged facts showing concerted action among UFT, DOE, and NYSED to deprive him of constitutional rights.

**Further**

Full and Fair Credit Claim: New York law provides tenured teachers with substantial procedural protections against termination. **Education Law § 3020-a(1)** states that "[n]o person enjoying the benefits of tenure shall be disciplined or removed except for just cause and only after a hearing upon stated charges." The Court of Appeals has repeatedly affirmed that these protections are mandatory.

In **Matter of Pell v. Board of Education, 34 N.Y.2d 222 (1974)**, the Court of Appeals underscored that due process in teacher disciplinary matters requires adherence to § 3020-a procedures. Similarly, in **Ricca v. Board of Educ., 47 N.Y.2d 385 (1979)**, the court ruled that tenure confers a property interest, and termination without compliance with § 3020-a violates due process.

Moreover, **Matter of Holt v. Board of Educ., 52 N.Y.2d 625 (1981)** held that deviations from § 3020-a, including denial of a hearing or an arbitrator's failure to follow due process, render a termination void. These cases establish that the due process rights of a tenured teacher are non-waivable and cannot be circumvented by an employer or a union's inaction.

Here, Petitioner was denied her due process rights when the UFT failed to process her grievance, preventing her from invoking the protections of § 3020-a. This failure effectively deprived her of a full hearing, violating both her constitutional and statutory rights.

**Property interest**s are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to have had a property interest in the PMM-II position, Ciambriello must have had "a legitimate claim of entitlement to it." Id. A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge. Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). While state law determines whether a public employee has a property interest in continued employment, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." Ezekwo v. NYC Health Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991) (citation and internal quotation marks omitted) (noting that "not every contractual benefit rises to the level of a constitutionally protected property interest").

We have recognized that "§ 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing." *O'Neill v. City of Auburn,* 23 F.3d 685, 688 (2d Cir. 1994). Section 75 rights, however, may be modified or replaced by a collective bargaining agreement. N.Y. Civ. Serv. Law § 76(4) (McKinney 1999). Here, § 10-1 of

the CBA replaced whatever rights Ciambriello would otherwise have derived from § 75, providing:

Except where an accrediting agency regulating a County department requires otherwise, the provisions of this section shall be exclusive for all persons in the negotiating unit and shall be in lieu of any and all other statutory or regulatory disciplinary protections.

*See Moffitt,* 950 F.2d at 885(finding that plaintiff had a property interest in his employment as a result of collective bargaining agreement provision stating that he could not be fired without just cause); *Dobosz v. Walsh,* 892 F.2d 1135, 1141 (2d Cir. 1989) (same).

Under 28 U.S.C. § 1738, "judicial proceedings [of any court of any State] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State. . . ." The question, then, is whether the New York courts would afford preclusive effect to the state court confirmation proceeding in a subsequent § 1983 action. *See Fayer v. Town of Middlebury,* 258 F.3d 117, 125-26 (2d Cir. 2001) (holding that Connecticut courts would not afford preclusive effect to state court judgment confirming arbitration award in subsequent § 1983 action).

In order to apply collateral estoppel under New York law, "it must be shown that the party against whom collateral estoppel is sought to be invoked had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy." *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328, 1331 (1979); *accord Continental Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 510 (1993). Because it is undisputed that Ciambriello never received notice of or an opportunity to participate in either the arbitration or the state court confirmation proceeding, he was not afforded a full and fair opportunity to contest the prior decision. As a result, the New York courts would not give preclusive effect to the judgment confirming the arbitrator's award. *See, e.g., Lyons v. Med. Malpractice Ins. Ass'n,* 275 A.D.2d 396, 713 N.Y.S.2d 61, 62 (N.Y.App.Div. 2000) (holding that appellants were not bound by verdict in previous action because they were not parties to that action). Thus, under 28 U.S.C. § 1738, we also must decline to give the state court judgment preclusive effect.

### J. First Amendment Retaliation

**Legal Standard:** To plead a First Amendment retaliation claim, a plaintiff must allege (1) he engaged in constitutionally protected speech; (2) he suffered an adverse action; and (3) there was a causal connection between the speech and the adverse action. See *Heffernan v. City of Paterson*, 578 U.S. 266 (2016); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006).

**Application to Facts:**

(1) **Protected Speech**: The plaintiff spoke out against union corruption, NYPD abuse, and procedural fraud concerning the 3020-a process—matters of public concern.

(2) **Adverse Action**: In response, Plaintiff was denied wages, pension, and medical care, and experienced retaliatory detentions. He was also denied documentation needed to prove collusion.

(3) **Causation**: The DOE's and UFT's adverse responses occurred after Plaintiff's protected disclosures and were carried out in concert with other retaliatory acts, suggesting a coordinated effort to chill his speech. These facts satisfy the First Amendment pleading standard.

DOE and UFT punished Plaintiff for speech protected under the First Amendment, including disclosures about union corruption and NYPD misconduct. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Heffernan v. City of Paterson*, 578 U.S. 266 (2016). The retaliatory detentions and withholding of documents further demonstrate the infringement of Plaintiff's expressive rights.

### K. § 1985 Conspiracy Claim

**Legal Standard:** To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving him of equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property, or deprivation of a legal right. See *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Cine SK8 v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

**Application to Facts:**

(1) **Conspiracy**: Plaintiff alleges a detailed scheme involving the UFT, DOE, NYSED, and judicial officials to misrepresent negotiated procedures and retaliate against whistleblowing.

(2) **Discriminatory Purpose**: The conspiracy targeted Plaintiff for his disabilities, political speech, and exposure of union misconduct, implicating discriminatory animus and suppression of protected rights.

(3) **Overt Acts**: These included manipulated disciplinary proceedings, suppression of wage and pension rights, obstruction of access to medical care, and illegal detentions.

(4) **Resulting Harm**: Plaintiff suffered wage theft, denial of due process, and physical and psychological harm, all traceable to coordinated official action. The allegations meet the legal threshold under § 1985(3).

The plaintiff alleges an actionable conspiracy involving the UFT, DOE, NYSED, and judicial actors. *Griffin v. Breckenridge*, 403 U.S. 88 (1971); *Cine SK8 v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007). The coordinated suppression of evidence and institutional complicity satisfies the pleading standard.

### L. Monell Liability, Injunctive Relief, and Punitive Damages

**Legal Standard (Monell):** To establish municipal or institutional liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must show (1) the existence of an

official policy, custom, or practice; (2) that such policy caused the constitutional violation; and (3) that the entity had final policymaking authority or ratified the illegal conduct.

**Application to Facts:** The plaintiff has alleged that the DOE and UFT had an established custom of manipulating disciplinary proceedings under § 3020-a, which included coordinated denial of negotiated rights, concealment of documents, and retaliation against protected complaints. These acts were not isolated, but part of a systemic practice aided by official personnel, including judicial aides and high-level union officials. Because the DOE and NYSED deferred to the UFT's interpretation and execution of disciplinary policy without oversight, they effectively ratified and institutionalized these practices.

**Injunctive Relief:** Plaintiff seeks injunctive relief requiring the DOE and UFT to disclose all relevant records, cease retaliatory practices, restore pension eligibility and healthcare access, and halt the misrepresentation of 3020-a procedures.

**Punitive Damages:** Given the malicious and intentional nature of Defendants' conduct—including the denial of lifesaving HIV medication, suppression of whistleblower evidence, and infliction of psychological trauma—Plaintiff seeks punitive damages to deter similar misconduct. Courts have authorized punitive damages in § 1983 and related civil rights actions where there is evidence of willful and egregious constitutional violations. See *Smith v. Wade*, 461 U.S. 30 (1983).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **Deny** Defendants' Motion to Dismiss in its entirety;
2. **Declare** that the actions of the Defendants violated Plaintiff's rights under the U.S. Constitution, Title VII, Title IX, the ADA, § 504, the ACA, and 42 U.S.C. §§ 1983 and 1985;
3. **Issue an injunction** compelling Defendants to:
    - Restore Plaintiff's due process rights for accidental pension disability and retroactive pay/wages stolen by the Weingarten/UFT/Judge Cogan and recalculate pension payments;
    - Reinstate medical coverage, including HIV treatment access--appears to be already done;
    - Cease all retaliation and unlawful manipulation of 3020-a procedures;
    - Disclose and produce all withheld documents, including evidence related to internal collusion and misconduct;
4. **Award compensatory damages** for economic loss, emotional distress, and physical harm--HIV drug resistance;
5. **Award punitive damages** for Defendants' willful and malicious conduct;
6. **Grant such other and further relief** as the Court deems just and proper.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss and allow this matter to proceed to discovery.

**Respectfully submitted,**
Lucio Celli
*Pro Se Plaintiff*

**Dated:** 5/5/25