UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUCIO CELLI,

               Plaintiff,

          -against-

NEW YORK CITY (Citi Counsel, Boro Pres, etc),
UNITED FEDERATION OF TEACHERS,
NYC TEACHERS RETIREMENT SYSTEM,
NYC DEP'T OF EDUCATION, MULGREW,
RANDI WEINGARTEN, JUDGE ENGELMAYER,
CLERK WOLFE, CHIEF JUDGE LIVINGSTON,
JUDGE COGAN, BEN SILVERMAN, SUSAN
KELLMAN, PRES. TRUMP, SANTANA, DOJ
(BOP/US Marshals),

              Defendants.

24-CV-9743 (JPC)(RWL)

**REPORT AND RECOMMENDATION
TO HON. JOHN. P. CRONAN:
MOTION TO DISMISS**

---

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Plaintiff Lucio Celli, proceeding *pro se*, has filed numerous frivolous lawsuits

against judges, attorneys, agencies, and unions, stemming from grievances related to his

criminal conviction for threatening federal judges and his termination as a teacher by the

New York State Department of Education ("DOE").  Each lawsuit has been dismissed.

Reasons for dismissal have included, among others, violation of court orders, failure to

file a short and plain statement of claims, and failure to state a claim.  Those same bases

for dismissal apply no less to the instant lawsuit.  Celli's complaint purports to assert

claims for an array of violations of federal and state law in a rambling and largely

incoherent complaint of 52 pages that rehashes allegations from his previous failed

lawsuits.  He has violated several orders issued by this Court.  He has filed numerous

frivolous and vexatious applications and motions.  He has inundated the Court, court

personnel, and hundreds of other individuals with more than 300 emails complaining,

often incoherently and profanely, about his conviction, termination, the instant case, and other matters. In the meantime, Defendant United Federation of Teachers ("UFT") has filed a meritorious motion to dismiss based on, among other grounds, principles of res judicata and collateral estoppel, statute of limitations, and failure to state a claim. In short, there are many reasons why the instant action should be dismissed – with prejudice.

### Plaintiff's Litigation History

The Court sets forth below Celli's history of frivolous and vexatious litigation most relevant to the instant dispute.

### A.    The Early Cases

In 2015, Celli, proceeding *pro se*, filed suit against his former employer, DOE, and various individuals, in the Eastern District of New York. In a December 24, 2016 order, District Judge Cogan dismissed Celli's third amended complaint with prejudice. Judge Cogan found that Celli repeatedly had failed to file a short and plain statement of his claims, instead filing expansive complaints "filled with extensive rants, rambling allegations, and many vulgar *ad hominem* attacks against several individuals based on perceived wrongs." *Celli v. New York City Department of Education*, No. 15-CV-3679, 2016 WL 10567948, at *2 (E.D.N.Y. Dec. 24, 2016), *aff'd sub nom.*, *Celli v. Cole*, 699 F. App'x 88 (2d Cir. 2017) (summary order). The Second Circuit found Celli's appeal of that dismissal to be frivolous and directed Celli to show cause why he should not be required to seek leave of that court before filing any appeals or other documents. *Celli v. Cole*, 699 F. App'x at 89. Celli responded to that order, but the Second Circuit found that he had "failed to show cause why a leave-to-file sanction should not be imposed." *Celli v. Cole*, No. 17-234, Dkt. 90 at 1 (2d Cir. Nov. 21, 2017). The Second Circuit thus directed

its Clerk of Court to "refuse to accept for filing from . . . [Plaintiff] any future appeal, motion, or other papers unless he first obtains leave of" that court.  *Id.*

In 2017, Celli was named, along with DOE, as one of several defendants in a suit filed in the Eastern District of New York, which the court characterized as "essentially a dispute between private parties competing to represent tenured New York City public school teachers in disciplinary hearings."  *Combier v. Portelos*, No. 17-CV-2239, 2018 WL 4678577, at *1-2 (E.D.N.Y. Sept. 29, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019) (summary order).  Celli filed counterclaims against the plaintiff.  In a September 29, 2018 order, District Judge Margo K. Brodie *sua sponte* dismissed Celli's counterclaims as frivolous and characterized Celli's other filings as "voluminous, and at times irrelevant." *Id.* *9.

## B.    Celli's Criminal Conviction And Violation Of Supervised Release

In 2018, Celli was criminally charged in the Eastern District of New York with violating 18 U.S.C. § 875(c) by threatening, among others, Judges Cogan, Brodie, and the Honorable Robert Katzmann, then Chief Circuit Judge of the United States Court of Appeals for the Second Circuit.  District Judge Paul A. Engelmayer of this District, sitting by designation, presided over Celli's criminal action.   Celli pleaded guilty to one count of transmitting threats to injure, in violation of § 875(c), for which Judge Engelmayer sentenced him to time served, followed by two years of supervised release. *United States v. Celli*, No. 19-CR-127, Dkt. 178 (E.D.N.Y. July 20, 2021).  Celli's appeal of his conviction and sentence were summarily dismissed by the Second Circuit.  *United States v. Celli*, No. 21-1760, Dkt. 162 (2d Cir. Jan. 6, 2023).

Celli violated the conditions of his supervised released by, *inter alia*, contacting a federal judge and prosecutor.  *United States v. Celli*, 19-CR-127, Dkt. 273 (E.D.N.Y. Nov.

21, 2022).  The court sentenced Celli to time served, revoked his term of supervised release, and imposed a new 18-month term of supervised release.  *Id.*  The Second Circuit affirmed.  *United States v. Celli*, No. 22-3138, Dkt. 120 (2d Cir. Apr. 23, 2024).

## C.    Termination Of Celli's Employment

On or about December 16, 2021, the DOE brought disciplinary charges against Celli pursuant to New York Education Law § 3020-a, which prescribes procedures and penalties for disciplining tenured teachers.  (*See* Brown Decl. Ex. A at 3.[1])  Celli requested a hearing and was assigned an attorney through UFT's state-wide affiliate, New York State Unified Teachers ("NYSUT") to represent him in his hearing.  (*Id.* at 3-4.)  In a pre-hearing conference on February 28, 2023, Celli terminated the representation of his NYSUT attorney and appeared *pro se* for the remainder of the proceeding.  (*Id.* at 4.)  On October 19, 2023, the hearing arbitrator, Timothy S. Taylor, issued an opinion and award sustaining certain specifications in the disciplinary charges and imposing the penalty of termination, effective October 19, 2023 (the "Arbitration Award").  (*Id.* at 20.)

Celli then commenced a special proceeding pursuant to the New York Civil Practice Law and Rules ("CPLR") in Supreme Court, New York County on November 21, 2023, challenging the arbitration award and his termination.[2]  (*See* Brown Decl. Ex. B.)

---

[1] "Brown Decl." refers to the Declaration of attorney Paul K. Brown sworn to on April 14, 2025, at Dkt. 82-1.  Exhibit A to the Brown Declaration is the Arbitration Award discussed below, incorporated by reference in the Amended Complaint and of which this Court takes judicial notice.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

[2] As relevant here Celli could have invoked either Article 75 and/or Article 78 of the CPLR. Article 75 addresses arbitration and, among other matters, provides grounds for challenging or vacating arbitration awards.  *See* NY CPLR § 7511.  Article 78 provides procedures for judicial review of state and local government action, typically those of administrative agencies.  *See* NY CPLR § 7801 ("Relief previously obtained by writs of certiorari to review, mandamus or prohibition shall be obtained in a proceeding under this article").  The decision of the Supreme Court dismissing Celli's judicial challenge to the

In a decision and order dated May 9, 2024, the Honorable Lyle E. Frank dismissed Celli's proceeding as time-barred and "determine[d] that the action taken by [DOE and Arbitrator Taylor] with regard to [Celli]'s employment was rational and thus not arbitrary and capricious." (*Id.* at 1.)

### D.    Celli's Frivolous Civil Suits Challenging His Conviction And Termination

Following his initial criminal sentencing, Celli began filing several civil suits related to, *inter alia*, his criminal conviction as well as his DOE disciplinary proceeding and eventual termination.  In 2021, Celli filed a *pro se* civil action in this District in which he "challenge[d] his conviction in the … Eastern District of New York" and "assert[ed] claims under state law in connection with his teacher tenure hearing [involving] the New York City Department of Education." *Celli v. New York Department of Education*, No. 21-CV-10455, 2022 WL 19696, at *1 (S.D.N.Y. Jan. 3, 2022).  By order dated January 3, 2022, Chief Judge Laura Taylor Swain dismissed that action *sua sponte*, recounting Celli's litigation history and noting that his "complaint [was] rambling and disjointed." *Id.* at *1-2. Chief Judge Swain indicated that Celli's appeal of his conviction was pending at the time and that the then-proper vehicle to challenge his conviction was a motion to vacate, set aside, or correct a federal sentence pursuant to 28 U.S.C. § 2255 filed in the Eastern District of New York. *Id.* at *2-3.  Accordingly, Chief Judge Swain dismissed Celli's civil rights claims challenging his criminal conviction without prejudice to Celli's filing such a motion in the Eastern District of New York. *Id.*  With respect to Celli's state-law claims brought under the court's diversity jurisdiction, Chief Judge Swain found that the parties

---

Arbitration Award does not specify whether the special proceeding was initiated under Article 75, Article 78, or both.  Accordingly, the Court sometimes refers to the proceeding as the "Article 75/78" proceeding.

were not diverse and that granting leave to amend would be futile. *Id.* at *4. The court also declined to exercise supplemental jurisdiction. *Id.*

Also while his criminal appeal was pending, Celli filed a "meandering and difficult to follow" complaint seeking injunctive relief in the United States District Court for the District of Columbia. *Celli v. Weingarten*, No. 21-CV-3359, 2022 WL 278772, at *2 (D.D.C. Jan. 31, 2022). There, Celli named as defendants, among others, Randi Weingarten (the President of the American Federation of Teachers ("AFT")), President Biden, Chief Judge Swain, Judge Engelmayer and other judges, the Mayor of New York City, DOE, and the prosecutors and defense attorneys from his criminal case. Celli alleged violations of his constitutional rights and sought relief in connection with his then-impending DOE disciplinary hearing. *Id.* at *2. On January 31, 2022, Judge Cooper *sua sponte* dismissed Celli's suit in its entirety with prejudice. *Id.* at *5. Like Chief Judge Swain, Judge Cooper noted that any challenge to Celli's criminal conviction had to be pursued though procedures filed in the court that imposed the sentence. *Id.* at *4. Judge Cooper dismissed for lack of jurisdiction Celli's state-law claims – including his request to limit the evidence and compel the appearance of certain witness (including federal judges and Senator Schumer) at his DOE hearing. *Id.*

In another action in this District filed on March 3, 2022, Celli sued Judge Cogan, Judge Engelmayer, and Chief Judge of the Second Circuit Debra Ann Livingston, as well as various other individuals, two committees of the United States Senate, Senator Schumer, and Ms. Weingarten. District Judge Cathy Seibel dismissed the case *sua sponte*, noting that Chief Judge Swain had already informed Celli that he "could not challenge his criminal conviction in a civil rights action" and warned that filing a new civil

rights action in this District challenging his criminal conviction in the Eastern District would result in a filing injunction. *Celli v. Perez*, No. 22-CV-2353, 2022 WL 922779, at *4 (S.D.N.Y. March 29, 2022). As did Chief Judge Swain, Judge Seibel also dismissed Celli's claims under state law because Celli failed to show that the parties were diverse, and she denied Celli leave to amend because it would be futile to allow him leave to amend to show diversity jurisdiction. *Id.*

The next day, on March 30, 2022, Judge Seibel *sua sponte* dismissed another of Celli's civil actions filed against judges of the Eastern District who presided over his cases there, then Chief Judge of the Second Circuit Katzmann, Assistant United States Attorneys, DOE, UFT, Ms. Weingarten, Senator Schumer, and several other individuals. *Celli v. Katzman*, No. 22-CV-2354, 2022 WL 1063038 (S.D.N.Y March 30, 2022). Judge Seibel made similar findings and gave a similar admonition to Celli as she did in the *Perez* action.

Later in 2022, Celli filed another *pro se* civil action in the Eastern District of New York against federal judges, government officials, Celli's former criminal defense attorneys, Ms. Weingarten, and others, alleging a conspiracy to deprive him of a fair hearing and engage in a "cover[] up." *Celli v. Engelmayer*, No. 22-CV-4646, 2023 WL 2666876, at *1 (E.D.N.Y. March 28, 2023). District Judge Thomas J. McAvoy *sua sponte* dismissed Celli's complaint, which he found to be "far from a model of clarity," with prejudice for failure to state a claim on which relief can be granted. *Id.* Noting Celli's litigation history, Judge McAvoy warned that "future filing of repetitive, vexatious and frivolous litigation may result in the imposition of an injunction prohibiting [Celli] from making future filings seeking *in forma pauperis* status without leave" of court. *Id.* at *4.

Undeterred, in 2024, Celli, again *pro se*, filed another action in this District seeking injunctive relief in connection with his criminal conviction.  His complaint named many of the same judges, individuals, and government officials who were the subject of his previously dismissed complaints, including five federal judges, five former criminal defense attorneys, various Assistant United States Attorneys, and Ms. Weingarten, but also added an array of additional defendants including the United States Attorney General, the "Federal Defender," and "US Marshals."  Recounting Celli's litigation history and characterizing his complaint as "rambling and disjointed," Judge Jennifer H. Rearden *sua sponte* dismissed all his claims for failure to state a claim, judicial immunity, or other reasons, and warned Celli that further litigation challenging his criminal conviction may result in a filing injunction.  *Celli v. Bondi*, No. 24-CV-7442, 2025 WL 903136, at *5, *13 (S.D.N.Y. March 24, 2025).

**The Instant Action**

**A.    The Amended Complaint**

Celli filed the instant action on December 18, 2024.  (Dkt. 1.)  The initial complaint was 20 pages long and named as defendants New York City, UFT, AFT, DOE, Judge Frank, and others.  On February 20, 2024, Celli filed a motion to amend his complaint as of right.  (Dkt. 40.)  The Court granted the motion and, citing Federal Rule of Civil Procedure 8(a)(2) ("Rule 8"), reminded Celli that a complaint must be a "short and plain statement of the claim showing that the pleader is entitled to relief."  (Dkt. 49 at 1.)  Celli filed his Amended Complaint on March 17, 2025.  (Dkt. 70.)

The Amended Complaint vastly expands on Celli's initial complaint.  It names many of the defendants from his earlier actions including DOE, UFT, Ms. Weingarten, Judge Cogan, and former criminal defense counsel.  (Dkt. 70 at 1.)  It also names Chief

Judge Livingston, Judge Engelmayer, and the Second Circuit Clerk of Court but indicates those three defendants are "not being served [because] of immunity." (*Id.*) Additional defendants include President Trump and the "DOJ (BOP/US Marshals)." (*Id.*) The Amended Complaint is 52 pages long, rambling, and disjointed. And, it incorporates by reference "all complaints since 2015 with their pleading into this complaint." (*Id.* at 50 Count IX.)

Although the Amended Complaint lacks coherence on multiple levels, the Court distills a rough organization as follows. The first page is a list of defendants, and the following page is a table of contents. The next 18 pages largely include excerpts from and comments about cases and laws, interspersed with legal argument. (*See id.* at 3-20.) The ensuing 15 pages or so largely rehash the events of Celli's DOE hearing and termination of employment. (*See id.* at 26-40.) Along the way, Celli dredges up allegations about his criminal conviction, alleging "interference" by Judge Engelmayer, Assistant United States Attorneys from the Eastern District, probation officers, and former criminal defense counsel. (*See id.* at 38-39.) Celli then alludes to alleged consequences of his employment termination, including loss of wages, discontinuation of medical insurance, denial of HIV medication, and loss of pension benefits. (*See id.* at 43-45.) He also alleges three instances of illegal detention, comprised of incomprehensible or fantastical allegations such as reference to "a UFT Officer who took part in depriving me of a bathroom key grievance," "second illegal detention with switching transcripts by Clerk Wolfe with how it relates to 200k in missing wages," and "Randi Weingarten considers Gaglione like a brother to her. Like Sen. Schumer consider [sic] Randi a sister." (*Id.* at 45-47.)

The Amended Complaint purports to assert claims for violation of due process under the "Education Law § 302[0-]a," discrimination and retaliation in violation of multiple federal laws and 42 U.S.C. § 1983, breach of contract and "torturous [sic] interference," "violation of the duty of fair representation," violation of the Administrative Procedures Act, abuse of process, RICO, First Amendment retaliation, and conspiracy to deprive Celli of civil rights under 42 U.S.C. § 1985. (*Id.* at 48-51.) As for relief, Celli seeks to "compel DOE and UFT to reinstate health insurance immediately and provide the withheld HIV medication and insulin"; "enforce Judge Engelmayer's prior ruling regarding arbitration representation"; "hold Arbitrator Taylor and Mr. Yu accountable for violating CBA procedures"; "direct Attorney Santana to file a compliance letter as previously ordered"; "issue a Writ of Mandamus ensuring AUSAs and the Probation Officer explain their part in depriving me of due process"; "award compensatory and punitive damages for deliberate misconduct"; and "grant attorneys' fees and costs." (*Id.* at 51.)

Early in the Amended Complaint, Celli asserts "I know that 24-cv-9743 [i.e., this case] will be dismissed (facts ignored and distorted to favor Randi Weingarten),, [sic] and I will be sanctioned for or [sic] trying to obtain what is legally mine under the law, which has been taken from me by Randi Weingarten and Judge Engelmay.er [sic]." (*Id.* at 4.)

Affirmations of service appear in the record for New York City, DOE, UFT, AFT, and Judge Frank.[3] (Dkts. 74-78, 80.) Of the named Defendants, only UFT has appeared. (*See* Dkt. 27.)

---

[3] There also is an affirmation of service on the EEOC (Dkt. 79), although it is not a named defendant in the Amended Complaint.

**B.    Celli's Repeated Violation of Court Orders In This Action**

Celli has violated several court orders by repeatedly sending ranting emails, sometimes laced with profanity and slurs, to court personnel after having been ordered to communicate with the Court solely through the Pro Se Office, and by repeatedly filing frivolous and vexatious motions and letters.   A compilation of all of Celli's emails referenced herein appears at Dkt. 156.

On February 10, 2025, the Court issued the following order (Dkt. 23):

> Over the last several days, starting on February 6, 2025, and continuing through at least February 9, 2025, Plaintiff has sent at least nine mass emails directly to several judges of this Court, including the Chief Judge, the Clerk of Court, and the Chief Judge of the Second Circuit Court of Appeals, among 40 or so total recipients. … Accordingly, Plaintiff shall not send any further email or other non-authorized communications to judges or personnel of the Court, and shall instead direct all communications to the Pro Se Intake Unit.  Failure to comply with this order may result in sanctions, including monetary sanctions, dismissal of Plaintiff's case, and/or any other appropriate sanction.

That warning did not deter Celli from continuing his haranguing emails.  As the Court explained and ordered on February 18, 2025 (Dkt. 33):

> Plaintiff has failed to comply with [the February 10, 2024] order.  Since February 10, 2024, Plaintiff has sent additional numerous mass emails directly to judges and Court personnel, including judges and personnel who are not assigned to the instant case.  Those emails consist of rants, vulgarities, incoherent statements, and other gratuitous content that is not a non-frivolous request for relief or response to a motion or Court request for a response from Plaintiff.  Such conduct continues to be vexatious, disruptive, wasteful of judicial resources, and thereby prejudicial to other Court litigants.
>
> Accordingly, the Court again orders that Plaintiff shall not send any further email or other non-authorized communications to judges, their chambers, or personnel of the Court, and instead shall direct all communications to the

11

> Pro Se Intake Unit.  Plaintiff shall also refrain from submitting and filing frivolous and vexatious material with the Court (including the Pro Se Intake Unit) and shall not submit or file any material with the Court unless it is a non-frivolous request for relief or response to a motion or other Court request for a response from Plaintiff.
>
> As previously warned, failure to comply with this order may result in sanctions, including monetary sanctions, dismissal of Plaintiff's case, and/or any other appropriate sanction.

Celli's conduct continued unabated as he continued to file frivolous and vexatious applications.  (*See, e.g.*, Dkts. 57, 58, 61, 62.)  During the six-day period of February 21-26, 2025, alone, he filed 14 motions and letters.[4]  (*See* Dkts. 41-48, 51-63.[5])  He also continued his mass email campaign, expanding the recipient list to approximately 400 individuals, and made repeated phone calls to chambers leaving ranting voicemail messages.  (*See, e.g.*, Dkt. 156 at ECF 105-221.)  The Court thus issued another order admonishing Celli.  (Dkt. 64.)  The order noted that Celli continued to violate the Court's directives "by filing frivolous and vexatious documents; by sending numerous vexatious, ranting, profane emails to an email list of more than 400 recipients, including numerous judges and court staff; and repeatedly calling judicial chambers and leaving ranting voicemails."  (*Id.* ¶ 5.)  The Court once again warned Celli, reminding him not to file

---

[4] Most of the content of Celli's letters and motions was frivolous and vexatious, including, for example, accusing judges of bribery and stealing (Dkts. 42, 47); making nonsensical requests, such as "to enforce [Judge] Engelmayer's order that denied me due process" (Dkt. 47); applying to transfer the case out of the Second Circuit because the "entire circuit is biased" (Dkt. 55); explaining that federal courts having exclusive jurisdiction over certain crimes (Dkt. 51); requesting judicial intervention to restore Celli's prescription drug coverage (Dkt. 56); moving for writ of mandamus against Assistant United States Attorneys (Dkt. 53); and requesting to vacate orders of Judge Engelmayer (Dkts. 57, 58).

[5] A few docket entries in these ranges are duplicates, the only difference being the appearance of a stamp indicating receipt by the Pro Se Office.  The Court has not included duplicates in its count of letters and motions filed between February 21-26, 2025.

frivolous requests, that all communications with the Court must be through the Pro Se Office, and that violation of the Court's orders may result in sanctions, "including monetary sanctions, contempt sanctions, and/or dismissal of the action with prejudice." (*Id.*)

Still, Celli persisted. As the Court explained in its order issued on April 15, 2025: "The Court has repeatedly warned Plaintiff that he may face sanctions, including dismissal of his case, for sending vexatious emails to judges of this court and court staff. *See, e.g.*, Dkt. 23, 33, 64. Plaintiff has continued to defy those orders and warnings. Since the most recent order and warning on February 28, 2025, Plaintiff has sent 91 such emails (filled with rants and many with profanity)." (Dkt. 84 ¶ 1; *see* Dkt. 156 at ECF 247-1239.) "In total, he has sent 147 such emails since February 6, 2025, many to an email list of over 400 addressees." (*Id.*) The Court once again directed Celli to cease sending such emails and warned that if Celli failed to comply, "**the Court will issue an order to show cause why the case should not be dismissed for repeated failures to comply with court orders**." (*Id.* (emphasis in original).) The same order denied three motions filed by Celli, two of which were directed at challenging his conviction, even though Celli had been warned in prior lawsuits that his civil claims in this District were not a proper vehicle for challenging his conviction and that he was to cease filing actions seeking such relief. (*Id.* ¶ 3.)

Two days later, Celli filed another frivolous and vexatious motion, denied by the Court, seeking to compel financial disclosure by "Judges Engelmayer, Rearden, Wolfe [the Second Circuit Clerk of Court], and Livingston"; appoint a neutral forensic accountant to conduct a financial and conflict-of-interest audit; "investigate improper political coordination between federal judges and U.S. Senators Chuck Schumer and Kirsten

Gillibrand"; and refer "ethical and legal violations" to various government bodies.  (Dkt. 86.)

Celli also continued to disregard the warnings about his onslaught of emails.  In a period of just five days after the most recent order warning Celli he would be subject to an order to show cause if he did not cease defying the Court's orders, Celli sent 29 emails containing rants and profanity to the same or similar list of roughly 400 email addresses. (*See* Dkt. 156 at ECF 1240-1440.)  The Court issued an order requiring Celli to show cause why his case should not be dismissed due to his repeated failure to comply with Court orders.  (Dkt. 87.)  The order scheduled the show cause hearing for May 13, 2025, and advised that any written submission must be filed by May 8, 2025. (*Id.*)

 A few days later, Celli filed a motion to stay and strike the order to show cause deadlines as "unlawful" because Celli had purportedly filed a mandamus petition divesting this Court of jurisdiction.  The only application for mandamus relief on the docket, however, was a frivolous request for relief as to matters involving Celli's criminal conviction.  (*See* Dkts. 53, 62.)  The Court denied Celli's motion to stay and strike and stated in no uncertain terms that "**the order to show cause, including the dates set forth therein, remains operative.  Failure to appear for the show cause hearing may result in dismissal of Plaintiff's complaint with prejudice for that reason alone.**" (Dkt 94 ¶ 3 (emphasis in original).)

Even after being ordered to show cause why the case should not be dismissed, Celli continued to send mass emails in violation of the Court's orders.  For instance, on the morning of April 28, 2025, Celli sent seven such emails in less than half an hour with subject lines such as "Lehrburger -the true objective of a conspiracy /active blindness";

"EEOC --coming back to you ---as I have to sen the audio ...as it has to go DC and Maryland"; "Lehrburger--Randi committed a crime Diamond --371 agencies too and the court is even better"; and "Com Rosa--what did you do to stop Randi and the UFT or tell the judges lehrburger as he's doing what Perb did."  (Dkt. 156 at ECF 1596-1639.)

In total, Celli has sent 324 spam emails to multiple judges' chambers, most all of which have been in violation of court orders warning Celli to communicate with the Court only through the Pro Se Office, 135 of which came after Celli had been ordered to show cause why his case should not be dismissed for repeated violations of court orders.  (*See* Dkt. 156 at ECF 1479-3567.)  Likewise, Celli's filing of frivolous and vexatious motions continued and even accelerated following issuance of the order to show cause.  (*See* Dkts. 92-93, 95-99, 103-04, 106-09, 111-17, 120, 126-55.)

## C.    Celli's Response To The Order To Show Cause

On May 1, 2025, Celli submitted a letter to the Court (mis-dated as January 22, 2025) (Dkt. 97), and a Memorandum of Law in Response to Order to Show Cause (Dkt. 98) ("OSC Response").  The letter requested the Court to dismiss the case:  "I ask that Your Honor dismiss the case."  (Dkt. 97)  Celli's OSC Response, however, contended that "dismissal is unwarranted."  (Dkt. 98 at ECF 1.)  Celli denied engaging in "a pattern of contumacious conduct" and argued that he did not act in bad faith because his admitted noncompliance "arose from a well-founded fear of retaliation, prior misconduct by defendants, and the necessity to preserve access to life-sustaining medical care."  (*Id.* at ECF 4.)  He also suggested that lesser sanctions should be considered, "such as dismissal without prejudice or curative measures."  (*Id.*)

Celli indicated that he did not want a hearing, asserting "[d]ue process does not require me to have a hearing, as this answer counts as being heard."  (*Id.* at ECF 1.)  Celli

stated that he would appear if the Court "requires an apology," but also stated that "[a]t the hearing, I will not speak because I will only get upset and scream and act like a fool. If Your Honor needs to see my face as you screw me, then I request zoom." (*Id.* at ECF 1-2.)  He then reiterated that "I do not need to … appear for Your Honor to say dismissed." (*Id.* at ECF 2.)   The Court declined to cancel or modify the show cause hearing.  (Dkt. 101.)

The show cause hearing went forward on May 15, 2025.  Celli appeared but had no good excuse for his violation of the Court's orders or his haranguing emails.  He also acted out at the hearing, asserted his grievances and arguments incoherently, and gesticulated wildly and angrily at counsel for UFT.  After the hearing, he continued to send ranting and incoherent mass emails and file frivolous and vexatious motions and letters, almost daily.  (*See* Dkt. 156 at ECF 2435-3567; Dkts. 135-55.)

## D.    UFT's Motion To Dismiss

On February 14, 2025, UFT filed a letter expressing its intent to file a motion to dismiss.  (Dkt. 30.)  By order dated February 18, 2025, the Court set a briefing schedule and put Celli on notice of issues that he would need to address in addition to those on which UFT might focus.   Specifically, the Court ordered that in addition to his brief responding to UFT's motion to dismiss:

> Plaintiff shall show cause in writing … why his claims in this case should not be dismissed with prejudice as to all defendants due to Plaintiff's (1) violation of courts' previous orders in cases filed by Plaintiff that have directed Plaintiff not to file frivolous complaints; (2) violation of the courts' previous orders … that have directed Plaintiff not to file civil complaints challenging his previous conviction; (3) violation of Federal Rule of Civil Procedure 8 requiring that a complaint be a short and plain statement of the claims being asserted; and (4) in light of numerous emails sent directly by Plaintiff to this Court's chambers and to other judges of this Court and the

16

> Second Circuit Court of Appeals, violation of this Court's orders directing that all communications from Plaintiff to the Court be submitted only through the Pro Se Office.

(Dkt. 32.)

Two days later, Celli moved to amend his complaint.  In the order granting permission to file an amended complaint, the Court warned Celli that as he had "been advised of certain specific grounds on which the current complaint may be dismissed, he will not be given a further opportunity to amend to address those issues." (Dkt. 49 ¶ 2.) The Court also set a revised briefing schedule for UFT's motion to dismiss in the event that UFT sought to dismiss the Amended Complaint.  (*Id.* ¶ 3.)  UFT did so and filed its motion to dismiss on April 14, 2025.  (Dkt. 82.)

UFT advances five arguments, arguing that (1) the Amended Complaint fails to comply with the "short and plain statement" requirement of Rule 8; (2) Celli's claims are barred by res judicata and collateral estoppel based on the Article 75/78 proceeding he filed in state court to challenge the Arbitration Award; (3) any claim for breach of the duty of fair representation is barred by the four-month statute of limitations; (4) the Amended Complaint fails to state a claim for breach of the duty of fair representation; and (5) the Amended Complaint fails to state a constitutional claim against UFT.  (*See* Dkt. 82-4.)

Celli filed two opposition briefs.  (Dkts. 107, 114.)  Of all the documents filed by Celli, the two briefs are the most coherent, even if repetitive and duplicative of each other in many respects.  Celli argues that the "core of [his] case is the alleged alteration of the 3020-a hearing procedures" by the arbitrator and DOE, depriving Celli of the right to call witnesses and present evidence, thus depriving him of due process.  (Dkt. 107 at 6, 15-17, 28-29.)  Celli's opposition, however, entirely ignores and does not mention his state

court action challenging the Arbitration Award. According to Celli, UFT failed to fairly represent him and misrepresented the nature of the 3020-a procedures. (*Id.* at 35-37.) Yet Celli ignores entirely UFT's point about the statute of limitations. Celli argues that UFT and DOE "fail[ed] to enforce Judge Engelmayer's orders regarding … Celli's probation conditions, arbitration rights, employment protections, and access to life-sustaining HIV medication." (*Id.* at 17-19.) However, Celli nowhere identifies the orders to which he summarily refers, nor explains how Judge Engelmayer's orders in the criminal action against Celli would govern Celli's civil administrative and state court proceedings.

Celli's opposition also argues that he was discriminated against due to his HIV-positive status; wrongfully denied HIV medication, pension benefits, and retroactive pay, and wrongfully detained; all in retaliation for complaining about someone's having sent a "penis picture." (*Id.* at 20-28, 32-35.) But neither the Amended Complaint nor Celli's opposition briefs do more than make conclusory allegations in that regard.[6] Despite having submitted both a 36-page brief and another brief equivalent to 26 pages (13 pages, single-line spaced), Celli did not address the matters the Court had ordered him to address in addition to opposing UFT's motion to dismiss. (*See* Dkt. 32.)

## Discussion

Although there are many reasons why the Amended Complaint should be dismissed, the two principal grounds on which this Report and Recommendation is founded are the Amended Complaint's failure to comply with Rule 8, and Celli's repeated

---

[6] Celli's briefs also add to the legal theories he asserts, including intentional infliction of emotional distress (Dkt. 114 at ECF 4); theft of wages (*id.* at ECF 6); violation of the Affordable Care Act (*id.* at ECF 8-9); and *Monell* liability (*id.* at ECF 12-13). Those claims, however, are asserted in purely conclusory fashion that do not state a plausible claim for relief.

failure to comply with court orders. Those grounds, particularly the latter, warrant dismissal of the Amended Complaint as to all Defendants with prejudice. UFT's additional arguments for dismissal specifically with respect to it have merit and are further grounds for dismissal with prejudice as to UFT.

## A.    Celli's Failure To Comply With Rule 8 Warrants Dismissal

Rule 8 requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).  Dismissal for violation of Rule 8 is "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Celli has filed successive actions in this District and the Eastern District of New York challenging his criminal conviction and the termination of his employment by the DOE.  As with Celli's previous complaints, the Amended Complaint, is "largely indecipherable." *Celli v. Cole*, 699 F. App'x at 89 (Plaintiff's "unnecessary prolixity places an unjustified burden on the court and the parties who must respond to it because they are forced to select the relevant material from a mass of verbiage") (internal quotation marks, alterations, and citation omitted).  For similar and additional reasons, the Amended Complaint does not state a claim for relief "that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they

**suggest**," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475, has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 and the requirement to state a plausible claim for relief.  *See, e.g.*, *Harden v. Doe*, No. 19-CV-3839, 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) ("*pro se* pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure"); *Bell v. Jendell*, 980 F. Supp.2d 555, 559 (S.D.N.Y. 2013) ("the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law") (internal quotation marks and citation omitted); *see generally Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them") (internal quotation marks and citation omitted).

Courts in this District and the Eastern District have repeatedly warned Celli that his complaints do not comply with Rule 8 and provided guidance on how his complaints could become compliant.  This Court, too, warned Celli that an amended complaint in the instant action must comply with Rule 8.  Yet, Celli's Amended Complaint more than doubled the length of the initial complaint to 52 pages, incorporates by reference all of Celli's previous complaints, and contains a hodge-podge of legal principles, case excerpts, and assorted allegations, all of which relate to Celli's criminal conviction and employment termination but still do not form a coherent pleading.  Celli continues to file complaints that do not comply with Rule 8(a) concerning the same series of events in repetitive, successive lawsuits against an ever-widening array of defendants, including almost every judge who presided over his previous actions.

Once again, Celli has shown "brazen and profane resistance to [Court] instructions, demonstrating that further efforts to convince Celli to file a reasonable complaint would be futile and making dismissal of his complaint without further leave to amend appropriate." *Celli v. Cole*, 699 F. App'x. at 89.  Thus, "this case presents 'extraordinary circumstances' within the meaning of *Salahuddin*, warranting dismissal without leave to file yet another amended complaint."  *Id.*

## B.  Celli's Refusal To Comply With Court Orders Warrants Dismissal

The Court has repeatedly ordered Celli to refrain from sending email to any court personnel other than the Pro Se Office.  Celli has defied those orders at every turn, sending a fusillade of ranting emails laced with profanity to more than 400 recipients, including many judges' chambers and other court personnel.  The Court also has repeatedly ordered Celli to refrain from filing vexatious and frivolous material.  Again, Celli has ignored those directives.  Having been warned repeatedly that his case could and would be dismissed for disregarding the Court's orders, Celli is no longer entitled to maintain his lawsuit.  The Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 41(b) ("Rule 41(b)"), which provides for dismissal "[i]f the plaintiff fails to … comply with these rules or a court order."  Fed. R. Civ. P. 41(b).

Dismissal under Rule 41(b) lies within the discretion of the district court.  *See Ruzsa v. Rubenstein & Sendy Attorneys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (finding no abuse of discretion in dismissal pursuant to Rule 41(b)).  The Second Circuit has set forth five factors to guide the Court's exercise of its discretion: (1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that failure to comply or further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court

calendar congestion balanced against plaintiff's right to an opportunity for a day in court; and (5) the efficacy of lesser sanctions.  *Id.*; *United States ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).  "No one factor is dispositive," and the decision must be based on the entirety of the record.  *Drake*, 375 F.3d at 254.

To be sure, dismissal pursuant to Rule 41(b) is "a harsh remedy and is appropriate only in extreme situations."  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  At the same time, "all litigants, including pro ses, have an obligation to comply with court orders."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988).  Accordingly, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal."  *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (affirming dismissal with prejudice where record revealed that plaintiff ignored repeated warnings form the court that the refusal to comply with court orders would result in dismissal of the action); *Santos v. New York City Housing Authority*, No. 01-CV-1646, 2003 WL 1213335, *5 (S.D.N.Y. March 17, 2003) (dismissing with prejudice due to plaintiff's repeated willful failure to comply with court orders).

Here, all five factors weigh in favor of dismissal.  Celli's defiance of court orders has been frequent and enduring.  The Court has issued four orders directing Celli to cease sending his spam emails and filing his frivolous pleadings.  (*See* Dkts. 23, 33, 64, 84.) He has failed to comply at every turn.  Each order also expressly warned Celli that his case could be dismissed for failing to comply with the Court's orders.  And, when the Court ordered Celli to show cause why his case should not be dismissed for failure to comply (Dkt. 87), Celli persisted in violating those court orders.

Celli asks the Court to excuse his defiant non-compliance as stemming from "a well-founded fear of retaliation, prior misconduct by defendants, and the necessity to preserve access to life-sustaining medical care" and fear that this Court "was acting to aid Randi Weingarten."  (Dkt. 98 at ECF 3-4.)  None of those concerns – even were they to be credited – justify Celli's repeated defiance of court orders.  Celli was at all times permitted to file non-frivolous requests for relief and to communicate with the Court by properly doing so through the Pro Se Office.  His many docket entries reflect as much.

Turning to the third factor, inasmuch as the Court has *sua sponte* acted on Celli's emails and vexatious filings, the prejudice to UFT (the only appearing Defendant) has been less than it otherwise would have been had the Court waited for it to weigh in.  Nonetheless, the longer that Celli maintains this case and continues to file frivolous letters and motions, the more prejudice UFT incurs.

The fourth factor is especially strong here.  Celli's vexatious filings and flood of emails sap the Court's time and resources that otherwise could be devoted to administering justice to litigants who have viable claims and abide by court rules and orders.  *See Sanders v. Ramos*, No. 12-CV-5302, 2013 WL 592670, at *3 (S.D.N.Y. Jan. 24, 2013) ("noncompliance with the Court's orders undermines the ability of the Court to manage its docket and dispense justice to all litigants in an expeditious manner"), *R. & R. adopted*, 2013 WL 594229 (S.D.N.Y. Feb. 14, 2013).  Meanwhile, Celli already has had his day in court, both with respect to his prior criminal conviction and the termination of his employment.

Finally, there is no reason to believe that any lesser sanction will be effective.  Celli's continued defiance of court orders after being warned that the consequence of

noncompliance is dismissal indicates that lesser sanctions would be "an exercise in futility." *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *4 (S.D.N.Y. Nov. 28, 2011); *see also Peterson v. Apple, Inc.*, No. 12-CV-6467, 2013 WL 3467029, at *11 (S.D.N.Y. July 10, 2013) (plaintiff's "repeated violation of orders of this Court leads to the inexorable conclusion that no sanction short of dismissal would effectively address her conduct"), *R. & R. adopted*, 2013 WL 3963456 (S.D.N.Y. Aug. 1, 2013); *Martin v. City of New York*, No. 09-CV-2280, 2010 WL 1948597, at *2 (S.D.N.Y. May 11, 2010) ("The fact that plaintiff was warned that noncompliance would result in dismissal of her claims and chose not to comply illustrates that lesser sanctions would be insufficient").  And, as Celli is proceeding *in forma pauperis*, financial sanctions would be unavailing.  *See Juliao v. Charles Rutenberg Realty, Inc.*, No. 14-CV-808, 2018 WL 4502172, at *5 (E.D.N.Y. Sept. 20, 2018) (adopting reasoning that "plaintiff proceeds in forma pauperis, thus, monetary sanctions would be meaningless"); *Lediju v. New York City Department of Sanitation*, 173 F.R.D. 105, 112 (S.D.N.Y. 1997) ("Since plaintiff ... is proceeding in forma pauperis, monetary sanctions would have no effect").

Celli suggests that an appropriate lesser sanction would be "dismissal without prejudice or curative measures."  (Dkt. 98 at ECF 4.)  The Court disagrees.  Celli has not identified any "curative measures" at all, let alone ones that would be effective, and the Court cannot does not discern any.  And, dismissing without prejudice would only provide Celli with additional opportunity to file the same type of frivolous and vexatious complaint that repeatedly has been dismissed by multiple courts.

Each of the five factors weighs in favor of dismissal with prejudice. Taking the factors together, in the context of the entirety of this case, the Court finds that dismissal with prejudice pursuant to Rule 41(b) is called for.[7]

## C.    Celli Fails To State A Claim

To the extent any claims can be discerned from the Amended Complaint, none are viable. The allegations asserted and the relief sought all concern either Celli's criminal conviction or the termination of his employment and its consequences. (*See* Amended Complaint ¶¶ 270-71 (relief focused on criminal proceedings); ¶¶ 267-69 (relief focused on employment proceedings).) Courts in both the Eastern District and Southern District already have found Celli's civil challenges to his previous conviction – whether asserted against judges, Assistant United States Attorneys, Celli's criminal defense attorneys, or others – cannot be sustained or were otherwise subject to dismissal with prejudice. *See Celli v. New York City Department of Education*, 2022 WL 19696, at *2-3; *Celli v. Perez*, 2022 WL 922779, at *3-4; *Celli v. Katzman*, 2022 WL 1063038, at *2-3; *Celli v. Engelmayer*, 2023 WL 2666876, at *2; *Celli v. Bondi*, 2025 WL 903136, at *12.

---

[7] None of the cases that Celli cites in his OSC Response merit any different outcome and are either distinguishable on the facts or entirely inapt. *See, e.g.*, *Lucas*, 84 F.3d at 535 (reversing dismissal of pro se supplemental complaint filed after date set by court because court had not warned plaintiff that delay would result in dismissal); *Patterson v. Coughlin*, 761 F.2d 886, 893 (2d Cir. 1985) (reversing dismissal of complaint because post-deprivation process was not adequate remedy for deprivation of process before state prisoner was placed in isolation); *Maples v. Vollmer*, No. 12-CV-294, 2013 WL 1009558 [misidentified by different WL number in Celli's OSC Response at ECF 2], at *19 (D.N.M. March 5, 2013) (denying motion to dismiss for alleged perjury in discovery where plaintiff provided credible explanation for inaccuracies, the inaccuracies did not cause delay or substantial expense, and court had not provided previous warning of potential dismissal).

With respect to termination of Celli's employment, UFT advances several arguments for dismissal. Those arguments have merit and provide additional grounds for dismissal, particularly with respect to UFT.

### 1.    Celli's Employment-Related Claims Are Barred By Res Judicata And Collateral Estoppel

Portions of the Amended Complaint appear directed to relitigating the termination of his employment, the process by which it came about, the findings of the arbitrator, and the penalty imposed. Celli's relitigation of those issues, however, is barred by principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion).

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Monahan v. N.Y.C. Department of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)); *see also Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111, 148 N.Y.S.3d 178, 181 (2021) (under New York law res judicata principles, "a valid final judgment bars future actions between the same parties on the same cause of action") (internal quotation marks and citation omitted). Similarly, the principle of collateral estoppel "prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991) (citing, *inter alia*, *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S. Ct. 865, 867 (1955)). The common law doctrines of res judicata and collateral estoppel are "related but distinct [and] operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense

and vexation of multiple lawsuits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 973-74 (1979)).

The judgment and proceedings on which UFT's preclusion arguments are based are the New York Supreme Court judgment rejecting Celli's challenges to the Arbitration Award. Accordingly, the Court looks to New York law of res judicata and collateral estoppel. *See Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) ("federal court[s] must ... apply the collateral estoppel rules of the state which rendered the judgment") (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379-81, 105 S. Ct. 1327, 1331-32 (1985); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984)).

Under New York law, res judicata "bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Systems, Inc.*, 11 N.Y.3d 105, 122, 863 N.Y.S.2d 615, 626 (2008) (internal quotation marks and citations omitted). The doctrine applies "if the subsequent claim was 'actually litigated' in the prior action or if it merely 'could have been raised in the prior litigation.'" *Beijing Neu Cloud Oriental System Technology Co. v. International Business Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) (quoting *In re Hunter*, 4 N.Y.3d 260, 270, 794 N.Y.S.2d 286, 292 (2005)). Further, "any subsequent claim that arises out of the same transaction or series of transactions as the adjudicated claim is barred, even if based upon different theories or if seeking a different remedy." *Id.*

(internal quotation marks, alterations, and citation omitted). As for collateral estoppel, the party invoking the doctrine must establish that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17, 6 N.Y.S.3d 206, 215 (2015) (internal quotation marks and citation omitted). Both res judicata and collateral estoppel apply here.

Celli's termination was litigated pursuant to the procedures afforded by NY Education Law § 3020, culminating in the decision and award of Arbitrator Taylor. (Brown Decl. Ex. A.) The Second Circuit recognizes Section 3020-a hearings as administrative adjudications entitled to preclusive effect. *Burkybile v. Board of Education of Hastings-On-Hudson Union Free School District*, 411 F.3d 306, 311-12 (2d Cir. 2005). Although Celli claims the hearing procedures were "altered" such that he was deprived of presenting witnesses or evidence, he already brought – and lost – a court challenge to his Section 3020-a hearing, its findings, and his termination. Specifically, he appealed the Arbitration Award in Supreme Court, New York County by bringing a special proceeding pursuant to Article 75/78 of the CPLR. The Supreme Court both denied and dismissed Celli's petition for untimeliness and on the merits. (Brown Decl. Ex. B.) On the merits, the court actually determined that "the action taken by [DOE and Arbitrator Taylor] with regard to [Celli]'s employment was rational and thus not arbitrary and capricious," found no "procedural infirmities with the way the proceedings were conducted," and upheld the sanction of termination. (*Id.*)

Having already had the opportunity to litigate the termination of his employment, the process by which it came about, the findings of the arbitrator, and the penalty imposed, Celli cannot relitigate them here.[8]  *See Russo v. United Federation of Teachers*, 189 A.D.3d 562, 563, 133 N.Y.S.3d 818 (1st Dep't 2020) (plaintiff's claims "were all related to his termination, which were litigated, or could have been litigated in his Education Law § 3020-a hearing or his proceeding to vacate the arbitration award, and are barred by the doctrine of res judicata").

**2.    Celli Does Not State A Claim Against UFT For Breach Of The Duty Of Fair Representation, And Even If He Did It Would Be Untimely.**

The Amended Complaint includes many allegations complaining about Celli's Section 3020-a hearing and the actions taken and not taken by UFT with respect to his grievances and the disciplinary proceedings against him.  (*E.g.*, Amended Complaint at 32-38; 40-45, 49 ¶¶ 248-49.)  "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 917 (1967); *accord Saidin v. New York City Department of Education*, 498 F. Supp.2d 683, 689 (S.D.N.Y. 2007) (stating, in reference to claim against UFT for breach of duty of fair representation, that "such a claim must be based on actions demonstrating substantial conduct that is discriminatory, arbitrary or taken in bad faith").  "Neither a union's decision

---

[8] There may be certain aspects of Celli's allegations that would not be barred by res judicata or collateral estoppel, including claims of discrimination and events that occurred in the wake of his termination, such as discontinuation of health insurance and pension benefits.  *See Razzano v. Remsenburg-Speonk Union Free School District*, 751 F. App'x 24, 27 (2d Cir. 2018) (res judicata did not apply to discrimination and other claims not addressed in the Section 3020-a proceedings or action to vacate arbitration award).  Even so, and putting aside the conclusory nature of Celli's allegations, the entirety of Celli's purported claims against UFT should be dismissed with prejudice for the other reasons discussed herein.

not to pursue an employee's grievance to every level of the applicable procedure, nor the employee's dissatisfaction with the manner in which the union conducted the representation, constitutes sufficient grounds warranting a finding of a breach of the duty of fair representation." *Saidin*, 498 F. Supp.2d at 689.

The Amended Complaint does not plausibly plead factual allegations that the UFT acted arbitrarily, discriminatorily, or in bad faith during its representation of Celli when he was a member of UFT. Indeed, Celli terminated the representation of his NYSUT attorney provided by the UFT to represent him in his DOE proceeding and opted instead to appear *pro se*. Celli's dissatisfaction with his former union's representation in connection with his DOE proceeding and the termination of his employment does not state a claim for breach of the duty of fair representation.

Even if Celli had pled a plausible breach of the duty of fair representation, it would be barred as untimely. In New York, the applicable statute of limitations period for a claim for breach of the duty of fair representation against a public employee organization (such as UFT) is four months from the date the plaintiff knew or should have known that such breach occurred. NY CPLR § 217(2)(a). Celli was terminated from his employment with DOE as of October 19, 2023. (Brown Decl. Ex. A.) As of that date, Celli was no longer a UFT member, not to mention that he had terminated the representation of his attorney provided by the UFT's affiliate months earlier. Yet Celli did not commence the instant action until December 18, 2024, more than a year after his Section 3020-a proceeding had concluded. Accordingly, any claim for breach of the duty of fair representation is time-barred.

Nor can Celli circumvent the bar by advancing his claim under other theories, such as breach of contract. New York courts have rejected attempts to circumvent the applicable four-month limitations period by mischaracterizing breach of the duty of fair representation claims under different theories. *See, e.g.*, *Russo*, 189 A.D.3d at 563 ("Characterizing a claim for breach of the duty of fair representation as one for breach of contract is unavailing to avoid the four-month limitations period").

### 3.    The Amended Complaint Does Not Assert A Viable Constitutional Claim Against UFT

The Amended Complaint makes assorted references to due process and invokes both 42 U.S.C. §§ 1983 and 1985(2), (3). It fails, however, to assert a plausible claim under any of those theories.

"To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *see also Bhatia v. Yale School of Medicine*, 347 F. App'x 663, 664 (2d Cir. 2009) (summary order) (to establish a violation of § 1983, "a plaintiff must show that: (1) the defendants acted under color of state law; and (2) the defendants' actions resulted in a deprivation of plaintiff's constitutional rights"). The Amended Complaint does not plausibly plead either that UFT is a state actor or that it violated Celli's constitutional rights.

Labor unions generally are not considered state actors. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323-24 (2d Cir. 2002) (affirming dismissal of § 1983 claim against a union and noting that a union representing state employees is not a state actor). And while a non-state actor potentially can be liable if it has conspired with a state actor to deprive an individual of their civil rights, establishing such conspiracy between UFT and

31

DOE rings "especially hollow in light of the adversarial relationship" between the union and the government entity. *Id.* at 324; *see also Alterescu v. New York City Department of Education*, No. 21-CV-925, 2022 WL 3646050, at *6 (S.D.N.Y. Aug. 23, 2022) (dismissing § 1983 claims against UFT and collecting cases). Neither the Amended Complaint nor Celli's opposition to the motion to dismiss makes non-conclusory, factual allegations to support a claim that UFT conspired with DOE (or anyone else) to deprive him of constitutional rights.

Nor does the Amended Complaint plausibly allege deprivation of due process or other constitutional right. NY Education Law § 3020-a comports with the procedural protections required by the Due Process Clause. *Jacobs v. Mostow*, 271 F. App'x 85, 89 (2d Cir. 2008). And while Celli challenges whether he received those protections in his Section 3020-a hearing, "there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996). "It is well established that the existence of the Article 75 [and Article 78] procedure[s] constitutes due process as a matter of law." *Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *13 (S.D.N.Y. Dec. 18, 2020). Celli availed himself of that very mechanism when he filed his Article 75/78 proceeding against DOE. On review, the state court confirmed the Arbitration Award and upheld Celli's termination. Celli cannot now claim violation of his due process rights.

The Amended Complaint also fails to assert a plausible claim under 42 U.S.C. § 1985(2) or (3). Section 1985(3) creates a right of action for conspiracies to deprive a

member of a protected class of their equal rights and voting rights. The Amended complaint fails to assert any such claim because, among other reasons, it does not plausibly allege invidious discriminatory animus by UFT (or any defendant for that matter). *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971) (To state a claim under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Abadi v. American Airlines, Inc.*, No. 23-CV-4033, 2024 WL 1346437, at *25 (S.D.N.Y. March 29, 2024) (dismissing claim asserted under § 1985(3) for several reasons, including that "[t]he Complaint contains no well-pleaded allegations to support the conclusion of conspiracy, or an agreement to violate a federal right, or invidious discrimination").

Section 1985(2) makes actionable conspiracies to interfere with parties' access to courts, deter witnesses or jurors, or otherwise obstruct justice in federal court proceedings with the intent to deny equal protection of the laws. The Amended Complaint does not plausibly allege obstruction of justice or invidious discrimination and therefore should be dismissed. *See Brady v. Friedlander*, No. 20-3515, 2021 WL 5872264, at *2 (2d Cir. Dec. 13, 2021) (upholding dismissal of claim asserted under the second part of § 1985(2) because the claimant "failed to allege that any of the Defendants-Appellees acted with invidiously discriminating animus") (internal quotation marks and citation omitted); *Langton v. Town of Chester*, No. 14-CV-9474, 2017 WL 6988708, at *7 (S.D.N.Y. Sept. 26, 2017) ("Viewed in the light most favorable to Plaintiff, the Section 1985(2) claims are also futile because they fail to allege facts that the defendants sought to deter her, or any witness, 'by force, intimidation, or threat' from attending any court in the United States or

testifying freely therein, as is required by the statute"), *R. & R. adopted*, 2020 WL 2850898 (S.D.N.Y. June 1, 2020).

Accordingly, Celli's claims against UFT for violation of 42 U.S.C. §§ 1983 and 1985 must be dismissed.

### Filing Injunction

At the order to show cause hearing on May 13, 2025, UFT asked the Court to consider imposing a nationwide filing injunction against Celli requiring him to obtain leave of court before filing any action against UFT. A filing injunction is warranted, although not nationwide, based on the record before the Court. "That the district court possesse[s] the authority to enjoin [the plaintiff] from further vexatious litigation is beyond peradventure." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23-24 (2d Cir. 1986) (collecting cases). In addition to authority provided by the All Writs Act, 28 U.S.C. § 1651(a), "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984). "A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) (citing *In re Martin-Trigona*, 737 F.2d at 1254).

"In determining whether to restrict a litigant's future ability to sue, a court must consider 'whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.'" *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713-14 (2d Cir. 2019) (quoting *Safir*, 792 F.2d at 24). The Second Circuit has identified several factors to be considered in deciding whether to impose a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 714 (quoting *Iwachiw v. New York State Department of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam)).

The first, second, fourth, and fifth factors weigh heavily in favor of a filing injunction. As recounted throughout this report and recommendation, Celli has a rich history of repeatedly filing vexatious, harassing, and duplicative lawsuits.  His claims repeatedly have been dismissed as frivolous, and he has no good faith expectation of prevailing. Celli's flood of motions, letters, and emails have caused needless expenditure of resources by defendants that have appeared and have placed an unnecessary burden on the courts in both the Southern and Eastern Districts of New York as well as the Second Circuit Court of Appeals.  And, no other sanctions will suffice.  Monetary sanctions will be ineffective because Celli has received *in forma pauperis* status due to his purportedly meager resources.  Despite warning after warning, Celli has repeatedly violated court orders and cannot reasonably be expected to adhere to measures short of a filing injunction.  With respect to the fourth factor, the Court has afforded Celli a good deal of solicitude as a *pro se* litigant.  Moreover, *pro se* litigants are not excused from repeatedly filing frivolous or vexatious filings and violating court orders.  *See Eliahu*, 919 F.3d at 715; *Iwachiw*, 396 F.3d at 529 n.1; *Shekhem El v. Hiller*, No. 24-CV-730, 2025 WL 888544, at *8 (S.D.N.Y. March 21, 2025).

The Second Circuit already has imposed a filing injunction directing its Clerk of Court to "refuse to accept for filing from the Appellant [Celli] any future appeal, motion, or other papers unless he first obtains leave of the Court." *Celli v. Cole*, No. 17-234, Dkt. 90 at 2. Celli previously has been warned by courts in this District that filing a new civil rights action in the Southern District of New York challenging his Eastern District of New York conviction will result in an order barring him from filing any new action challenging that conviction without prior permission. *Celli v. Bondi*, 2025 WL 903136, at *13; *Celli v. Perez*, 2022 WL 922779, at *4; *Celli v. Katzman*, 2022 WL 1063038, at *4. He also has been warned by the Eastern District of New York that if he continued to file duplicative and harassing motions and letters the court would take appropriate action, including potentially barring Celli from filing motions and letters without leave of court. *Combier v. Portelos*, No. 17-CV-2239, 2018 WL 10509392, at *1 (E.D.N.Y. May 22, 2018).

As courts have recognized, "the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints." *Woodhouse v. Meta Platforms Inc.*, 704 F. Supp.3d 502, 517 (S.D.N.Y. 2023) (internal quotation marks omitted) (quoting *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994)). Celli has repeatedly filed frivolous and vexatious actions against UFT, DOE, and others related to the termination of his employment as a New York City teacher. He has besieged the Court with a multitude of frivolous and vexatious motions and letters. He has sent hundreds of ranting, derogatory, and sometimes profane emails to court personnel among more than 400 recipients (including UFT). He has violated Court orders again and again. His "brazen and profane resistance to the District Court's instructions" has continued unabated. *Celli v. Cole*, 699

F. App'x at 89. Enough is enough. A filing injunction is entirely warranted. Accordingly, I recommend that a filing injunction be issued barring Celli from filing in this District and the Eastern District against the UFT or others concerning the termination, or consequences of termination, of his employment with the New York City Department of Education, without first requesting and obtaining leave of court to do so.

The Court, however, does not recommend a filing injunction that extends beyond the Southern and Eastern Districts. Although filing injunctions typically are limited to the District in which they are issued, filing injunctions with broader geographic scope are permitted in appropriate circumstances. "Where … a litigant has peppered multiple jurisdictions with vexatious filings – and where such have made substantially the same specious claims against common defendants – the case law supports imposition of a nationwide filing injunction, to reflect the practical reality that only such can effectively guard 'against the threat of onerous, multiplicitous, and baseless litigation.'" *Woodhouse*, 704 F. Supp.3d at 518 (citing *Abdullah*, 773 F.2d at 488). *See, e.g.*, *Hermes of Paris, Inc. v. Swain*, No. 20-3451, 2021 WL 5170726, at *3 (2d Cir. Nov. 8, 2021) (affirming nationwide filing injunction preventing the plaintiff from reinstating his complaint in state court and from filing any additional lawsuits against his employer for claims related to his employment in any court); *Kaul v. Intercontinental Exchange*, No. 21-CV-6992, 2022 WL 4133427, at *9 (S.D.N.Y. Sept. 12, 2022) (imposing nationwide filing injunction against a plaintiff who had filed actions in this District and the Districts of Columbia, Connecticut, and Massachusetts, and the Northern Districts of both Texas and Illinois).

Here, Celli's litigation history before the Court and recounted above primarily includes the Southern District of New York, the Eastern District of New York, and the

Second Circuit Court of Appeals, which has already issued its own filing injunction.[9] Accordingly, the Court does not have a foundation to issue a nationwide injunction. A filing injunction against Celli issued at this juncture should be limited to the Southern and Eastern Districts of New York. *See Iwachiw*, 396 F.3d at 529 (affirming filing injunction and noting that "[t]he District Court's injunction is measured; it does not extend to filings in other federal district courts or the New York state courts").

Finally, before entry of a filing injunction, the Court should issue an order to show cause providing Celli with an opportunity to respond as it is an "unequivocal rule in this circuit ... that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Id.* (quoting *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998)).

## Conclusion

For the foregoing reasons, UFT's motion to dismiss should be GRANTED, and the Amended Complaint should be dismissed *sua sponte* with prejudice as to all Defendants. Additionally, I recommend issuing an order for Celli to show cause why a filing injunction should not be issued barring him from filing any action in the Southern and Eastern Districts of New York against UFT or others concerning, at the least, the termination, or consequences of termination, of his employment with the DOE, without first requesting and obtaining leave of court to do so.

---

[9] The only non-Second Circuit case in which Celli sued UFT and others in connection with the termination of his employment is the Washington, D.C. action in which the court *sua sponte* dismissed his complaint with prejudice. *Celli v. Weingarten*, 2022 WL 278772, at *5.

**DEADLINE FOR FILING OBJECTIONS AND PRESERVING APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable John P. Cronan, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Cronan.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 27, 2025
       New York, New York

Copies transmitted this date to all counsel of record.