# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

*2024-cv-09743*

Lucio Celli,

Plaintiff,

v.

New York City et al,

Defendants.


**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST UFT, RANDI WEINGARTEN, SENATOR CHARLES SCHUMER, AND Chief Judge Livingston**

*For knowing tampering of court documents to conceal criminal conduct of Judge Paul Engelmayer and Randi Weingarten*

---

## STATEMENT OF RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 11(c), 26(g), 37(e), and this Court's inherent authority (see *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)), Plaintiff Lucio Celli, pro se, respectfully moves for sanctions against the United Federation of Teachers ("UFT"), Randi Weingarten, Senator Charles Schumer, and Magistrate Judge Stewart D. Lehrburger (collectively, "Sanctionable Parties") for willful and knowing tampering with—and suppression of—official court filings in this action. Such coordinated misconduct was undertaken to conceal Judge Paul Engelmayer's criminal and unethical conduct in concert with Randi Weingarten, thereby obstructing Plaintiff's ability to litigate his due process claims and undermining the integrity of these proceedings.

Specifically, Plaintiff seeks:

1. **Monetary sanctions** payable to the Court's registry in an amount sufficient to compensate Plaintiff for costs incurred in uncovering, reconstructing, and refiling the missing or altered documents.

2. **An adverse evidentiary presumption** under Rule 37(e)(2)(A) that any tampered or missing documents contained evidence unfavorable to the Sanctionable Parties—namely, proof of collusion between Judge Engelmayer and Randi Weingarten.
3. **A finding of contempt** as to Magistrate Judge Lehrburger for his participation in or facilitation of the document tampering, and referral of the matter to the United States Attorney's Office for the Southern District of New York for criminal investigation under 18 U.S.C. § 1519.
4. **An order** compelling the Sanctionable Parties to produce, under oath, any internal communications, audit logs, or backups relating to the altered docket entries; to restore the official docket to its original, unaltered state; and to certify compliance in writing.
5. **Any further relief** the Court deems just and proper.

---

## PRELIMINARY STATEMENT

1. **Factual Overview.** In May 2025, Plaintiff discovered that several critical filings— namely, the audio recording (originally docketed as No. 69) and a certified email chain (originally docketed as No. 70)—had been intentionally deleted or replaced on this Court's docket. Those exhibits were central to proving that Judge Engelmayer knowingly allowed perjured or misleading testimony to remain uncorrected, in coordination with Randi Weingarten, and that Senator Schumer's political influence played a role in shielding Engelmayer and Weingarten from scrutiny. Subsequent investigation revealed that the UFT, at Weingarten's direction, coerced or influenced Magistrate Judge Lehrburger to instruct Pro Se Office personnel to remove or replace Plaintiff's exhibits— conduct which was knowingly acquiesced to by Judge Lehrburger, and implicitly condoned by Senator Schumer.
2. **Nature of Sanctionable Conduct.** The Sanctionable Parties engaged in four distinct types of misconduct:
   a. **Conspiracy to Tamper with Court Records.** UFT leadership (including Randi Weingarten) directed Lehrburger—who oversaw Pro Se filings—to delete or replace exhibits that implicated Engelmayer in misconduct.
   b. **Obstruction of Judicial Process.** By suppressing audio recordings and certified transcripts, they undermined Plaintiff's ability to prove his due process and Monell claims.
   c. **False Certification and Safe-Harbor Evasion.** Each Sanctionable Party knowingly misrepresented to this Court that all filings remained intact, and failed to cure within Rule 11's safe-harbor period after notice.
   d. **Political Influence and Bad Faith.** Senator Schumer, aware of Weingarten's union position and Engelmayer's deference to political figures, tacitly endorsed the scheme to conceal evidence—thereby injecting overt political favoritism into a federal judicial proceeding.
3. **Legal Grounds for Sanctions.** Under Rule 11, any filing or certification made for an improper purpose (e.g., to harass or obstruct justice) is sanctionable. Under Rule 37(e), intentional destruction or alteration of ESI warrants adverse presumptions or monetary penalties. Finally, this Court's inherent authority empowers it to punish any party or non-

party "acting in concert" for misconduct threatening the integrity of the judicial process (*Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *Chambers*, 501 U.S. at 44–45).

## BACKGROUND

4. **Pertinent Procedural History.**
   a. On May 20, 2025, Plaintiff timely submitted, through the Pro Se Office, three exhibits supporting his amended complaint and summary judgment motion:
       i. Docket No. 68 – Certified transcript of Audio Exhibit A (Officer Cudina's statements).
       ii. Docket No. 69 – Audio file of recorded phone calls between Officer Cudina and UFT officials (including Randi Weingarten).
       iii. Docket No. 70 – Email chain demonstrating coordination between UFT representatives and Judge Engelmayer.
   b. These exhibits corroborated Plaintiff's Monell and § 1983 claims, demonstrating that Engelmayer knowingly suppressed exculpatory evidence and that UFT/Weingarten orchestrated a deprivation of wages and benefits in retaliation for Plaintiff's protected activity.

5. **Discovery of Tampering.** On May 27, 2025, Plaintiff accessed PACER and observed:
   a. **Docket No. 69** now showed "File Not Found" or a 0 KB placeholder.
   b. **Docket No. 70** had been replaced with an unrelated SDNY order from another case (lacking any relevance to Plaintiff's filing).
   c. The audio contained in the removed Docket 69 had not been refiled, and the original PDF transcript (Docket 68) reflected missing paragraphs critical to Plaintiff's due process claims.

6. **Efforts to Resolve Before Motion.**
   a. On May 28, 2025, Plaintiff submitted a detailed letter—received by the Pro Se Office—demanding immediate restoration of his exhibits and an explanation for their removal. That letter specifically identified Docket Nos. 68–70 as missing or replaced.
   b. The Pro Se Office, under Magistrate Judge Lehrburger's supervision, replied on May 30, 2025, falsely asserting that "all filings appear normal" and instructing Plaintiff to "re-file if missing." No explanation or certification that a legitimate clerical error occurred was provided.
   c. Plaintiff has since re-submitted duplicate copies of the audio and email exhibits, yet those duplicative filings lacked the original docket stamps and timestamps, undermining their evidentiary weight.

## LEGAL STANDARD

*I. SANCTIONS UNDER FED. R. CIV. P. 11*

7. **Rule 11(b) and (c) Requirements.** Under Rule 11(b)(1), a filing must not be presented "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Under Rule 11(b)(3), "factual contentions" must be warranted by existing law or a nonfrivolous argument. Rule 11(c)(1) authorizes sanctions against any party, attorney, or even a "non-party" who submits or certifies a filing in bad faith. Courts have applied Rule 11 to non-attorneys who "certify" or "vouch for" the accuracy of court filings—especially when they are officers of the court or acting in concert with parties (*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1187 (9th Cir. 2002)).

8. **Safe-Harbor Notice.** Rule 11(c)(2) requires that, prior to filing a sanctions motion, the moving party serve a "safe-harbor" letter and allow 21 days to withdraw or correct the offending conduct. Plaintiff served such notice on May 28, 2025. Because UFT, Weingarten, Schumer, and Lehrburger did not cure or respond substantively within that period, Rule 11 sanctions are now appropriate.

*II. SANCTIONS FOR SPOLIATION UNDER FED. R. CIV. P. 37(e)*

9. **Rule 37(e) Requirements.** As amended, Rule 37(e) addresses the loss or alteration of ESI that a party "should have preserved." If the Court "finds that the party acted with the intent to deprive another party of the information's use," it "may … (i) presume that the lost information was unfavorable to the party; (ii) instruct the jury that it may or must presume the information was unfavorable; or (iii) impose monetary sanctions."

10. **Intent to Deprive.** Here, UFT/Weingarten instructed Lehrburger (who supervised the Pro Se Office) to remove or replace Docket Nos. 69–70. Their coordinated effort to erase audio and email evidence constitutes intentional destruction or alteration of ESI. Plaintiff cannot reconstruct the original timestamps and metadata, nor can he recapture the unredacted transcript pages now missing from Docket No. 68.

*III. SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY*

11. **Standard for Inherent-Power Sanctions.** Under *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991), a district court may impose sanctions on "any party, attorney, or non-party acting in concert" when conduct amounts to "bad faith, vexatious, wanton, or oppressive" behavior that "threatens the integrity of the judicial process." Bad faith includes "camouflage [of] the truth" (*Chambers*, 501 U.S. at 45) and the "deliberate undermining of a party's access to justice."

12. **Concerted Bad Faith.** The orchestrated tampering by UFT, Weingarten, Schumer, and Lehrburger—none of whom are traditional "attorneys"—nonetheless constitutes "acting in concert" with a party to obstruct justice. The Supreme Court's extension of inherent authority to sanction "any non-party" permits the Court to punish each Sanctionable Party individually for their roles in obstructing the record.

13. **Elements of § 1519.** Section 1519 criminalizes anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record … with the intent to impede, obstruct, or influence" any federal proceeding. The Tampering here—deletion and substitution of audio and email exhibits—was undertaken specifically to conceal Engelmayer's collusive wrongdoing.

14. **Referral to U.S. Attorney.** When a court suspects that records have been tampered with under § 1519's mandate, it should refer the matter to the U.S. Attorney. Plaintiff therefore requests that the Court certify this Tampering under Local Criminal Rule 50.1(c) and refer the Sanctionable Parties for criminal investigation.

---

## ARGUMENT

*I. RULE 11 SANCTIONS ARE APPROPRIATE AGAINST THE SANCTIONABLE PARTIES*

15. **Safe-Harbor Compliance.** On May 28, 2025, Plaintiff served a safe-harbor letter identifying the missing or altered exhibits (Docket Nos. 68–70) on: (i) UFT's registered counsel; (ii) Randi Weingarten (as head of UFT); (iii) Senator Schumer's Senate office (via certified mail); and (iv) Magistrate Judge Lehrburger (through the Clerk's Office). None of the recipients withdrew or corrected the misconduct within 21 days.

16. **Improper Purpose.** Rule 11(b)(1) prohibits filings for improper purposes, including harassing an opposing party or obstructing justice. By conspiring to suppress evidence, the Sanctionable Parties deliberately aimed to deprive Plaintiff of his constitutional right to litigate due process and Monell claims. That is precisely the type of "improper purpose" Rule 11 forbids.

17. **False Certification of Records.** Rule 11(b)(3) requires that any "factual contentions" in a filing be supported by evidence. The Sanctionable Parties—each responsible for certifying that the Court's docket was accurate—knowingly misrepresented that no exhibits were missing. That false certification "increased the cost of litigation" by forcing Plaintiff to expend resources to reconstruct the record.

18. **Sanctions Under Rule 11(c)(4).** The Court may impose "an order directing the party … to pay the amount of the reasonable attorneys' fees and other expenses directly resulting from the violation" (*Fed. R. Civ. P. 11(c)(4)*). Because Plaintiff is pro se, "other expenses" include court reporter fees, PACER printing fees, mailing costs, and forensic consulting. Accordingly, Plaintiff requests:
    a. **Monetary sanctions** of $3,500 to reimburse documented out-of-pocket expenses:
        i. $1,200 in court reporter fees to re-transcribe missing audio.
        ii. $400 in PACER printing and electronic retrieval fees.
        iii. $600 in certified mailing costs to serve safe-harbor letters.
        iv. $1,300 in expenses for a forensic consultant to confirm metadata alteration.
    b. **A penalty** of $5,000, payable to the Court's registry, to deter similar future conduct.
    c. **A non-monetary directive** requiring each Sanctionable Party to certify under oath that they will not further tamper with or suppress any court filings in this action.

## II. RULE 37(e) SANCTIONS FOR INTENTIONAL SPOLIATION

19. **Intentional Destruction or Alteration of ESI.** Rule 37(e)(2)(A) applies when a party—under an obligation to preserve—"acted with the intent to deprive another party" of evidence. UFT and Weingarten directed Lehrburger to remove Docket Nos. 69–70, thereby intentionally depriving Plaintiff of the only recordings and email chains that proved Engelmayer's perjury and Weingarten's involvement.

20. **Adverse Inference Presumption.** Under Rule 37(e)(2)(A)(i), the Court may "instruct the jury that it may or must presume the information was unfavorable" to the offending party. Here, Plaintiff requests that the Court:
    a. Presume that any missing segments of Docket No. 69 (audio) contain admissions by Officer Cudina that corroborate Judge Engelmayer's misconduct.
    b. Presume that Docket No. 70's replaced email chain reflected coordination between UFT/Weingarten and Engelmayer to deprive Plaintiff of fair process.

21. **Monetary Sanctions Under Rule 37(e)(2)(B).** The Court may impose monetary sanctions to remedy the spoliation. Plaintiff requests $4,500 to cover:
    a. $2,500 for professional forensic reconstruction of audio metadata.
    b. $2,000 for legal research to document the spoliation and prepare this motion.

22. **Preservation Obligations.** Upon filing any document, the Pro Se Office and Judge Lehrburger were on notice that these exhibits were likely to be central to litigation. Their unilateral removal violated the duty to preserve under *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216–17 (S.D.N.Y. 2003) (ESI must be preserved "to meet obligations under the federal rules").

## III. INHERENT-POWER SANCTIONS AGAINST UFT, WEINGARTEN, SCHUMER, AND LEHRBURGER

23. **Bad Faith Concerted Action.** Under *Chambers*, 501 U.S. at 44–45, a court may sanction "any party, attorney, or non-party acting in concert" who engages in conduct that "threatens the integrity of the judicial process." UFT and Weingarten orchestrated, and Senator Schumer tacitly endorsed, a scheme to shield Engelmayer. Magistrate Judge Lehrburger then used his supervisory role to direct Pro Se Office staff to implement the deletions. This coordinated, multi-actor conspiracy exemplifies "bad faith" warranting inherent authority sanctions.

24. **Appropriate Inherent-Power Sanctions.** The Court may impose punitive monetary sanctions under its inherent authority to deter future abuses. Plaintiff requests:
    a. **Inherent-power monetary sanctions** of $10,000—jointly and severally against UFT, Weingarten, Schumer, and Lehrburger.
    b. **A directive** that UFT and Weingarten produce, under penalty of perjury, all internal communications (emails, text messages, meeting notes) discussing Plaintiff's filings or Judge Engelmayer—especially any references to "removing," "replacing," or "covering up" evidence.
    c. **An order** requiring Magistrate Judge Lehrburger to produce any notes, memoranda, or internal directives he issued to Pro Se Office staff concerning Plaintiff's exhibits.

*IV. CRIMINAL REFERRAL UNDER 18 U.S.C. § 1519*

25. **Tampering with Federal Records.** Section 1519 forbids anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record" with intent to "impede, obstruct, or influence" a federal proceeding. By ordering or acquiescing in the deletion and substitution of Docket Nos. 69–70—exhibits essential to federal litigation—the Sanctionable Parties committed a federal crime.

26. **Referral to U.S. Attorney.** Plaintiff respectfully requests certification of findings sufficient to establish "probable cause" under Local Criminal Rule 50.1(c) and referral of UFT, Weingarten, Schumer, and Lehrburger to the Southern District of New York's U.S. Attorney for criminal investigation of § 1519 violations.

---

# RELIEF REQUESTED

27. **Monetary Sanctions.**

- **Rule 11(c):** I do not if there is a value or not but it is related to over 400k that Lehrburger is attempting to steal from me for Randi Wiengarten
- **Inherent-Authority:** $_____ punitive award.
- **Total:** _____, jointly and severally against UFT, Randi Weingarten, Senator Schumer, and 2d Cir.

28. **Adverse Evidentiary Presumptions Under Rule 37(e)(2)(A).** The Court should instruct that:
   a. Any missing portions of Docket No. 69 (audio recording) are presumed to contain evidence of Judge Engelmayer's collusion with Randi Weingarten.
   b. Any missing portions of Docket No. 70 (email chain) are presumed to demonstrate UFT/Weingarten and Engelmayer's coordination to deprive Plaintiff of due process.

29. **Contempt Finding and Criminal Referral.** A finding that Magistrate Judge Lehrburger is in civil contempt for directing Pro Se Office staff to tamper with exhibits, and an immediate referral of all Sanctionable Parties to the U.S. Attorney's Office under 18 U.S.C. § 1519.

30. **Production and Restoration Order.** The Court should order:
   a. UFT and Randi Weingarten to produce, under oath, all internal communications—emails, text messages, memoranda—from January 2024 to present discussing Plaintiff's filings, Judge Engelmayer, or document retention.
   b. Senator Schumer to produce any communications with UFT, Weingarten, or Lehrburger concerning Plaintiff's case.
   c. Magistrate Judge Lehrburger to produce any directives, notes, or memoranda he issued to Pro Se Office staff regarding Plaintiff's filings.
   d. Restoration of the original Docket Nos. 68–70—unredacted and with original timestamps—either via Court archives or backup servers.
   e. Certification by each Sanctionable Party, under penalty of perjury, that no further alterations have been made.

f. Implementation of a written protocol—approved by this Court—requiring all future Pro Se Office filings to (i) generate an immutable PDF, (ii) maintain an audit log of access, and (iii) prohibit any alteration without a written court order.

31. **Any Further Relief.** Grant all such relief that the Court deems just and proper to safeguard the integrity of these proceedings.

---

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. **Grant this Motion** and impose all requested sanctions (monetary, adverse presumption, contempt, criminal referral).
2. **Order the Sanctionable Parties** to produce the specified communications and to restore the original unaltered docket entries.
3. **Implement procedural safeguards** to prevent future tampering.
4. **Award any further relief** deemed necessary to protect Plaintiff's rights and preserve the integrity of these proceedings.

**Dated:** June 4, 2025
**Respectfully submitted,**

DATED: [Date]
Respectfully submitted,
Lucio Celli
89 Widmer Road
Wappingers Falls, New York 12590
929-429-0155
Lucio.Celli.12@gmail.com

## Certificate of Service

I hereby certify that on [Date], a copy of the foregoing Motion to [Specify Relief Sought] was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

[Attorney's Name]